# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Circuit Court Case No. 23-55636

CHERYL SAUER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

PLAINTIFF-APPELLANT,

V.

SOLAREDGE TECHNOLOGIES, INC., ET. AL.

DEFENDANT-APPELLEE

---

APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
DISTRICT COURT CASE NO.: 5:22-CV-01584-JGB-KK
(HONORABLE JESUS G. BERNAL)

---

APPELLANT'S EXCERPTS OF RECORD

---

**LAW OFFICES OF TODD M. FRIEDMAN**
Todd M. Friedman, Esq. (SBN 21675)
Adrian R. Bacon Esq. (SBN 280332)
Meghan E. George (SBN 274525)
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
Email: tfriedman@toddflaw.com

*ATTORNEYS FOR APPELLANT*

ER-001

## INDEX FOR EXCERPTS OF RECORD

| DOCKET ENTRY | DESCRIPTION | VOLUME | PAGE |
|---|---|---|---|
| 13 | First Amended Class Action Complaint | 1 | 3 |
| 14 | Defendant Solaredge Technologies Inc.'s Notice Of Motion And Motion To Dismiss Plaintiff's First Amended Complaint; Memorandum Of Points And Authorities In Support Thereof | 1 | 44 |
| 14-1 | Proposed Order Granting Defendant's Motion to Dismiss | 1 | 73 |
| 15 | Plaintiff's Opposition to Defendant's Motion to Dismiss | 1 | 75 |
| 16 | Defendant Solaredge Technologies Inc.'s Reply Brief In Support Of Its Motion To Dismiss | 1 | 97 |
| 26 | Order Granting Defendant's Motion to Dismiss | 1 | 117 |
| 27 | Notice of Appeal | 1 | 130 |
| | Docket Sheet | 1 | 145 |

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Meghan E. George (SBN 274525)
Thomas E. Wheeler (SBN 308789)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
mgeorge@toddflaw.com
twheeler@toddflaw.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL SAUER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SOLAREDGE TECHNOLOGIES, INC., and DOES 1-10 Inclusive,<br><br>Defendant. | Civil Case No.:5:22-cv-01584-JGB<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

1

Plaintiff Cheryl Sauer ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following:

## NATURE OF THE CASE

1.     This case arises out of the manufacture and sale of cellular plug-ins for inverters by Defendant SolarEdge Technologies, Inc. ("Defendant" or "SE"). The term "Cell Plug-Ins" or "Class Plug-Ins" includes, but is not limited to, models CELL-A-R05-US-S-S2, CELL-A-R12-US-S-S2, and CELL-B-R05-US-S-S2 as set forth in the "Cellular Plug-in with Data Plan for the US" sheet created by SE and attached hereto as Exhibit A.

2.     SE provides energy production monitoring through various apps as a critical piece of the services provided by its inverters.  These systems let a consumer keep track of their home energy production in real-time. This information is transmitted to the consumer via either wired plug-in, Wi-Fi plug-in, or Cell Plug-In as is at issue here.

3.     The Cell Plug-Ins were manufactured, designed, and sold to only work on 3G wireless mobile networks. In 2018 and 2019, the wireless mobile networks that provided the 3G networks that the Cell Plug-Ins accessed issued notices that they would be sunsetting 3G technology in 2022 ("the 3G Sunset") and all devices that used such 3G technology, such as the Cell Plug-Ins, would have to be replaced.

4.     In 2022, the Cell Plug-Ins ceased operating as designed because of the 3G Sunset and consumers, such as Plaintiff, lost access to solar monitoring capabilities which are important and valuable to them.

5.     A defect in the Cell Plug-Ins due to their reliance on 3G networks has resulted in them to fail and be rendered useless. The Cell Plug-Ins cannot be repaired; they must be removed and replaced.

6.     SE was aware of this defect at the time of manufacture and aware that the defect would manifest across all Cell Plug-Ins when the 3G Sunset happened

ER-004

since at least August 2019, but continued selling inverters that included Cell Plug-Ins.

**7.** Plaintiff seeks recovery on behalf of herself and all United States residents who purchased Cell Plug-Ins or purchased properties on which the Cell Plug-Ins were installed (the "Class" for breach of express and implied warranties and for violations of the California consumer protection and unfair business practice statutes.

<u>**JURISDICTION & VENUE**</u>

8. There is original federal subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), by virtue of 28 U.S.C. §1332(d)(2), which explicitly provides for the original jurisdiction of federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interests and costs.

9. In the case at bar, there are at least 100 members in the proposed Class, the total claims of the proposed Class members are in excess of $5,000,000.00 in the aggregate, exclusive of interests and costs, and Plaintiff seeks to represent a California class of consumers, establishing minimum diversity.

10. There is also federal question jurisdiction because this case arises out of a question of federal law, in particular the Magnuson-Moss Warranty Act, 15 U.S.C. § 2300 et. seq.

11. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) because Defendant sold and provided the Cell Plug-In to Plaintiff within this district.

<u>**PARTIES**</u>

12. Plaintiff, CHERYL SAUER ("Plaintiff"), is a resident of San

Bernardino, California.  On September 10, 2019, Plaintiff purchased a solar system which included two SE inverters and two Cell-Plugins for installation on her home.

13.     Defendant SOLAREDGE TECHNOLOGIES, INC., ("Defendant") is a corporation that does business in California, including within San Bernardino County, and is incorporated in Delaware and headquartered in Milpitas, California. Plaintiff is informed and believes and thereon alleges that SolarEdge Technologies Ltd. is an Israeli subsidiary of SE and thus SE is responsible for warranties made by SolarEdge Technologies Ltd..

14.     The above-named Defendant, and its subsidiaries and agents, are collectively referred to as "Defendants."  The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

15.     Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

### FACTUAL ALLEGATIONS
#### SE's Solar Inverters and Cell Plug-Ins

16.     Solar systems consist of a combination of solar panels, which generate alternating current (AC) electricity, which connect to an inverter which converts the electricity to direct current (DC) electricity which is then put directly into the

power grid or used by a house.

17.     An inverter also includes additional functions, such as monitoring the solar system and communicating with computer networks.

18.     The communication with computer networks is done through either a direct ethernet connection, a wireless connection, or a cellular connection, such as that done by the Cell Plug-Ins.

19.     The Cell Plug-Ins function by connecting to a 3G cellular wireless network and communicating information from the inverter to a computer network which then provides the information to consumers, such as Plaintiff, through either an app or website.

20.      The Cell Plug-Ins were designed and can only function by connecting to a 3G cellular wireless network. Without a 3G cellular wireless network to access, the Cell Plug-Ins are rendered useless and unable to perform their fundamental purpose—the transfer of information regarding the system which allows consumers to monitor their solar system.

21.     This constitutes a defect in the Cell Plug-Ins and because of this defect, all Cell Plug-Ins relevant to this litigation have now failed before the end of their expected useful life as warranted by Defendant on either a five- or twelve-year basis.

22.     There is no way to repair the defect in the Cell Plug-Ins and restore their functionality. The only means for addressing the failure of the Cell Plug-Ins is to remove them and replace them with another type of plug-in.

### SE's Knowledge and Suppression of Warranty Claims

23.     SE has known since it first started manufacturing and selling the Cell Plug-Ins that the plug-ins relied on 3G wireless networks and that the deprecation of such networks would render the Cell Plug-Ins defective and useless.

24.     SE has also known since at least August 2019 that the 3G wireless networks its Cell Plug-Ins rely on would be deprecated in 2022, at which point the

Cell Plug-Ins would be rendered defective and useless.

25.    SE issues an express Limited Product Warranty ("the Warranty") which covers "defects and materials of the below-listed products for the applicable Warranty Period" with "products" including "Wireless Communication Products" such as the Cell Plug-Ins. This express warranty as was in effective when Plaintiff made her purchase is attached hereto as Exhibit B, however it is effectively the same to SE's "Limited Product Warranty" at all times.

26.    With respect to the Cell Plug-Ins, the warranty covers 5 years from either 4 months of the date of shipment or the date of installation, whichever is earlier.

27.    SE knew that the Cell Plug-Ins were covered under the warranty claim, however preemptively sent out emails, including on January 27, 2022 as attached as Exhibit C, advising consumers that it would not be honoring its warranty with respect to Cell Plug-Ins and consumers would have to purchase and install their own replacement plug-ins at significant cost.

28.    SE also published and linked consumers to a FAQ, attached as Exhibit D, on its website further reiterating that the "end user covers the cost" of replacement and that it was not covered under its warranty.

29.    SE's affirmative actions to disclaim warranty coverage on the Cell Plug-Ins despite the existence of such coverage was deliberate and unconscionable and done by SE for purposes of not having to pay for the replacement of its Cell Plug-Ins, which cost hundreds of dollars each.

## SE's Warranty and Representations

30.    SE issued the Warranty for the Cell Plug-Ins which states that the Cell Plug-Ins would be "cover[ed] [for] defects in workmanship and materials" for a period of "5 years commencing on the earlier of [] 4 months from the date the product is shipped from SolarEdge; and [] the installation of the product." Exhibit B.

ER-008

31.     The Warranty applies to both "the buyer who has purchased the Products from an authorized seller of SolarEdge . . . and may be transferred from buyer to any assignee, and will remain in effect for the time period remaining under the foregoing warranties, *provided* that the Products are not moved outside of its original country of installation and any reinstallation is done in accordance with the installation directions and use guidelines accompany the Products." Plaintiff, as the purchaser of a Cell Plug-In from an authorized seller of SolarEdge, was thus entitled to enforce the provisions of the Warranty.

32.     The Warranty provides that in the event of a defect in workmanship or materials, SE will either "repair the Product at SolarEdge's facilities or on-site; or issue a credit note for the defective Product in an amount up to its actual value at the time buyer notifies SolarEdge of the defect, as determined by SolarEdge, for use toward the purchase of a new Product; or provide Buyer with replacement units for the Product."

33.     Because the Cell Plug-Ins at issue here no longer function at all, SE cannot in fact replace or repair the Cell Plug-Ins. The only remedy would be to install newly manufactured cellular plug-ins that work on new networks. Accordingly, the remedies offered by the Warranty fail of their essential purpose, i.e., to put the purchaser in the position he or she would have enjoyed but for the breach of the Warranty. The only effective remedy for breach of the Warranty is to remove the existing Cell Plug-Ins and replace them with newer models.

34.     The Warranty purports to limit the rights and remedies of purchasers of the Cell Plug-Ins, including, but not limited to:

A. "All costs, including, without limitation, labor, travel and boarding costs of SolarEdge service personnel or others that are incurred for labor relating to repairs, uninstalling and reinstalling of Products on-site, as well as costs related to buyer's employees and contractors repair or replacement activities, are not covered by the Limited Warranty and,

7

ER-009

unless otherwise agreed in writing in advance by SolarEdge, shall be borne by the buyer."

B. SE disclaims "ANY OTHER WARRANTIES WITH RESPECT TO THE PRODUCTS PURCHASED BY BUYER FROM SOLAREDGE, WHETHER EXPRESS OR IMPLIED, WRITTEN OR ORAL (INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE)."

C. SE states that "SolarEdge's sole obligation and buyer's exclusive remedy for any defect warranted hereunder is limited to those actions expressly stated above."

35. These purported limitations and exclusions (the "Exclusions") are unenforceable against Plaintiff and the Class. The Exclusions were not bargained for by SE and its customers but were imposed unilaterally by SE. The Exclusions are unfair because they are outside the reasonable expectations of the parties thereto, deny consumers an effective remedy and purpose to limit the rights of consumers in ways that are unenforceable under the Song-Beverly Consumer Warranty Act and Magnuson-Moss Warranty Act.

36. The Exclusions' limitation on SE's liability solely to the cost of the replacement of the Cell Plug-Ins and exclusion of any other damages or labor costs is also unfair because the cost of installing the Cell Plug-In is a significant cost potentially greater than the cost of the Cell Plug-In itself.

37. The unfairness of the Exclusions is also demonstrated by unenforceable provisions of the Warranty that state it is the "exclusive remedy" and the purported exclusion of implied warranties. Plaintiff and the Class have substantial rights and remedies available for breach of implied and express warranty due to the defective nature of the Cell Plug-Ins which SE cannot lawfully preclude them from asserting.

38. Additionally, SE makes further representations in the product

8

datasheet (attached as Exhibit A) for the Cell Plug-Ins themselves and as noted in the Warranty which advises that "[s]ome components may carry their own manufacturer warranty. See product datasheet for more details."

39.     The product datasheet for the Cell Plug-Ins represents that the plug-ins "[c]onnect[] SolarEdge inverters wirelessly to the internet," "[e]nable[] remote analysis and troubleshooting," and a "5-year/12-year data plan is included."

40.     The datasheet also specifically makes the representation that "For 12 year data plans – in the event that third party cellular technology currently used by SolarEdge [] is phased out or becomes otherwise unavailable, SolarEdge shall ship replacement parts such as modem and/or sim card of a prevailing technology. Upon such replacement, the new prevailing hardware shall continue to be covered for the remainder of the original data plan duration."

41.     These representations and warranties were broadly disseminated on SE's website. These representations were false because the Cell Plug-Ins did not provide remote analysis and troubleshooting for a period of 5-years or 12-years as promised and also because SE refused to honor the specific representation made that if the technology became deprecated it would replace it.

42.     Purchasers of the Cell-Plugins as part of solar systems rely on distributors, sellers, and installers of solar systems to advise them concerning the advantages of purchasing solar systems and of the unique benefits of different manufacturers, such as SE. Accordingly, SE knew that if it wanted to sell inverters including Cell Plug-Ins to end users, it first had to convince distributors, sellers, and installers to sell its products over competitors.

43.     SE's marketing plan for its products, including the Cell Plug-Ins, relies almost exclusively on authorized distributors and sellers selling its products to consumers, such as Plaintiff.

44.     SE consistently marketed and promoted its app and website monitoring system as enabled by the Cell Plug-Ins to distributors, sellers, and

installers who thereafter communicated this information to consumers, including Plaintiff, as a reason to purchase a solar system including a SE inverter and Cell Plug-In.

45.     In 2019, as part of her purchase of her solar system, Plaintiff was provided information about SE and its monitoring system as well as SE's warranty with respect to the performance of its monitoring system.

46.     If SE's authorized distributors, sellers, and installers had been made aware of the falsity of SE's representations that the Cell Plug-Ins were free form defects in materials and workmanship, would provide monitoring services for between five and twelve years, and were covered under warranty, they would have recommended that Plaintiff and the Class not purchase SE products including the Cell Plug-Ins and instead select another inverter system.  If the distributors, sellers, and installers had recommended against purchasing SE's products including Cell Plug-Ins, Plaintiff and the Class would not have purchased them. If members of the Class had been aware from any source of these misrepresentations and omissions, they would not have purchased products including the Cell Plug-Ins.

**Plaintiff's Individual Allegations**

47.      On or about September 2019, Plaintiff began shopping for a solar system for her home.

48.     She ultimately decided to go with an authorized installer of SE products who recommended a system consisting of 33 325 QCell panels hooked into a SE StoreEdge 7600 Inverter, which is a combination battery and inverter, and a SE 3800 HD Wave Inverter.  Both inverters had Cell Plug-Ins.

49.     The installer advised Plaintiff that, based on SE's representations, the SE inverters would allow Plaintiff to monitor and troubleshoot her solar production from an app or website offered by SE and that it included a cellular plan of between five and twelve years along with a warranty.

50.     Being able to monitor her solar system remotely was important to

ER-012

Plaintiff and a key part of her decision with regards to which components to include in her solar system.

51. Plaintiff relied on these representations and warranties in deciding to purchase a solar system which included the Cell Plug-Ins. Had the authorized installer or any other person informed Plaintiff that the Cell Plug-Ins were not actually warranted to work and, in fact, would become useless within three (3) years, she would not have agreed to purchase products including SE's Cell Plug-Ins.

52. On September 10, 2021, Plaintiff executed her contract with the authorized installer and agreed to purchase the solar system including the Cell Plug-Ins for a net cost of $36,876 after tax credit.

53. On or around January 27, 2022, Defendant sent Plaintiff an email informing her that the Cell Plug-In component of her inverters would be rendered inoperable by the deprecation of the 3G cellular networks, and that if the modem was not replaced Plaintiff would no longer have access to her system monitoring.

54. Defendant also directed its sales agent, 365 Pronto, to begin repeatedly emailing Plaintiff about purchasing a replacement plug-in which would cost $633 including parts and labor.

55. Because Defendant affirmatively disclaimed its Warranty through its email and published FAQ (Exhibit D), Plaintiff felt that she had no choice except to incur the parts and labor costs on her own to replace the defect Cell Plug-Ins.

56. Plaintiff was required to replace not one, but two Cell Plug-Ins, with the first being in the panel inverter and the second being in the battery inverter.

57. As such, Plaintiff has incurred labor and parts costs to replace the two Cell Plug-Ins modems in order to maintain her system monitoring plan, despite Defendant's representations that the system monitoring plan would be provided for a period of between five and twelve-years and also under a Warranty that covered defects.

ER-013

58.     The failure of the Cell Plug-Ins due to a deprecation of the 3G wireless network constitutes a defect which is a breach of the Warranty. On June 9, 2022, through her attorneys of record, Plaintiff notified SE by letter (Exhibit E) of the breach of warranty and CLRA on behalf of herself and the Class and demanded SE repair the defects and compensate Plaintiff and the Class for out-of-pocket costs.

59.     SE has failed to respond to this letter and thus refused to honor its Warranty.

## CLASS ALLEGATIONS

60.     Plaintiff brings a Class claim pursuant to Fed. R. Civ. P. 23 on behalf of herself and all others similarly situated members of the proposed Class defined as follows:

> All persons in the United States (a) who purchased the Cell Plug-Ins from an authorized seller of SolarEdge or (b) who currently own systems which include Cell Plug-Ins.

61.     Excluded from the Class are Defendant, any entity in which any Defendant has a controlling interest, and Defendant's legal representatives, heirs and successors, and any judge to whom any aspect of this case is assigned, and any member of such a judge's immediate family.

62.     Plaintiff also seeks to represent a Subclass consisting of all Class Members within the State of California. Plaintiff reserves the right to modify or amend the Class definition as appropriate.

63.     Defendant, its employees, and agents are excluded from the Class. Plaintiff does not know the number of members in The Class, but believes the Class members number in the hundreds, if not more.  Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

64.     The Class are so numerous that the individual joinder of all of its members is impractical.  While the exact number and identities of the Class

12

ER-014

members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class includes tens of thousands of members.  Plaintiff alleges that the Class members may be ascertained by the records maintained by Defendant.

65.    Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant sold Cell Plug-Ins which were represented to include a Warranty as well as a five or twelve-year cellular data plan when in fact such Cell Plug-Ins became defective and useless following the deprecation of the 3G wireless networks in 2022.  This caused the Class members to suffer a loss of value for their Cell Plug-Ins.

66.    Common questions of fact and law exist as to all members of the Class which predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class members, include, but are not limited to, the following:

(a)    Whether Defendant violated California Bus. & Prof. Code § 17200, et seq. by, among other things, engaging in unfair, unlawful, or fraudulent practices;

(b)    Whether Defendant breached their implied warranties to Plaintiff and the Class;

(c)    Whether Defendant violated California Consumer Legal Remedies Act, Cal. Civ. C. § 1750, et seq. by, misrepresenting the nature or terms of its Cell Plug-Ins;

(d)    Whether Defendant breached its express warranties to Plaintiff and the Class;

(e)    Whether Plaintiff and the Class are entitled to compensatory damages, and the amount of such damages; and

(f)    Whether Defendant should be declared financially responsible

ER-015

for the costs and expenses of removal and replacement of all Cell Plug-Ins as well as compensation for the lost monitoring ability during the outage following the 3G Sunset.

67.     As a person that purchased a system which included two Cell Plug-Ins that became defective and needed replacement in 2022, Plaintiff is asserting claims that are typical of the Class.

68.     Plaintiff will fairly and adequately protect the interests of the members of The Class.  Plaintiff has retained attorneys experienced in the prosecution of class actions.

69.     A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable.  Even if every Class member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues.  By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

70.     The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

71.     Defendant has acted or refused to act in respects generally applicable to The Class thereby making appropriate final and injunctive relief with regard to the members of the Classes as a whole.

ER-016

72. As a result of the facts alleged herein, Plaintiff and the Class have been damaged in an amount equal to the cost to replace and install new cellular plug-ins to replace the Cell Plug-Ins and render their systems operable. Additionally, the acts of SE in misrepresenting and omitting relevant facts concerning its Cell Plug-Ins and actively seeking to enforce the Exclusions and suppress claims through affirmative emails discouraging such claims were malicious in that they represent "despicable conduct" carried out by SE "with a willful and conscious disregard of the rights or safety of others", oppressive conduct in that they represent "despicable conduct that subjects a person to a cruel and unjust hardship in conscious disregard of that person's right," and fraudulent conduct. Accordingly, Plaintiff and the Class are entitled to punitive damages according to proof.

## COUNT I
## Violation of Unfair Business Practices Act
## (Cal. Bus. & Prof. Code §§ 17200 et seq.)
*Individually, and on behalf of the Class*

73. Plaintiff incorporates by reference each allegation set forth above.

Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL. Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection between a defendants' business practices and the alleged harm--that is, evidence that the defendants' conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the Defendant's conduct created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

## UNFAIR

74.     California Business & Professions Code § 17200 prohibits any "unfair . . business act or practice."  Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.  Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

75.     In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

76.     Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class.  Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to refuse to honor its Warranty and representations with regards to the Cell Plug-Ins and affirmative actions to attempt to suppress the submission of such claims, including by seeking to enforce the Exclusions.  Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Class.

77.     Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer.  Such deception utilized by Defendant convinced Plaintiff and members of the Class that the Cell Plug-Ins were not covered by Warranty and thus they would need to pay in excess of $500 out of pocket to replace these products that Defendant actually had an obligation to replace. Further, despite knowing in 2018 that its Cell Plug-Ins

ER-018

would become defective within the minimum five (5) year cellular plans it sold for the Cell Plug-Ins when the 3G networks were deprecated in 2022, Defendant continued to manufacture and sell, through its authorized resellers and installers, Cell Plug-Ins. Defendant unfairly profited by refusing to pay the costs it was required to pay under a warranty and instead foisting those costs onto Plaintiff and the Class. Thus, the injury suffered by Plaintiff and the members of the Class is not outweighed by any countervailing benefits to consumers.

78.     Finally, the injury suffered by Plaintiff and members of the Class is not an injury that these consumers could reasonably have avoided.  Defendant did not represent or advise consumers that the Cell Plug-Ins would become defective in 2022 until January 2022 at which point they had been paid for and installed. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members to purchase Cell Plug-Ins which were represented to have features and warranties which SE knew it would not honor.  Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

79.     Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

### **FRAUDULENT**

80.     California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice."  In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

81.     The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived.  Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

82.     Here, not only were Plaintiff and the Class members likely to be

ER-019

deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiff agreed to purchase a solar system including two SE inverters and Cell Plug-Ins with the understanding that such Cell Plug-Ins came with a data plan of between five and twelve years as well as a warranty that would cover defects. This was in fact false, because the Cell Plug-Ins became defective in 2022 as planned and SE refused to repair them. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

83.     Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

## UNLAWFUL

84.     California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

85.     SE's conduct was unlawful because it violated the Consumer Legal Remedies Act, Magnuson-Moss Warranty Act, and Song-Beverly Consumer Warranty Act as set forth herein.

86.     Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiffs and Classes Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief. Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

## COUNT II
## Violation of the California Consumer Legal Remedies Act
## (Cal. Civ. C. § 1750 et seq.)

ER-020

*Individually, and on behalf of the Class*

87.    Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

88.    The defect alleged herein is detailed at Paragraphs 1 through 6 and 20 through 22. SE's knowledge and concealment of the defect is detailed at paragraphs 23 through 24. SE's representations concerning its Cell Plug-Ins and the falsity of those representations is detailed at paragraphs 25 through 26 and 38 through 41. SE's dissemination of its misrepresentations and its effects through its distributors, sellers, and installers to induce adverse reliance by consumers on those representations and omissions is detailed at paragraphs 42 through 46 and 48 through 52. SE's refusal to remedy the problem is addressed at paragraphs 53 through 59. The Exclusions and their unfairness is detailed at paragraphs 30 through 37. SE's attempts to affirmatively disclaim and suppress warranty claims is detailed at paragraphs 27 through 29 and 77 through 78.

89.    The Cell Plug-Ins are "goods" as defined by Cal. Civ. C. § 1761(a).

90.    Defendant SE is a "person" as defined by Cal. Civ. C. § 1761(c).

91.    Plaintiff and members of the Class are "consumers" as defined by Cal. Civ. C. § 1761(d) who purchased the Cell Plug-Ins for personal, family, and household purposes.

92.    The purchase by Plaintiff and members of the Class of the Cell Plug-Ins are "transactions" as defined by Cal. Civ. C. § 1761(e).

93.    Under the Consumer Legal Remedies Act, Cal. Civ. C. § 1770 et. seq., the following methods of competition are unlawful when any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumers:

          a.    Representation that goods or services of a particular standard, quality, or grade, or that goods are of a particular style of model, if they are of another. Cal. Civ. C. §  1770(7).

ER-021

   b. Representing that a transaction confers or involves rights,
      remedies, or obligations which it does not have or involve, or
      which are prohibited by law. Cal. Civ. C. § 1770(14):

   c. Representing that the subject of a transaction has been supplied in
      accordance with a previous representation when it has not. Cal.
      Civ. C. § 1770(16).

   d. Inserting an unconscionable provision in a contract. Cal. Civ. C. §
      1770(19)

94.     SE violated Cal. Civ. C. § 1770(a)(7), (14), and (16) when it
represented that the Cell Plug-Ins had certain characteristics regarding their length
of use when they did not. These representations were disseminated as detailed in
paragraphs 42 through 26, 48 through 52, 27 through 29, and 77 through 78. SE
violated Cal. Civ. C. § 1770(a)(14), (16), and (19) when it represented that the Cell
Plug-Ins came with a warranty that would cover the defect presented and by
including unconscionable Exclusions as set forth in paragraphs 30 through 37.

95.     Plaintiff served SE with notice of its violations of the CLRA pursuant
to Cal. Civ. C. § 1782 by certified mail on June 9, 2022, attached as Exhibit E.
Defendant SE failed to provide or offer to provide remedies for its violations of the
CLRA within 30 days of the date of the notice.

<u>**COUNT III**</u>

<u>**Breach of Express Warranty**</u>

*Individually, and on behalf of the Class*

96.     Plaintiff incorporates by reference each allegation set forth in the
preceding paragraphs.

97.     SE made the warranties described in the Warranty and Exhibit A.

98.     SE is not entitled to enforce the Exclusions described in paragraphs 30
through 37 because they are unconscionable and violate the provisions of the
Song-Berly Consumer Warranty Act and the Magnuson-Moss Warranty Act.

ER-022

99.    Because the Cell Plug-Ins have failed within their expected useful life, SE is in breach of its Warranty and representations made in Exhibit A.

100.    As detailed above, SE has failed to remedy the breach of the warranties for either Plaintiff or the Class.

101.    Although Plaintiff does not believe that notice to SE of its breaches of warranty are required under applicable law, Plaintiff has provided notice of its breached of the warranties individually and on behalf of the Class at Exhibit E.

102.    Further notice to SE of its breach of the warranties would be futile because SE is aware of and has acknowledge the defects in the Cell Plug-Ins but has affirmatively set forth that it will not honor its warranty with respect to the Cell Plug-Ins.

103.    As a result of SE's breach of the Warranty and warranties, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

<u>**COUNT IV**</u>

<u>**Breach of Express Warranty – Magnuson-Moss Warranty Act**</u>

<u>**(Magnuson-Moss Warranty Act, 15 U.S.C. § 2300 et. seq.)**</u>

*Individually, and on behalf of the Class*

104.    Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

105.    The Cell Plug-Ins are a consumer product as defined in 15 U.S.C. § 2301(1).

106.    Plaintiff and the members of the Class are consumers as defined in 15 U.S.C. § 2301(3).

107.    SE is a supplier and warranty as defined in 15 U.S.C. § 2301(4) & (5).

108.    The Warranty contains "written warranties" within the meaning of 15 U.S.C. § 2301(6).

109.    As alleged above, SE has breached the Warranty.

110.    Additionally, pursuant to 15 U.S.C. § 2304(d)(1), SE may not assess

ER-023

Plaintiff or the Class any costs the warrantor or his representatives occur in connection with the required remedy of a warranted product because "if any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor." SE has refused to pay all costs associated with the removal and replacement of the Cell Plug-Ins.

111.   Plaintiff has provided SE with notice of breach of the Warranty and a reasonable opportunity to cure the breach. In addition, the notice afforded SE notice on behalf of the Class of its breach of the Warranty and a reasonable opportunity to remedy the breach. SE has failed to remedy the breach of its obligations to the Class under the Warranty.

112.   Further notice to SE of its breach of the warranties would be futile because SE is aware of and has acknowledge the defects in the Cell Plug-Ins but has affirmatively set forth that it will not honor its warranty with respect to the Cell Plug-Ins.

113.   As a result of SE's breach of the Warranty and warranties, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

**COUNT V**

**Breach of Express Warranty – Song-Beverly Warranty Act**

**(Cal. Civ. C. § 1792 et. seq.)**

*Individually, and on behalf of the Subclass*

114.   Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

115.   The Cell Plug-Ins are consumer product as defined in California's Song-Beverly Consumer Warranty Act.

116.   SE is a "manufacturer" within the meaning of the statute.

117.   Plaintiff and members of the Subclass purchased Cell Plug-Ins within the State of California.

118.   As alleged above, SE breached the Warranty.

119.   Plaintiff has provided SE with notice of breach of the Warranty and a reasonable opportunity to cure the breach. In addition, the notice afforded SE notice on behalf of the Subclass of its breach of the Warranty and a reasonable opportunity to remedy the breach. SE has failed to remedy the breach of its obligations to the Subclass under the Warranty.

120.   Further notice to SE of its breach of the warranties would be futile because SE is aware of and has acknowledge the defects in the Cell Plug-Ins but has affirmatively set forth that it will not honor its warranty with respect to the Cell Plug-Ins.

121.   As a result of SE's breach of the Warranty and warranties, Plaintiff and the Subclass have suffered damages in an amount to be proven at trial.

### COUNT VI
### Breach of Implied Warranty
*Individually, and on behalf of the Class*

122.   Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

123.   The sale by SE of the Cell Plug-Ins was accompanied by implied warranties that the Cell Plug-Ins were merchantable and fit for the ordinary purpose for which such products were sold (the "Implied Warranties").

124.   SE issued the Warranty to Plaintiff and the Class. SE is therefore in direct privity with Plaintiff and all members of the Class.

125.   Further, the Implied Warranties incorporated into the transaction between SE and its immediate purchasers, including authorized sellers and installers (the "SE Vendors") were intended solely to benefit Plaintiff and the Class. Plaintiff and the Class are therefore entitled to enforce the Implied

ER-025

Warranties against SE.

126.   This intent is evidence by the fact that the written Warranty issued by SE not only extends to ender users but to their successors. Further, the Implied Warranties made by SE to the SE Vendors would be of no economic value to the SE Vendors unless Plaintiff and the Class received the benefits of such warranties. The SE Vendors are not users of the Cell Plug-Ins. The economic benefit of implied warranties made by SE to the SE Vendors depends on the ability of end users who buy their products to obtain redress form SE if the warranties are breached.

127.   Under *Gilbert Financial Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65 (1978), the Implied Warranties made by SE to the SE Vendors are enforceable whether or not Plaintiff or the Class were in privity of contract with SE.

128.   SE breached the Implies Warranties in that the Cell Plug-Ins are not fit for their intended use and not of merchantable quality because they have been rendered defective and inoperable because of the 3G Sunset.

129.   Although Plaintiff does not believe that notice to SE of its breaches of warranty are required under applicable law, Plaintiff has provided SE with notice of breach of the Warranty and a reasonable opportunity to cure the breach. In addition, the notice afforded SE notice on behalf of the Class of its breach of the Warranty and a reasonable opportunity to remedy the breach. SE has failed to remedy the breach of its obligations to the Class under the Warranty.

130.   Further notice to SE of its breach of the warranties would be futile because SE is aware of and has acknowledge the defects in the Cell Plug-Ins but has affirmatively set forth that it will not honor its warranty with respect to the Cell Plug-Ins.

131.   As a result of SE's breach of the Implied Warranties, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

ER-026

## COUNT VII

### Breach of Implied Warranty – Magnuson-Moss Warranty Act

### (Magnuson-Moss Warranty Act, 15 U.S.C. § 2300 et. seq.)

*Individually, and on behalf of the Class*

132.    Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

133.    The Cell Plug-Ins are a consumer product as defined in 15 U.S.C. § 2301(1).

134.    Plaintiff and the members of the Class are consumers as defined in 15 U.S.C. § 2301(3).

135.    SE is a supplier and warranty as defined in 15 U.S.C. § 2301(4) & (5).

136.    Under 15 U.S.C. § 2301(7), SE extended the Implied Warranties to Plaintiff and the Class.

137.    Defendant breached the Implied Warranties by selling Cell Plug-Ins that were neither merchantable nor fit for their intended purpose.

138.    Under 15 U.S.C. § 2310(e), notice of breach of warranty need not be provided until after Plaintiff has been appointed Class Representative.

139.    Plaintiff has provided SE with notice of breach of the Warranty and a reasonable opportunity to cure the breach. In addition, the notice afforded SE notice on behalf of the Class of its breach of the Warranty and a reasonable opportunity to remedy the breach. SE has failed to remedy the breach of its obligations to the Class under the Warranty.

140.    Further notice to SE of its breach of the warranties would be futile because SE is aware of and has acknowledge the defects in the Cell Plug-Ins but has affirmatively set forth that it will not honor its warranty with respect to the Cell Plug-Ins.

141.    As a result of SE's breach of the Implied Warranties, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

ER-027

## COUNT VIII

### Breach of Implied Warranty – Song-Beverly Warranty Act

### (Cal. Civ. C. § 1792 et. seq.)

*Individually, and on behalf of the Subclass*

142.   Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

143.   Under the Song-Beverly Consumer Warranty Act, every sale of consumer goods in the State of California is accompanied by a manufacturer's implied warranty that the goods are merchantable.

144.   The Cell Plug-Ins are consumer goods within the meaning of the statute.

145.   Defendant SE is a "manufacturer" within the meaning of the statute.

146.   Plaintiff and members of the Subclass purchased Cell Plug-Ins within the State of California.

147.   By operation of law, Defendant made Implied Warranties to Plaintiff and the Class concerning the Cell Plug-Ins.

148.   Defendant breached those Implied Warranties by selling Cell Plug-Ins which were not of merchantable quality and failed to perform the tasks for which they were intended.

149.   Plaintiff and the Subclass do not have to be in privity because they are intended beneficiaries of the Implied Warranties between SE and SE Vendors as set forth above and therefore are entitled to enforce the Implied Warranties against SE.

150.   Plaintiff has provided SE with notice of breach of the Warranty and a reasonable opportunity to cure the breach. In addition, the notice afforded SE notice on behalf of the Class of its breach of the Warranty and a reasonable opportunity to remedy the breach. SE has failed to remedy the breach of its obligations to the Class under the Warranty.

ER-028

151.   Further notice to SE of its breach of the warranties would be futile because SE is aware of and has acknowledge the defects in the Cell Plug-Ins but has affirmatively set forth that it will not honor its warranty with respect to the Cell Plug-Ins.

152.   As a result of SE's breach of the Implied Warranties, Plaintiff and the Subclass have suffered damages in an amount to be proven at trial.

## MISCELLANEOUS

153.   Plaintiff and Class Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or that all such obligations or conditions are excused.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and members of the Class and Subclass respectfully pray for the following relief:

a.   An order certifying the Class under Fed. R. Civ. P. 23 and appointing Plaintiff as Representative of the Class and Subclass;

b.   An order certifying the undersigned counsel as Class Counsel;

c.   An order requiring Defendant, at its own cost, to notify all Class Members of the fraudulent and deceptive conduct herein;

d.   An injunction enjoining SE from enforcing, threatening to enforce or claiming the right to enforce any of the Exclusions;

e.   Actual damages suffered by Plaintiff and Class and Subclass Members as applicable or full restitution;

f.   Any and all statutory enhanced damages;

g.   For exemplary and punitive damages according to proof;

h.   All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

i.   Pre- and post-judgment interest; and

ER-029

j.      All other relief, general or special, legal and equitable, to which Plaintiff and Class Members may be justly entitled as deemed by the Court.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and all others similarly situated, demands a trial by jury on all questions of fact raised by the Complaint.

Dated:  October 21, 2022          Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN , PC


By: /s/ Todd M. Friedman
TODD M. FRIEDMAN, ESQ.
*Attorneys for Plaintiff*

28

Filed electronically on this 21st Day of October, 2022, with:

United States District Court CM/ECF system.

Notification sent electronically on this 21st Day of October, 2022, to:

Honorable Jesus G. Bernal
United States District Court
Central District of California
And All Counsel of Record as Recorded On The Electronic Service List


/s/ Todd M. Friedman, Esq.

TODD M. FRIEDMAN

Case: 23-55036, 10/18/2023, ID: 12812041, DktEntry: 9, Page 32 of 147

COMMUNICATION

# Cellular Plug-in with Data Plan for the US

**For Commercial Systems:**
CELL-A-R05-US-S-S4
CELL-A-R05-US-S-S5

**And for Residential Systems:**
CELL-A-R05-US-S-S2
CELL-A-R12-US-S-S2

**5/12 YEAR WARRANTY**



## Cellular Internet Connectivity for Commercial and Residential Installations

❚ Compatible for inverters with a display

❚ Connects SolarEdge inverters wirelessly to the internet

❚ No need for internet infrastructure at site

❚ Installed within the inverter enclosure for outdoor resilience, or in the communication gateway

❚ Supports high bandwidth monitoring of inverters, power optimizers, batteries, meters and weather stations

❚ Enables remote analysis and troubleshooting

❚ 5-year/12-year data plan is included

❚ Comprehensive coverage in the US

solaredge.com



ER-032

Case: 23-55636, 10/18/2023, ID: 12812041, DktEntry: 9, Page 33 of 147 #:117

# / Cellular Plug-in with Data Plan

## For The US

CELL-A-R05-US-S-S2, CELL-A-R12-US-S-S2, CELL-A-R05-US-S-S4, CELL-A-R05-US-S-S5

| COMPATIBLE INVERTERS | SExxxx-xxxxxNxxx (INVERTERS WITH A DISPLAY) | | UNIT |
|---|---|---|---|
| Coverage[1] | Refer to the following link and select the CAT M1 option: https://www.solaredge.com/index.php/us/products/communication/cellular-communication-options#/ | | |
| Monitoring | Continuous connection with 5 minute telemetry from all connected inverters | | |
| Supported Residential Systems (CELL-A-R05-US-S-S2/ CELL-A-R12-US-S-S2) | Residential systems: 1 inverter, up to 45 power optimizers, and 1 meter Residential StorEdge systems: 1 inverter connected, up to 30 power optimizers, 2 batteries and 1 meter | | |
| Supported Power of Commercial Systems | Up to 200 (for CELL-A-R05-US-S-S4) | Up to 1000 (for CELL-A-R05-US-S-S5) | kW AC |
| Number of Monitored Inverters with a single Cellular Plug-in | Commercial: Up to 32 inverters, limited by the system AC size[2] Residential: 1 inverter | | |
| Data Plan Duration | 5 or 12 years prepaid plan (depends on R05 or R12 part numbers respectively) | | |
| **RF PERFORMANCE** | Operating Frequency | | |
| LTE Cat M1 FDD | Freq (MHz) / Band | Modem Transmit / Receive | |
| | 2100 (B1) | 1920-1980 / 2110-2170 | MHz |
| | 1900 (B2) | 1850-1910 / 1930-1990 | MHz |
| | 1800 (B3) | 1710-1785 / 1805-1880 | MHz |
| | 1700 (B4) | 1710-1755 / 2110-2155 | MHz |
| | 850 (B5) | 824-849 / 869-894 | MHz |
| | 900 (B8) | 880-915 / 925-960 | MHz |
| | 700 (B12) | 699-716 / 729-746 | MHz |
| | 700 (B13) | 777-787 / 746-756 | MHz |
| | 850 (B18) | 815-830 / 860-875 | MHz |
| | 850 (B19) | 830-845 / 875-890 | MHz |
| | 800 (B20) | 832-862 / 791-821 | MHz |
| | 1900 (B25) | 1850-1915 / 1930-1995 | MHz |
| | 850 (B26) | 814-849 / 859-894 | MHz |
| | 700 (B28) | 703-748 / 758-803 | MHz |
| LTE Cat M1 TDD | 1900 (B39) | 1880 / 1920 | MHz |
| Maximum transmit power | 23 | | dBm |
| Receiver Input Sensitivity Cat M1, 1.4 MHz Bandwidth, CE Mode A | -107 | | dBm |
| LTE Cat-M1 bandwidth | 1.4 | | MHz |
| LTE Cat-M1 modulation | Downlink: OFDMA, 16 QAM  Uplink: SC-FDMA, 16 QAM | | |
| **ANTENNA** | | | |
| Dual Antenna Bands | 824-960 | 1710-2170 | MHz |
| Antenna Type | Outdoor | | |
| Antenna Connector | RP-SMA or N plug[1] | | |
| VSWR | ≤4.0 | | |
| Gain | 2 | | dBi |
| Polarization | Vertical | | |
| Material | PC Lexan 503R-WH515.1L or WH8G952 Sabic | | |
| Dimensions (Length x Diameter) | 7.87 x 0.78 / 200 x 20 | | in / mm |
| **STANDARD COMPLIANCE** | | | |
| EMC and Radio | FCC parts 15, 22, 24 class B; Industry Canada (IC): ICS-003, RSS-102 | | |
| Safety | cUL, UL60950 | | |
| RoHS | Yes | | |
| **INSTALLATION SPECIFICATIONS** | | | |
| Dimensions (L x W x H) | 3.56 x 1.35 x 0.55 / 90.54 x 34.5 x 14.2 | | in / mm |
| Operating Temperature | -40 to +85 / -40 to +185 | | °C / °F |
| Mounting | Built into the inverter or purchased separately | | |
| Power consumption | 1000 (@ 23 dBm output power) | | mW |
| **SIM CARD HOLDER** | | | |
| Type | Nano Sim | | |

(1) Available only in the US. For 12 year data plans - in the event that third party cellular technology currently used by SolarEdge (LTE Cat-M1) is phased out or becomes otherwise unavailable, SolarEdge shall ship replacement parts such as modem and/or SIM card of a prevailing technology. Upon such replacement, the new prevailing hardware shall continue to be covered for the remainder of the original data plan duration. Customer is responsible for verifying that the region of installation is covered by the LTE Cat-M1 network prior to any installation by accessing: https://www.solaredge.com/index.php/us/products/communication/cellular-communication-options#/. SolarEdge shall not be responsible or liable for unavailability or discontinuance of network coverage in a specific area or region or any network downtime
(2) For larger systems, use multiple cellular plug-ins
(3) Two types of antennas may be supplied interchangeably

ER-033

# Cellular Plug-in with Data Plan

## For The US

CELL-A-R05-US-S-S2, CELL-A-R12-US-S-S2, CELL-A-R05-US-S-S4, CELL-A-R05-US-S-S5

### Single or Multiple Commercial Inverters



### Single or Multiple Residential Inverters



© SolarEdge Technologies, Inc. All rights reserved. SOLAREDGE, the SolarEdge logo, OPTIMIZED BY SOLAREDGE are trademarks or registered trademarks of SolarEdge Technologies, Inc. All other trademarks mentioned herein are trademarks of their respective owners. Date: 04/2020/V01/ENG NA. Subject to change without notice.



ER-034

**solaredge**

# LIMITED PRODUCT WARRANTY

This SolarEdge Technologies Ltd. Limited Warranty covers defects in workmanship and materials of the below-listed products for the applicable Warranty Period set out below (the "Products"):

- **Power optimizers**: 25 years commencing on the earlier of: (i) 4 months from the date the power optimizers are shipped from SolarEdge; and (ii) the installation of the power optimizers, *provided, however*, that for the module embedded power optimizers (CSI and OPJ models), the Warranty Period shall not exceed the maximum of (1) the module product warranty and (2) the module power warranty periods provided by the applicable module manufacturer.

- **Inverters, Safety & Monitoring Interface (SMI), Auto-transformer**: 12* years commencing on the earlier of: (i) 4 months from the date the products are shipped from SolarEdge; and (ii) the installation of the products.

- **StorEdge Interface**: 10 years commencing on the earlier of: (i) 4 months from the date the Interfaces are shipped from SolarEdge; and (ii) the installation of the Interfaces.

- **ZigBee Gateway, Commercial Gateway, Firefighter Gateway, Smart Energy products, Wireless Communication Products, RS485 Plug-in, Energy Meter**: 5 years commencing on the earlier of: (i) 4 months from the date the product is shipped from SolarEdge; and (ii) the installation of the product. Warranty duration of wireless communication products is the same whether or not the product is pre-installed in the inverter.

* In some countries the inverter warranty is limited to 7 years. For a list of these countries please access http://www.solaredge.com/articles/warranty_exceptions

The Limited Warranty does not apply to components which are separate from the Products, ancillary equipment and consumables, such as, for example, cables, cable holders, fuses, wires and connectors, whether supplied by SolarEdge or others. Some components may carry their own manufacturer warranty. See product datasheet for more details. In addition, for all power optimizers with a part number ending in C, the SolarEdge warranty does not apply to the input connector.

The Limited Warranty only applies to the buyer who has purchased the Products from an authorized seller of SolarEdge for use in accordance with their intended purpose.  The Limited Warranty may be transferred from buyer to any assignee, and will remain in effect for the time period remaining under the foregoing warranties, *provided* that the Products are not moved outside its original country of installation and any reinstallation is done in accordance with the installation directions and use guidelines accompany the Products (collectively the "*Documentation*").

If, during the applicable Warranty Period, buyer discovers any defect in workmanship and materials and seeks to activate the Limited Warranty, then buyer shall, promptly after such discovery, report the defect to SolarEdge by sending an email to support@solaredge.com with the following information: (i) a short description of the defect, (ii) the Product's serial number, and (iii) a scanned copy of the purchase receipt or warranty certificate of the applicable Product.

Upon buyer's notification, SolarEdge shall determine whether the reported defect is eligible for coverage under the Limited Warranty.  The Product's serial number must be legible and properly attached to the Product in order to be eligible for Warranty coverage.  If SolarEdge determines that the reported defect is not eligible for coverage under the Limited Warranty, SolarEdge will notify buyer accordingly and will explain the reason why such coverage is not available.  If SolarEdge determines that the reported defect is eligible for coverage under the Limited Warranty, SolarEdge will notify buyer accordingly, and SolarEdge may, in its sole discretion, take any of the following actions:

- repair the Product at SolarEdge's facilities or on-site; or

- issue a credit note for the defective Product in an amount up to its actual value at the time buyer notifies SolarEdge of the defect, as determined by SolarEdge, for use toward the purchase of a new Product; or

- provide Buyer with replacement units for the Product.

SolarEdge will determine whether the Product should be returned to SolarEdge and, if SolarEdge so determined, the Return Merchandise Authorization ("*RMA*") Procedure (set out below) will be invoked. Where replacement Products are sent, SolarEdge generally sends such products within 48 hours. SolarEdge may use new, used or refurbished parts that are at least functionally equivalent to the original part when making warranty repairs. The repaired Product or replacement parts or Product, as applicable, shall continue to be covered under the Limited Warranty for the remainder of the then-current Warranty Period for the Product.

Where the RMA Procedure is invoked by SolarEdge, SolarEdge will instruct buyer how to package and ship the Product or part(s) to the designated location.  SolarEdge will bear the cost of such shipment, upon receipt of the Product or part(s), SolarEdge will, at its expense and sole discretion, either repair or replace the Product or part(s).

SolarEdge will deliver the repaired or replaced Product or part(s) to buyer at buyer's designated location in countries where SolarEdge has an office and/or there is a significant PV market. For the specific list of countries to which such service is provided,

ER-035

please access http://www.solaredge.com/articles/shipping_cost_coverage_warranty. SolarEdge will bear the cost of such shipment, including shipping and customs (where applicable) and buyer shall bear any applicable value added tax. SolarEdge may elect to ship replacement Product and/or part(s) prior to receipt of the Product and/or part(s) to be returned to SolarEdge as per the above.

All costs, including, without limitation, labor, travel and boarding costs of SolarEdge service personnel or others that are incurred for labor relating to repairs, uninstalling and reinstalling of Products on-site, as well as costs related to buyer's employees and contractors repair or replacement activities, are not covered by the Limited Warranty and, unless otherwise agreed in writing in advance by SolarEdge, shall be borne by the buyer.

**Warranty Exclusions:** This Limited Warranty will not apply if (a) buyer is in default under the General Terms and Conditions of other Agreement governing the purchase of the Product, or (b) the Product or any part thereof is:

- damaged as a result of misuse, abuse, accident, negligence or failure to maintain the Product;

- damaged as a result of modifications, alterations or attachments thereto which were not pre-authorized in writing by SolarEdge;

- damaged due to the failure to observe the applicable safety regulations governing the proper use of the Product;

- installed or operated not in strict conformance with the Documentation, including without limitation, not ensuring sufficient ventilation for the Product as described in SolarEdge installation guide;

- opened, modified or disassembled in any way without SolarEdge's prior written consent;

- used in combination with equipment, items or materials not permitted by the Documentation or in violation of local codes and standards;

- damaged by software, interfacing, parts, supplies or other product not supplied by SolarEdge;

- damaged as a result of improper site preparation or maintenance or improper installation;

- damaged or rendered non-functional as a result of power surges, lightning, fire, flood, pest damage, accident, action of third parties, direct exposure to sea water or other events beyond SolarEdge's reasonable control or not arising from normal operating conditions; or

- damaged during or in connection with shipping or transport to or from buyer where buyer arranges such shipping or transport.

This Limited Warranty does not cover cosmetic or superficial defects, dents, marks or scratches, which do not influence the proper functioning of the Product.

THE LIMITED WARRANTIES SET OUT HEREIN ARE IN LIEU OF ANY OTHER WARRANTIES WITH RESPECT TO THE PRODUCTS PURCHASED BY BUYER FROM SOLAREDGE, WHETHER EXPRESS OR IMPLIED, WRITTEN OR ORAL (INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE), ALL OF WHICH ARE EXPRESSLY EXCLUDED TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW.

Claims by buyer that go beyond the warranty terms set out herein, including claims for compensation or damages, are not covered by the Limited Warranty, insofar as SolarEdge is not subject to statutory liability. In such cases, please contact the company that sold you the Product. Eventual claims in accordance with the law on product liability remain unaffected.

Coverage under the Limited Warranty is subject to buyer complying with the foregoing notification requirements and cooperating with SolarEdge's directions. SolarEdge's sole obligation and buyer's exclusive remedy for any defect warranted hereunder is limited to those actions expressly stated above. Such actions are final and do not grant any further rights, in particular with respect to any claims for compensation.

Unless otherwise specified in an executed Agreement with SolarEdge, the Limited Warranty and related provisions set out herein are subject to SolarEdge's General Terms and Conditions, including, without limitation, the provisions thereof, which relate to disclaimer of warranties, limitation of liability and governing law and jurisdiction.

Revised: April 2019

ER-036

## Your solar system cell network is shutting down

**Cellular Plan Renewal** <cellularplanrenewal@solaredge.com>          Thu, Jan 27, 2022 at 9:32 AM
Reply-To: cellularplanrenewal@solaredge.com



Dear SolarEdge System Owner,

The 5-year, 3G cell plan in the modem that came with your SolarEdge installation is being prematurely discontinued by its provider: T-Mobile (learn more here.) Once this occurs, connection to our server in the cloud will be disconnected. Your system will still produce solar energy, however, you will lose access to:

- Energy monitoring
- Real time usage reports
- Remote installer maintenance
- Solar Renewable Energy Certificates (SRECs) Incentives

While SolarEdge and your installer have no control over this change, we don't want you to lose your connection. As a result, if you purchase and replace your current system's modem before the shutdown, your new cell plan will extend through 2028.

There Are Two Ways to Replace Your Modem:

1. Contact your solar installer
2. Or click below to have a SolarEdge-authorized service provider contact you for pricing and to schedule a replacement

ER-037

Submit My Info

**What You'll Get with Your New Modem:**

- Connection to system monitoring
- More insight, more often—5 minute synching with monitoring
- Quicker remote installer management
- Backup Reserve visibility for systems with battery
- Ability to support more devices, including our Smart EV Charger

\* Please disregard this email if your installer has already contacted you.

**Questions?**

Read our FAQs

For additional questions, contact cellularplanrenewal@solaredge.com

Thanks for powering your home with us,

**The SolarEdge team**



SolarEdge, 700 Tasman Dr., Milpitas, CA 95035,, USA

Unsubscribe Manage preferences

ER-038

Case: 23-55096  10/18/2023  ID: 12812041  DktEntry: 9  Page 39 of 147 #:123

# SolarEdge Cell Modem 3G Network – Frequently Asked Questions for Installers

Our 3G network carriers will be shutting down service on the following dates:

- CDMA Sprint: March 31, 2022
- GSM: May 31, 2022
- CDMA Aeris: December 31, 2022

This will affect SolarEdge inverters connected through said providers. The customers currently connecting through these carriers will need their cellular modem(s) replaced in order to ensure continued connectivity to the SolarEdge monitoring platform. As a reminder, connection to the SolarEdge monitoring platform is required, among others, in order to remotely diagnose problems and locate defective modules and/or power optimizers.

System owners can replace their modem in two ways: contact their solar installer; or go with our approved vendor 365 Pronto.

**Q  Why are my customers being asked to buy a new modem?**

A  Their SolarEdge inverters were originally supplied with a 3G modem that is either expiring or being obsoleted by the carrier.

**Q  What happens without a replacement?**

A  Without a communication plan the system cannot be connected to SolarEdge monitoring platform and, therefore, remote diagnoses of problems , the ability to locate defective modules and/or power optimizers, and additional monitoring benefits will not be available. Connection to the SolarEdge monitoring portal is also required in order to be reimbursed for qualified RMAs.

**Q  What will happen to customers affected by the network shutdown with remaining time on their current modem?**

A  As a courtesy to prematurely affected customers, SolarEdge will extend all new 5-year modem communication plans to December 31, 2028.

**Q  Who is 365 Pronto?**

A  365 Pronto is the world's first platform to match renewable energy and electric vehicle owners with a local/on-demand service workforce.
They are a SolarEdge-approved, third-party vendor for cellular modem replacements for residential systems.

**Q  Who covers the cost of the cell modem replacement?**

A  The end user covers the cost. If 365 Pronto does the replacement, the system owner will pay them directly.

**Q  Where can I purchase a replacement modem?**

A  Parts can be purchased through distributors.

**Q  What are the modem part numbers for sites affected by the network shutdown?**

A  Non SetApp Inverter Part Number: CELL-A-R05-US-P-S2, Cellular Plug-in 28 plan, Display, Resi, SP4, US

SetApp Inverter Part Number: CELL-B-R05-US-P-S2, Cellular Plug-in 28 plan, SetApp, Resi, SP4, US

**Q  What are the modem part numbers for sites with expiring modems?**

A  Non SetApp Inverter Part Number: CELL-A-R05-US-S-S2, Cellular Modem, 5 year plan, Residential Inverter with Display

SetApp Inverter Part Number: CELL-B-R05-US-S-S2, Cellular Modem, 5 year plan, Residential SetApp Inverter



ER-039

**Q** Will installers be reimbursed by SolarEdge for replacing this part?

**A** No. For expiring modems, the communication plan that initially came with the system installation was for 5 year of coverage. For modems affected by the premature 3G shutdown, the technology change is done by the carrier, not SolarEdge, and therefore is not covered under the SolarEdge warranty.

**Q** Can system owners use their home network?

**A** They can connect with an Ethernet cable, or use a wireless card. However, this involves removing the inverter cover and should only be done by a qualified solar professional.

**Q** Are there any other CDMA or 3G modems available to transfer to?

**A** No. This technology will no longer be supported by the carrier and therefore the modem will need to be replaced.

**Q** Can system owners buy a prepaid cell card and install it into the existing modem?

**A** No, the modem is the technology that communicates to the carrier, and the carrier is shutting down this network.

**Q** If a modem is replaced AFTER the network shuts down or AFTER it expires, will users be able to see system data between the replacement and activation of the new modem?

**A** When communication to the SolarEdge monitoring platform is lost, lifetime energy data is saved. However, the daily energy and daily charts on residential systems will only be stored for approximately 2 weeks. To ensure full data continuity, it is recommended to have continuous connection to the SolarEdge monitoring platform. Continuous monitoring is also necessary for systems that rely on automatic reporting to receive Solar Renewable Energy Certificates (SRECs) incentives

**Q** Why is monitoring expiring when the customer purchased the 20 or 25-year inverter warranty extension?

**A** The inverter warranty extension applies to the inverter only and does not apply to any built-in communication accessories. Click here for more information.



ER-040

# LAW OFFICES OF TODD M. FRIEDMAN, P.C.

**ATTORNEYS FOR CONSUMERS**
21031 VENTURA BLVD, SUITE 340
WOODLAND HILLS, CA 91364
323-306-4234 TOLL FREE
866-633-0228 FACSIMILE
CALIFORNIA OFFICE
WWW.TODDFLAW.COM

E-MAIL: TFRIEDMAN@TODDFLAW.COM

WRITER LICENSED IN:
CALIFORNIA

June 9, 2022

**Via Certified U.S. Mail**
**Solaredge Technologies, Inc.**
**700 E Tasman Dr**
**Milpitas, CA 95035**

RE:    Cheryl Sauer-Confidential Settlement Communication Pursuant to FRE 408 and CEC 1152

To Whom It May Concern:

Please be advised that our office represents Mr. Cheryl Sauer ("Plaintiff") in pursuing class-action legal claims against Solaredge Technologies, Inc. ("Defendant") for violations of the Consumer Legal Remedies Act ("CLRA"); the California Business and Professions Code §17200 ("BPC"); and breach of express and implied warranty of merchantability.

Having been formally notified of our representation, we respectfully demand you not contact our client for any reason. Instead, please direct all future contact and correspondence to this office. We reserve the right to seek injunctive relief against you should you fail to honor these directives.

The purpose of this letter is to advise your company of its violations and to quickly resolve the matter of my client's right to compensation for the same. Before additional damages accrue, including needless attorneys' fees, we should work together expeditiously to correct the inequity that occurred in connection with your company's handling of the matters detailed below. Thus, please accept this correspondence as notice pursuant to the CLRA, of Defendant's violations thereof. Be advised, you have thirty (30) calendar days from the date of receipt of this notice, to correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of § 1770 of the CLRA, as further outlined below.

**Facts**

In or around January of 2020, Plaintiff had a solar system she purchased from Defendant installed at her home. At the time of purchase, Defendant represented to Plaintiff that the purchase of her solar system would include unlimited free system monitoring. On or around January 27, 2022, Defendant sent Plaintiff an email informing her that the modem component of the solar system was being discontinued by its provider, and that if the modem was not replaced Plaintiff would no longer have access to the free system monitoring.

1

ER-041

Defendant required Plaintiff to pay for the labor cost of replacing the modem. Moreover, Plaintiff was required to replace not one, but two modems. The first modem was to monitor the solar panels themselves, and the second modem was to monitor the battery backup system. As such, Plaintiff has incurred labor costs to replace two modems in order to maintain her system monitoring plan, despite Defendant's representations that the system monitoring plan was at no extra cost to Plaintiff.

Defendant does not inform consumers, including Plaintiff, that in order to utilize the free unlimited monitoring plan, consumers, including Plaintiff, will have to incur labor costs to replace components of the system. Defendant's knowledge of the fact that Plaintiff and similarly situated consumers could not reap the benefits of the free unlimited monitoring plan is demonstrated by the fact that when Defendant informed Plaintiff that she would lose access to her system monitoring functions if she did not replace the modem components. Defendant omitted from their advertisements and contracts that consumers who purchased a solar system will not be eligible for the free unlimited monitoring plan as represented. Plaintiff had no reasonable way of knowing that Defendant would require her to pay for the labor to replace certain parts of the system in order to continue to use her system monitoring functions. Thus, Plaintiff had no reasonable opportunity to find out that Defendant would not honor its free unlimited system monitoring plan. Defendant was aware that Plaintiff could not have reasonably known that it would not honor the free unlimited system monitoring plan.

Had Plaintiff known that Defendant would not honor the free unlimited system monitoring plan, Plaintiff would not have purchased the solar system from Defendant, or would have paid less for the solar system. Plaintiff was significantly upset by Defendant's refusal to honor their free unlimited system monitoring plan. Such sales tactics employed by Defendant rely on falsities and have a tendency to mislead and deceive a reasonable consumer. Plaintiff is informed, believes, and thereupon alleges that such representations were part of a common scheme to mislead consumers and incentivize them to purchase products from Defendant. Plaintiff reasonably believed and relied upon Defendant's representations in their advertisement. Plaintiff materially changed her position in reliance on Defendant's representations and was harmed thereby. Had Defendant properly marketed, advertised, and represented that it would not honor its unlimited free system monitoring plan stated in their advertisements, Plaintiff would not have purchased the solar system or any similarly advertised product. Defendants benefited from falsely advertising and representing the costs of their products and services. Defendants benefited on the loss to Plaintiff and provided nothing of benefit to Plaintiff in exchange.

## CLRA (*Cal. Civ. Code* §17500 et seq.) Violations

Among other things, the CLRA prohibits the following "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction to result or which results in the sale or lease of goods or services" to a consumer:

1. Passing off goods or services as those of another *Cal. Civ. Code* §1770(1)

2. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. *Cal. Civ. Code* §1770(7)

3. Advertising goods or services with intent not to sell them as advertised- *Cal. Civ. Code* §1770(9);

4. Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; - *Cal. Civ. Code* §1770(14);

5. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not. *Cal. Civ. Code* §1770(16)

Further, under the CLRA, a consumer may recover actual damages, an order enjoining any such practices that are prohibited by the CLRA, restitution of property, punitive damages and reasonably attorney's fees and costs. *Cal. Civ. Code* §1788 (a) and (d). By engaging in the conduct detailed above, Defendant violated Sections §1770(9) of the CLRA, thereby entitling Plaintiff to attorneys' fees and costs, and actual and punitive damages.

## CBPC (*Cal. Bus. Prof. Code* §17200)

The CPBC §17200 prohibits unlawful, unfair or fraudulent business acts or practices, and subjects anyone engaging in such conduct to a civil penalty of $2,500 for each violation thereof. *Cal. Bus. Prof. Code §§*17200 and 17206. Further, any person may bring an action to enjoy or restrain any violation of this act and recover actual damages resulting from such violations. *Cal. Bus. Prof. Code* §4381(b)-(c).

Defendant clearly violated the BPC by engaging in fraudulent, unfair *and* unlawful business practices. Defendant made a misrepresentation that amounts to fraudulent and unfair business practices. Further, as noted above, Defendant violated the CLRA, thus engaging in unlawful business practices. Defendant's conduct entitles Plaintiff to not only actual damages in the amount of the monies spent on the treadmill, but statutory damages, and attorney's fees and costs.

Please review the violations set forth above and contact our offices immediately.

Best regards,

*Todd M. Friedman*

Todd M. Friedman, Esq.
Attorney at Law

ER-043

MATTHEW D. POWERS (S.B. # 212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorney for Defendant
SolarEdge Technologies, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CHERYL SAUER, individually, and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>  v.<br><br>SOLAREDGE TECHNOLOGIES, INC., and DOES 1-10 Inclusive,<br><br>          Defendant. | Case No. 5:22-cv-01584-JGB<br><br>**DEFENDANT SOLAREDGE TECHNOLOGIES INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: March 13, 2023<br>Time:       9:00 a.m.<br>Judge:     Hon. Jesus G. Bernal<br>Courtroom:  1<br><br>Notice of Removal Filed: September 8, 2022 |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THIS COURT, ALL PARTIES, AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 13, 2023, at 9:00 a.m., or as soon thereafter as the parties may be heard at the United States District Court for the Central District, Eastern Division, located at 3470 Twelfth Street, Riverside, CA 92501, Defendant SolarEdge Technologies, Inc. ("SolarEdge") will and hereby does move this Court for an Order dismissing Plaintiff's amended complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6) for failure to state a claim on which relief may be granted.

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, all pleadings and papers on file in this action, and such other argument and evidence as may be presented to the Court prior to or at the hearing on this Motion.

This motion is made following conferences of counsel pursuant to L.R. 7-3 which took place on September 26 and December 5, 2022.


Dated:        December 9, 2022                **O'MELVENY & MYERS LLP**

                                              */s/ Matthew D. Powers*
                                              Matthew D. Powers
                                              Two Embarcadero Center, 28th Floor
                                              San Francisco, CA 94111
                                              Telephone: (415) 984-8700
                                              Facsimile: (415) 984-8701
                                              E-mail: mpowers@omm.com

                                              *Attorney for Defendant SolarEdge Technologies, Inc.*

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL ALLEGATIONS | 4 |
| III. | LEGAL STANDARD | 7 |
| IV. | ARGUMENT | 8 |
|  | A. Plaintiff Fails to Plead a Breach of Express Warranty | 8 |
|  | 1. The Limited Warranty Explicitly Bars These Claims | 9 |
|  | 2. The Limited Warranty Does Not Cover "Design" Defects | 11 |
|  | 3. The Warranty Limitations Are Not Unconscionable | 12 |
|  | B. Plaintiff Fails to Plead a Breach of Implied Warranty | 14 |
|  | C. Plaintiff Fails to State a Claim under the California Consumers Legal Remedies Act | 16 |
|  | D. Plaintiff Fails to State a Claim under the California Unfair Competition Law | 17 |
|  | 1. Plaintiff Has Not Pled "Fraudulent" Acts or Practices | 17 |
|  | 2. Plaintiff Has Not Pled "Unfair" Acts or Practices | 18 |
|  | 3. Plaintiff Has Not Pled "Unlawful" Acts or Practices | 19 |
|  | E. Plaintiff Lacks Article III Standing to Pursue Injunctive Relief | 20 |
| V. | CONCLUSION | 21 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Philatelic Soc'y v. Claibourne,*
46 P.2d 135 (Cal. 1935)..................................................................................18

*Am. Suzuki Motor Corp. v. Superior Ct.,*
37 Cal. App. 4th 1291 (1995)........................................................................15

*Aron v. U–Haul Co. of Cal.,*
143 Cal. App. 4th 796 (2006)..............................................................3, 12, 13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .........................................................................................8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .........................................................................................7

*Blennis v. Hewlett-Packard Co.,*
2008 WL 818526 (N.D. Cal. Mar. 25, 2008)..................................................9

*Brothers v. Hewlett-Packard Co.,*
2007 WL 485979 (N.D. Cal. Feb. 12, 2007)................................................12

*Cadena v. Am. Honda Motor Co.,*
2018 WL 8130613 (C.D. Cal. Nov. 14, 2018)..............................................10

*Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tele. Co.,*
973 P.2d 527 (Cal. 1999)..........................................................................18, 19

*Cipollone v. Liggett Grp., Inc.,*
505 U.S. 504 (1992) ...................................................................................9, 10

*Clark v. Am. Honda Motor Co.,*
528 F. Supp. 3d 1108 (C.D. Cal. 2021)......................................................3, 11

*Clark v. LG Elecs. U.S.A., Inc.,*
2013 WL 2476145 (S.D. Cal. June 7, 2013) ................................................12

*Cooper v. Simpson Strong-Tie Co.,*
460 F. Supp. 3d 894 (N.D. Cal. 2020).........................................................16

*DaimlerChrysler Corp. v. Cuno,*
547 U.S. 332 (2006) .......................................................................................20

*Daugherty v. Am. Honda Motor Co.,*
144 Cal. App. 4th 824 (2006)..................................................................16, 17

*Dean Witter Reynolds, Inc. v. Superior Ct.,*
211 Cal. App. 3d 758 (1989)..........................................................................13

*Freeman v. Time, Inc.,*
68 F.3d 285 (9th Cir. 1995)......................................................................16, 17

*Gertz v. Toyota Motor Corp.,*
2011 WL 3681647 (C.D. Cal. Aug. 22, 2011)..............................................11

SOLAREDGE'S MOTION TO DISMISS
& MEM. OF P. & A. IN SUPPORT
CASE NO. 5:22-CV-01584-JGB

ER-047

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

*Grassi v. Int'l Comfort Prods., LLC,*
  2015 WL 4879410 (E.D. Cal. Aug. 14, 2015) ............................................... 3, 13

*Grodzitksy v. Am. Honda Motor Co.,*
  2013 WL 2631326 (C.D. Cal. June 12, 2013) ............................................... 4, 14

*Hauck v. Advanced Micro Devices, Inc.,*
  2019 WL 1493356 (N.D. Cal. Apr. 4, 2019) ............................................... 3, 15

*Hodgers-Durgin v. de la Vina,*
  199 F.3d 1037 (9th Cir. 1999) ............................................... 21

*In re Sony Grand Wega KDF-E A10/A20 Series Real Projection*
  *HDTV Television Litig.,*
  758 F. Supp. 2d 1077 (S.D. Cal. 2010) ............................................... 10

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*
  *Pracs., & Prod. Liab. Litig.,*
  754 F. Supp. 2d 1145 (C.D. Cal. 2010) ............................................... 2, 12

*Johnson v. Ocwen Loan Servicing, LLC,*
  2017 WL 10581008 (C.D. Cal. Dec. 11, 2017) ............................................... 18

*Kacsuta v. Lenovo (U.S.), Inc,,*
  2013 WL 12126775 (C.D. Cal. July 16, 2013) ............................................... 14, 15

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) ............................................... 8, 16

*Kucharczyk v. Regents of Univ. of Cal.,*
  946 F. Supp. 1419 (N.D. Cal. 1996) ............................................... 14

*Levitt v. Yelp! Inc.,*
  765 F.3d 1123 (9th Cir. 2014) ............................................... 19

*Lightner v. Medtronic Inc.,*
  2021 WL 4731351 (C.D. Cal. May 10, 2021) ............................................... 3, 13

*Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ............................................... 20

*Lozano v. AT & T Wireless Servs., Inc.,*
  504 F.3d 718 (9th Cir. 2007) ............................................... 17

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ............................................... 20

*McCabe v. Am. Honda Motor Co.,*
  100 Cal. App. 4th 1111 (2002) ............................................... 11

*Melbye v. Accelerated Payment Techs., Inc.,*
  2012 WL 5944644 (S.D. Cal. Nov. 27, 2012) ............................................... 14

*Mocek v. Alfa Leisure, Inc.,*
  114 Cal. App. 4th 402 (2003) ............................................... 15

- iv -

*Moss v. United States*,
572 F.3d 962 (9th Cir. 2009) ...................................................................... 8

*Oddo v. Arcoaire Air Conditioning & Heating*,
2017 WL 372975 (C.D. Cal. Jan. 24, 2017) ....................................... 3, 13

*Pride Packing Co. v. MAF Indus., Inc.*,
2016 WL 3648940 (E.D. Cal. July 7, 2016) ............................................ 13

*Robertson v. Fleetwood Travel Trailers of Cal., Inc.*,
144 Cal. App. 4th 785 (2006) .................................................................. 11

*Rodarte v. Philip Morris, Inc.*,
2003 WL 23341208 (C.D. Cal. June 23, 2002) ......................................... 9

*Ross v. Trex Co.*,
2010 WL 11484525 (N.D. Cal. Apr. 7, 2010) ........................................... 3

*Sanchez v. Valencia Holding Co.*,
61 Cal. 4th 899 (2015) ............................................................... 9, 12, 19

*Strumlauf v. Starbucks Corp.*,
192 F. Supp. 3d 1025 (N.D. Cal. 2016) ............................................ 20, 21

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) .................................................. 15

*Troup v. Toyota Motor Corp.*,
545 F. App'x 668 (9th Cir. 2013) ........................................................... 15

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ............................................................ 8, 18

*Watkins v. MGA Ent., Inc.*,
550 F. Supp. 3d 815 (N.D. Cal. 2021) ...................................................... 8

*Williams v. Beechnut Nutrition Corp.*,
185 Cal. App. 3d 135 (1986) .................................................................... 8

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) .................................................................. 16

**STATUTES**

15 U.S.C. § 2300 ........................................................................................... 8

15 U.S.C. § 2310(a)(3)(C)(ii) ...................................................................... 11

Cal. Bus. & Prof. Code § 17200 ............................................................. 8, 17

Cal. Civ. Code § 1750 ................................................................................... 8

Cal. Civ. Code § 1770(a) ............................................................................ 16

Cal. Civ. Code § 1792 ................................................................................... 8

ER-049

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

Cal. Civ. Code § 1793.02.................................................................................11

Cal. Comm. Code § 2317(c)..........................................................................4, 14

## **<u>RULES</u>**

Fed. R. Civ. P. 9(b)............................................................................................8

## **<u>OTHER AUTHORITIES</u>**

FEDERAL COMMUNICATIONS COMMISSION, *Plan Ahead for Phase Out of 3G Cellular Networks and Service* (Oct. 28, 2021) ........................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ER-050

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The allegations and documents cited in Plaintiff's Amended Complaint confirm that her claims fail on the merits. Plaintiff contends that defendant SolarEdge breached its warranties to her because a third party cellular-service provider discontinued service for a modem on a home solar system after her system was installed. But the same warranty materials that Plaintiff cites in her Amended Complaint demonstrate on their face that no "breach" ever occurred. SolarEdge stands behind its warranties. It has provided (and continues to provide) free replacement parts for qualified customers who need them, and Plaintiff's attempt to re-write those warranties to *also* cover labor costs (i.e., for the third-party electricians or installers who work on solar systems) should be rejected.

Here, Plaintiff Cheryl Sauer paid over $30,000 to install a solar power system in her home. As part of that system, the installers (who do not work for SolarEdge) used inverters manufactured by SolarEdge. Those inverters included cellular modems on a twelve-year plan that allow users to connect to the internet and monitor their system's output in real time. Since those modems used 3G cellular technology, there was possibility (at the time of Plaintiff's installation) that cellular service providers (e.g., Verizon) would discontinue that type of cellular service over the lifetime of a solar power system. If the providers discontinued service, the system would still produce solar energy for the home but would not connect to the internet. Accordingly, SolarEdge explained to consumers and installers (including in the materials Plaintiff attaches to her complaint) that discontinued cellular service was possible and set out exactly what SolarEdge would do in those circumstances. Specifically, SolarEdge explained that "in the event that third party cellular technology currently used by SolarEdge . . . is phased out or becomes otherwise unavailable, SolarEdge shall ship replacement parts" and "the new prevailing hardware shall continue to be covered for the remainder of the original

SOLAREDGE'S MOTION TO DISMISS
& MEM. OF P. & A. IN SUPPORT
CASE NO. 5:22-CV-01584-JGB

ER-051

data plan duration." Am. Compl., Ex. A, at 2 n.1, ECF No. 13-1. But when Plaintiff's own cellular service provider announced that it was discontinuing service, she did not take SolarEdge up on its offer for free replacement parts. Instead, she filed this lawsuit, claiming that "failing" to cover third party labor costs is a "breach" of SolarEdge's warranties even though the warranty documents themselves *explicitly* exclude third-party labor. On these facts, Plaintiff's claims fail for multiple reasons.

*First*, Plaintiff has no valid breach of warranty claim because the warranty is clear on its face that Plaintiff's demand for labor costs is not covered. The warranty explicitly excludes the labor costs Plaintiff seeks. *See* Limited Warranty, Am. Compl., Ex. B, at 2, ECF No. 13-2 ("All costs, including . . . labor . . . or others that are incurred for labor relating to repairs, uninstalling, and reinstalling of Products on-site . . . are not covered by the Limited Warranty and, unless otherwise agreed in writing in advance by SolarEdge, shall be borne by the buyer."). The product datasheet that Plaintiff attaches to her complaint also makes no mention of covering labor costs, and promises only that in the event of third-party cellular network discontinuances, SolarEdge will ship replacement parts to twelve-year data plan holders. Am. Compl. Ex. A., at 2 n.1. There is also no "breach" here because the warranty only covers defects in "materials or workmanship," not alleged "defects" in "design" like Plaintiff alleges here. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010). And there is not even a defect alleged here in the first place because the modems continue to function perfectly well; it is the cellular provider (not SolarEdge) that decided to discontinue service. Moreover, even if Plaintiff had a valid warranty claim (she does not), she forfeited that claim when, rather than follow the process to receive coverage outlined in the limited warranty, she paid for her own modem and then sued SolarEdge afterwards. *See, e.g.*, *Clark v. Am.*

SOLAREDGE'S MOTION TO DISMISS
& MEM. OF P. & A. IN SUPPORT
CASE NO. 5:22-CV-01584-JGB

*Honda Motor Co.*, 528 F. Supp. 3d 1108, 1118 (C.D. Cal. 2021) (dismissing breach of warranty claim where plaintiff failed to seek repair or replacement).

**Second**, Plaintiff's assertion that failing to cover labor costs under these circumstances is "unconscionable" should be rejected on its face. Unconscionability can only be used to void a contract in extreme circumstances, when a party was oppressed or surprised by certain contract terms, or where those terms otherwise "shock the conscience." *Aron v. U–Haul Co. of Cal.*, 143 Cal. App. 4th 796, 808 (2006) (quotation omitted). There is nothing unconscionable about SolarEdge's decision—which was disclosed to Plaintiff at the time of purchase in the warranty and the datasheet—to cover replacement parts but not labor costs, which can vary widely between installers with little transparency to SolarEdge. Indeed, courts have repeatedly upheld similar exclusions from written warranties. *See, e.g.*, *Lightner v. Medtronic Inc.*, 2021 WL 4731351, at *5-6 (C.D. Cal. May 10, 2021) (warranty limiting remedies to repair or replacement and excluding labor costs not substantively unconscionable under California law); *Oddo v. Arcoaire Air Conditioning & Heating*, 2017 WL 372975, at *9-10 (C.D. Cal. Jan. 24, 2017) (same); *Grassi v. Int'l Comfort Prods., LLC*, 2015 WL 4879410, at *4 (E.D. Cal. Aug. 14, 2015) (same); *see also Ross v. Trex Co.*, 2010 WL 11484525, at *4 (N.D. Cal. Apr. 7, 2010) (recognizing that courts have upheld warranties that exclude the cost of labor).

**Third**, Plaintiff's claims that SolarEdge breached the implied warranty of merchantability fail for multiple reasons. As a preliminary matter, there is no "breach" on these facts—the implied warranty of merchantability requires more than simply a malfunction. *Hauck v. Advanced Micro Devices, Inc.*, 2019 WL 1493356, at *16 (N.D. Cal. Apr. 4, 2019) ("To state a claim that a product is unfit for its ordinary purpose, a plaintiff must allege that the defect seriously impacts the product's operability."). Here, the solar system works perfectly well (and continues to provide power) without cellular service, so the system is not unfit for its ordinary

SOLAREDGE'S MOTION TO DISMISS
& MEM. OF P. & A. IN SUPPORT
CASE NO. 5:22-CV-01584-JGB

ER-053

use.  Next, there can be no implied warranty breach because SolarEdge warned Plaintiff of the potential loss of 3G coverage at the time of her purchase and explicitly disclaimed coverage of third-party labor costs.  As multiple courts have held, a party cannot use the implied warranty of merchantability to vary explicit terms in a manufacturer's written warranty.  Cal. Comm. Code § 2317(c) ("Express warranties displaced inconsistent implied warranties"); *Grodzitsky v. Am. Honda Motor Co.*, 2013 WL 2631326, at *13 (C.D. Cal. June 12, 2013) (dismissing implied warranty claim inconsistent with terms of express warranty).

   *Finally*, Plaintiff's claims for violations of the California Unfair Competition Law and Consumers Legal Remedies Act fail as well, because Plaintiff has not alleged any kind of unfair, deceptive, or unlawful conduct.  All of SolarEdge's actions were perfectly consistent with the limited warranty and the data sheet that Plaintiff attached to her Amended Complaint.

   At bottom, this lawsuit is not about breaches of warranty or consumer protection.  It is about Plaintiff's attempt take advantage of a situation, disclosed to her in advance, which was beyond SolarEdge's control and to which SolarEdge already offered contractual remedies.  All her claims should be dismissed with prejudice.

## II.  FACTUAL ALLEGATIONS

   Plaintiff is a resident of San Bernadino.  Am Compl. ¶ 12.  She claims to have executed a contract with a third-party installer to install a home solar system including two SolarEdge inverters and cellular plug-ins.  *Id.* ¶¶ 48, 52.[1]  The inverter and the cellular plug-in are part of the monitoring system that accompanies a home solar system and permit it to connect to the internet.  *Id.* ¶¶ 16-19.  In particular, the cellular plug-ins enable wireless connectivity, which, at the time of

---

[1] She is inconsistent on when the purchase occurred, sometimes alleging 2019 and sometimes alleging 2021.  *Compare* Am. Compl. ¶ 12 *with* Am. Compl. ¶ 52.

SOLAREDGE'S MOTION TO DISMISS
& MEM. OF P. & A. IN SUPPORT
CASE NO. 5:22-CV-01584-JGB

ER-054

1   Plaintiff's purchase, was still operated through third-party cellular providers' 3G

2   networks.  *Id.* ¶ 19.

3          By late 2021, most major cellular providers announced that they would

4   discontinue 3G coverage over the course of 2022, to be replaced with 5G coverage.

5   *See, e.g.*, FEDERAL COMMUNICATIONS COMMISSION, *Plan Ahead for Phase Out of*

6   *3G Cellular Networks and Service* (Oct. 28, 2021),

7   https://www.fcc.gov/consumers/guides/plan-ahead-phase-out-3g-cellular-networks-

8   and-service.  SolarEdge informed Plaintiff and other customers of the third parties'

9   decision in January 2022, and let them know that, if the outdated modem were not

10  replaced, they would lose access to system monitoring features.  Am. Compl. ¶ 53.

11         SolarEdge specifically alerted Plaintiff to the risk that coverage would be

12  discontinued.  Plaintiff received a "product datasheet" from SolarEdge that is

13  attached as Exhibit A to the Amended Complaint.  *Id.* ¶¶ 38-39, 45.  Though

14  Plaintiff only quotes from it selectively, the datasheet explains to customers that

15  third-party cellular providers might terminate cellular coverage and notes that

16  "SolarEdge shall not be responsible or liable for unavailability or discontinuance of

17  network coverage in a specific area or region or any network downtime."  Am.

18  Compl., Ex. A, at 2 n. 1.  The datasheet also provided that:

19          [I]n the event that third party cellular technology currently used by

20          SolarEdge (LTE Cat-M1) is phased out or becomes otherwise

21          unavailable, SolarEdge shall ship replacement parts such as modem

22          and/or SIM card of a prevailing technology. Upon such replacement,

23          the new prevailing hardware shall continue to be covered for the

24          remainder of the original data plan duration.

25  *Id.*, Ex. A, at 2 n. 1.

26         Plaintiff also received a "Limited Product Warranty," which is attached as

27  Exhibit B to her amended complaint.  *See also* Am. Compl. ¶ 25.  The warranty

28  covers "defects in workmanship and materials" for several products, including the

SOLAREDGE'S MOTION TO DISMISS
& MEM. OF P. & A. IN SUPPORT
CASE NO. 5:22-CV-01584-JGB

1   inverters and cellular plug-ins. *See* Am. Compl., Ex. B, at 1. It covers many types

2   of defects and describes a process for triggering warranty coverage, whereby the

3   purchaser would alert SolarEdge to a defect in workmanship or materials. *Id.* If the

4   defect is covered, then the warranty explains that SolarEdge would repair the

5   product. *Id.* But the warranty is not unlimited. It further adds that:

6           All costs, including, without limitation, labor, travel and boarding

7           costs of SolarEdge service personnel or others that are incurred for

8           labor relating to repairs, uninstalling and reinstalling of Products on-

9           site, as well as costs related to buyer's employees and contractors

10          repair or replacement activities, are not covered by the Limited

11          Warranty and, unless otherwise agreed in writing in advance by

12          SolarEdge, shall be borne by the buyer.

13  *Id.* at 2. After describing the coverage, it also goes on to enumerate several types of

14  damage which are excluded from the coverage, including damage caused by the

15  "action of third parties." *Id.* at 2. It then notes that all other warranties not

16  expressly included are disclaimed. *Id.*

17          In short, the materials and warranty that Plaintiff received: (a) warned her

18  that cellular coverage might be discontinued, (b) explained that if that occurred

19  SolarEdge would provide a replacement modem, and (c) provided that any labor

20  costs associated with the modem would be the responsibility of Plaintiff, not

21  SolarEdge. Nevertheless, in her complaint Plaintiff contends that SolarEdge

22  "breached" its warranties by failing to pay for third party labor costs when cellular

23  coverage was discontinued, and brings six claims based on that "breach" under

24  express and implied warranty theories under state and federal law, as well as other

25  claims under California's Unfair Competition Law and Consumers Legal Remedies

26  Act.[2]

27  _____

    [2] Notably, Plaintiff's new "breach of warranty" theory is entirely different from her
28  original "fraud"-based theory, captured in the original complaint that she filed in

SOLAREDGE'S MOTION TO DISMISS
& MEM. OF P. & A. IN SUPPORT
CASE NO. 5:22-CV-01584-JGB

ER-056

Although Plaintiff now contends that SolarEdge "breached" its warranties, she does not plead that she ever submitted a claim for warranty coverage or requested a replacement part.[3]  According to the Amended Complaint, Plaintiff's only contact with SolarEdge came in a June 9, 2022 letter from her lawyer, attached as Exhibit E to her amended complaint.  Am. Compl. ¶ 58.  The letter—which is dated the same day that Plaintiff filed her original complaint, *cf.* ECF No. 1-1— does not submit any kind warranty claim or request a replacement part.  Instead, the letter begins by alerting SolarEdge that Plaintiff is "pursuing class-action legal claims" and demands that SolarEdge cease all contact with her.  Am. Compl., Ex. E, at 1, ECF No. 13-5.  It makes no mention of the terms of the warranty, focusing instead on recovering "labor costs."  *See id.* at 1-2.  Moreover, according to the letter, Plaintiff had already purchased her own replacement parts at the time of writing (i.e., before June 9, 2022).  *See id.* at 2.

## III.  LEGAL STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate when a complaint does not allege facts sufficient to make out a claim for relief that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555. (alteration in original).

---

state court on June 9, 2022.  *See* Notice of Removal, Ex. 1, ECF No. 1-1.  In that Complaint, Plaintiff made no mention of a breach of warranty and did not reference any of the exhibits on which she now relies.

[3] Plaintiff artfully avoids alleging which type of data plan she bought.  *See, e.g.*, Am. Compl. ¶ 49 (pleading that Plaintiff's purchase "included a cellular plan of between five and twelve years along with a warranty").  According to SolarEdge's records, she purchased a twelve-year plan and would have been entitled to a free replacement part pursuant to the data sheet if she had requested one.  But she never alleges that she requested the replacement part, and SolarEdge has no record of her doing so.

"[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

Fraud-based claims under California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, must also meet the heightened pleading standards for Federal Rule of Civil Procedure 9(b), even though they are based on California statutes. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126–27 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). This means that, when alleging fraud, Plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Rule 9(b), Plaintiff must plead the time, place, and content of the alleged fraudulent representation or omission—"the who, what, when, where, and how"—as well as facts demonstrating her reliance on the allegedly fraudulent conduct. *Vess*, 317 F.3d at 1106 (citation omitted); *Kearns*, 567 F.3d at 1124.

## IV.  ARGUMENT

### A.  Plaintiff Fails to Plead a Breach of Express Warranty[4]

To state a claim for breach of express warranty under California law, a plaintiff must allege "the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 830 (N.D. Cal. 2021) (quotation omitted); *see also Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142

---

[4] Plaintiff alleges three separate breach of express warranty claims: a general claim of Breach of Express Warranty without citation to a statutory basis (Count III); Breach of Express Warranty under the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2300 (Count IV); and Breach of Express Warranty under the California Song-Beverly Warranty Act, Cal. Civ. Code § 1792 (Count V). All three claims rely on the same allegations and legal theories, so they are all treated collectively here.

ER-058

1 (1986). The terms of the warranty dictate the extent of a manufacturer's obligations

2 under a breach of express warranty claim. *Cipollone v. Liggett Grp., Inc.*, 505 U.S.

3 504, 525 (1992). Accordingly, a plaintiff must identify "a specific and unequivocal

4 written statement" in the warranty that the defendant is alleged to have breached.

5 *Watkins*, 550 F. Supp. 3d at 830 (quotation omitted). If Plaintiff cannot specifically

6 point to the actual warranties that were breached, then her claim should be

7 dismissed. *See Rodarte v. Philip Morris, Inc.*, 2003 WL 23341208, at * 5 (C.D.

8 Cal. June 23, 2002); *see also Blennis v. Hewlett-Packard Co.*, 2008 WL 818526, at

9 *2 (N.D. Cal. Mar. 25, 2008) (dismissing express warranty claim for failure to

10 plead exact applicable terms of the warranty "as required by California law"). And

11 here, the facts alleged show that Plaintiff cannot point to a breach.

12         **1.    The Limited Warranty Explicitly Bars These Claims**

13        As set out above, the warranty materials at issue explicitly address the

14 Plaintiff's circumstances (discontinued cellular coverage). It states that only

15 defects in materials and workmanship are covered by the warranty and notes that

16 damages caused by the "action of third parties" such as network carriers are not

17 covered. Am. Compl., Ex. B, at 1-2. It further states, in very clear terms, that the

18 third party labor costs Plaintiff demands are also excluded by the terms of the

19 warranty. *Id.*, Ex. B, at 2 ("[a]ll costs, including, without limitation . . . labor . . .

20 that are incurred for labor relating to repairs, uninstalling and reinstalling Products

21 on site . . . are not covered by the Limited Warranty. . . ."). Given the very clear

22 language in both the limited warranty itself and in the product datasheet, Plaintiff's

23 assertion that SolarEdge "breached" the limited warranty by failing to pay the costs

24 that those materials explicitly disclaim should be rejected on its face. *See, e.g.*,

25 *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 911 (2015) ("Commerce

26 depends on the enforceability, in most instances, of a duly executed written

27 contract.")

28       To the extent that Plaintiff contends that SolarEdge somehow breached its

SOLAREDGE'S MOTION TO DISMISS
& MEM. OF P. & A. IN SUPPORT
CASE NO. 5:22-CV-01584-JGB

ER-059

1  promise to provide replacement parts, she fails to plead facts showing any such

2  "breach."  Plaintiff argues that this promise was disclaimed in the emails submitted

3  as Exhibits C and D to her complaint.  Am. Compl. ¶¶ 27-29.  But those emails are

4  entirely consistent with the terms of the limited warranty and the product datasheet.

5  They state that *five-year* data plan holders will need to purchase replacement parts.

6  *Id.*, Ex. C, at 1, ECF No. 13-3; *id.*, Ex. D, at 1, ECF No. 13-4; *compare with id.*, Ex.

7  A, at 2 n.1 (noting that only *twelve-year* data plan holders will be offered free

8  replacement parts).  And they state, consistent with the limited warranty, that third

9  party labor costs are not included in warranty coverage.  *See id.*, Ex. D., at 1 ("Q:

10 Who covers the cost of the cell modem replacement?  A: The end user covers the

11 cost.  If 365 Pronto does the replacement, the system owner will pay them

12 directly.").  This shows no effort to "disclaim" coverage; Exhibits C and D are fully

13 consistent with all of the other warranty documents.  And in any event, they do not

14 apply to Plaintiff, because she purchased a twelve-year plan, not a five-year plan.

15 *See* footnote 3, *supra*.  As a twelve-year plan holder, she would have been entitled

16 to replacement parts from SolarEdge if she had requested them, but she never did.

17 She admits that she decided "incur the parts and labor costs on her own" instead.

18 Am. Compl. ¶ 55.

19 When a warranty provides a procedure for submitting and resolving warranty

20 claims, Plaintiff is contractually required to follow that process before she may

21 assert a breach claim in court.  *See, e.g.*, *Cadena v. Am. Honda Motor Co.*, 2018

22 WL 8130613, at *7 (C.D. Cal. Nov. 14, 2018) (dismissing breach of express

23 warranty claim where warranty provided that manufacturer would repair or replace

24 defective parts and complaint did not allege that plaintiffs sought repeated repairs);

25 *Cipollone*, 505 U.S. at 525 (seller's obligation under express warranty is

26 determined by the language of the warranty); *see also In re Sony Grand Wega*

27 *KDF-E A10/A20 Series Real Projection HDTV Television Litig.*, 758 F. Supp. 2d

28 1077, 1097-98 (S.D. Cal. 2010) (Song-Beverly Act "places an affirmative duty on

SOLAREDGE'S MOTION TO DISMISS
& MEM. OF P. & A. IN SUPPORT
CASE NO. 5:22-CV-01584-JGB

ER-060

consumers to deliver a malfunctioning product to the manufacturer for repair within the Express Warranty period") (citing Cal. Civ. Code § 1793.02); *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 807–08 (2006) (consumer bears the burden of delivering a product to the seller for replacement or repair); 15 U.S.C. § 2310(a)(3)(C)(ii) (where a warrantor has made available a valid informal dispute resolution mechanism, a plaintiff must exhaust that procedure before asserting class action claims under the Magnuson-Moss Warranty Act).  But here, the Amended Complaint is devoid of allegations that Plaintiff contacted SolarEdge or her installer to trigger warranty coverage, as she would have been required to do if she believed a claim existed.  As noted above, Plaintiff admits she never submitted a claim and purchased replacements herself.  Am. Compl. ¶ 55. Instead, her first contact with SolarEdge, according to the amended complaint, occurred in a demand letter sent by her lawyers on June 9, 2022.  *See* Am. Compl., Ex. E.  That letter threatened class action litigation under California's Consumer Legal Remedies Act and Business and Professions Code; it did not attempt to invoke warranty coverage, barely references a breach of warranty at all, and (in any event) indicates that at that time Plaintiff had already purchased her own parts.  A threat of litigation "does not relieve Plaintiffs of the prior substantive requirement that they present their [product] for repair."  *Clark*, 528 F. Supp. 3d at 1118.

### 2.    The Limited Warranty Does Not Cover "Design" Defects

Next, Plaintiff alleges that the cellular modems are defective because they "were designed and can only function by connecting to a 3G cellular wireless network."  Am. Compl. ¶¶ 20-22.  To the extent that her allegations can be characterized as describing any defect at all, they at most suggest that Plaintiff believes that the modems suffer from a design defect.  *See, e.g., Gertz v. Toyota Motor Corp.*, 2011 WL 3681647, at *3 (C.D. Cal. Aug. 22, 2011) ("a design defect 'exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective'") (quoting *McCabe v. Am. Honda Motor*

*Co.*, 100 Cal. App. 4th 1111, 1120 (2002)). However, as Plaintiff acknowledges in the Amended Complaint, the limited warranty covers only defects in "workmanship and materials." Am. Compl. ¶¶ 30, 32. And courts have repeatedly held that warranties covering defects in "materials and workmanship" do not extend to claims for design defects like those allegedly at issue here. *In re Toyota*, 754 F. Supp. 2d at 1181; *see also Clark v. LG Elecs. U.S.A., Inc.*, 2013 WL 2476145, at *5 (S.D. Cal. June 7, 2013) (collecting cases); *Brothers v. Hewlett-Packard Co.*, 2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007). Again, Plaintiff has not shown that any provision of the limited warranty was actually breached.

### 3. The Warranty Limitations Are Not Unconscionable

Plaintiff's contention that the warranty's limitations are "unconscionable" also fails. Provisions excluding third-party labor costs are not "unconscionable," and Plaintiff's attempt to re-write her warranty coverage should be rejected as a matter of law. "An evaluation of unconscionability is highly dependent on context." *Sanchez,* 61 Cal. 4th at 911. It is entirely reasonable for an equipment supplier to disclaim ***third party*** labor costs associated with installing replacement parts on a home solar power system—particularly where, as here, the system was originally configured and installed by third parties (at the user's expense) in the first place.

Under California law, "[u]nconscionability has both a procedural and a substantive element." *Aron*, 143 Cal. App. 4th at 808. The procedural element focuses on two factors: oppression and surprise. "Oppression" arises from an inequality of bargaining power which results in an absence of real negotiation and meaningful choice. "Surprise" involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms. *Id*. The substantive element "focuses on the actual terms of the agreement and evaluates whether they create overly harsh or one-sided results as to 'shock the conscience.'" *Id.* (quotation omitted).

SOLAREDGE'S MOTION TO DISMISS
& MEM. OF P. & A. IN SUPPORT
CASE NO. 5:22-CV-01584-JGB

Here, there is no procedural unconscionability. Plaintiff admits to shopping around for a solar system and alleges that she had the option to "select another inverter system" before she chose SolarEdge. Am. Compl. ¶¶ 45-52. As is apparent from the exhibits to Plaintiff's Amended Complaint, the datasheet that SolarEdge provided to her at the time of purchase was very clear about the possibility of losing 3G coverage, and the limited warranty is very clear as to what is and is not included in coverage. *See* Am. Compl. Exs. A and B. The warranty is only two pages long, describes the coverage in the first paragraph, and contains the exclusions in all capital letters. *See id.*, Ex. B, at 1-2. Given this background, it strains credulity to claim that the warranty exclusions "oppressed" or "surprised" Plaintiff. *See, e.g.*, *Aron*, 143 Cal. App. 4th at 808; *Dean Witter Reynolds, Inc. v. Superior Ct.*, 211 Cal. App. 3d 758, 768 (1989) (no claim of oppression where "complaining party had reasonably available alternative sources of supply"); *Pride Packing Co. v. MAF Indus., Inc.*, 2016 WL 3648940, at *7-8 (E.D. Cal. July 7, 2016) (no procedural unconscionability where there was no indication plaintiff was dissuaded from reading the terms containing express exclusions from warranty).

Nor does Plaintiff allege anything close to substantive unconscionability. It does not "shock the conscience" that the purchase of a home solar system does not come with an unlimited warranty requiring SolarEdge to pay third-party labor costs that it cannot reliably control or monitor. Courts have found that similar limitations "in no way shock the conscience." *See, e.g.*, *Lightner*, 2021 WL 4731351, at *5-6 (warranty limiting remedies to repair or replacement and excluding labor costs not substantively unconscionable under California law); *Oddo*, 2017 WL 372975, at *9-10 (same); *Grassi*, 2015 WL 4879410, at *4 (same). Courts hesitate to "interven[e] to change contractual terms" to which the parties have agreed, *see Aron*, 143 Cal. App. 4th at 809 (citation omitted), and Plaintiff is not entitled to declare her warranty "unconscionable" just because she disagrees with its limitations.

SOLAREDGE'S MOTION TO DISMISS
& MEM. OF P. & A. IN SUPPORT
CASE NO. 5:22-CV-01584-JGB

ER-063

## B. **Plaintiff Fails to Plead a Breach of Implied Warranty**[5]

Plaintiff also brings claims for breach of the implied warranty of merchantability. These claims should be dismissed as well.

First, Plaintiff's implied warranty claim fails because it is contrary to SolarEdge's express warranty. Here, the limited warranty and the datasheet already expressly set forth a process for seeking repair or replacement of the cellular plug-ins. Plaintiff cannot now attempt to change the terms of these express warranties by bringing a breach of implied warranty claim. Cal. Comm. Code § 2317(c) ("Express warranties displaced inconsistent implied warranties"); *Melbye v. Accelerated Payment Techs., Inc.*, 2012 WL 5944644, at *4 (S.D. Cal. Nov. 27, 2012) ("To be sure, under California law, to the extent there is a valid express written contract, any implied terms that conflict therewith are unenforceable."); *Kucharczyk v. Regents of Univ. of Cal.*, 946 F. Supp. 1419, 1432 (N.D. Cal. 1996) ("[T]erms that conflict with an express written contract cannot be implied in a written contract."); *see also Grodzitsky*, 2013 WL 2631326, at *13 (dismissing breach of implied warranty claim as inconsistent with terms of express warranty under identical Tennessee provision governing conflicts between express and implied warranties).

Second, even if the implied warranty claim were not barred by the express warranty's terms (and it is) it would still fail because Plaintiff does not allege that the lack of cellular monitoring made her system "unmerchantable." To be "merchantable," a product must only be "fit for the ordinary purposes for which it is used." *Kacsuta v. Lenovo (U.S.), Inc,*, 2013 WL 12126775, at *3 (C.D. Cal. July 16, 2013). The product need not be perfect, or even "precisely fulfill" the buyer's

---

[5] As above, *see* footnote 4, Plaintiff alleges three separate breach of implied warranty claims: a general claim (Count VI) and claims for violations of the Magnuson-Moss and Song-Beverly Warranty Acts (Counts VII-VIII). As above, the allegations and legal theories underlying each claim are the same, so they are treated collectively here.

SOLAREDGE'S MOTION TO DISMISS
& MEM. OF P. & A. IN SUPPORT
CASE NO. 5:22-CV-01584-JGB

expectation, so long as it "provides for a minimum level of quality." *Id.* (quoting *Am. Suzuki Motor Corp. v. Superior Ct.*, 37 Cal. App. 4th 1291, 1296 (1995)). "[A] breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003); *Hauck*, 2019 WL 1493356, at *16 ("To state a claim that a product is unfit for its ordinary purpose, a plaintiff must allege that the defect seriously impacts the product's operability."). A defect that simply makes use of the product "inconvenient" "does not render a product unfit for its ordinary purpose." *Kacsuta*, 2013 WL 12126775, at *3.

Here, Plaintiff alleges only that a third party's decision to discontinue 3G cellular networks in favor of newer technology impacted her ability to wirelessly connect to the panels' monitoring system. Am. Compl. ¶ 53. But as SolarEdge's customer notice regarding this termination makes clear, this change did ***not*** impact the panels' ability to produce solar energy. *See id.*, Ex. C, at 1 ("Your system will still produce solar energy . . . ."). To the extent Plaintiff's allegations can even be construed as pleading a defect—rather than a fixable disruption caused by a third party—then they do not describe a defect that "seriously impacts the product's operability." *See Hauck*, 2019 WL 1493356, at *16; *see also Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 669 (9th Cir. 2013). In fact, courts have repeatedly held that comparable allegations do not state a claim for a breach of implied warranty of merchantability. *See, e.g.*, *Kacsuta*, 2013 WL 12126775, at *3 (defect preventing laptop from connecting to wireless networks did not "render [the] product unfit for its ordinary use"); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010) (no breach of implied warranty of merchantability where plaintiff failed to plead that washing machine "failed to serve its ordinary purpose of cleaning clothes"); *Hauck*, 2019 WL 1493356, at *2, 17 (no breach of implied warranty of merchantability where patch slowed down CPU processing speed).

**C.** **Plaintiff Fails to State a Claim under the California Consumers Legal Remedies Act**

Plaintiff also brings a claim under the California Consumers Legal Remedies Act (CLRA). The CLRA proscribes several types of "unfair methods of competition" and "unfair or deceptive acts of practices" in consumer transactions. Cal. Civ. Code § 1770(a).

Those CLRA claims (and the similar UCL claims, discussed below) that allege deceptive conduct or misrepresentation are governed by a "reasonable consumer" standard. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). To succeed on such claims requires Plaintiff to show that "members of the public are likely to be deceived" by the conduct in question. *Id.* (quoting *Freeman*, 68 F.3d at 289). And when those claims "sound in fraud," such as the intentional misrepresentation claims alleged here, they are also evaluated under the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Kearns*, 567 F.3d at 1125-26. Courts will dismiss CLRA claims for failure to state a claim if they "fail[] to identify any representation . . . that [a defendant's products] had any characteristic they do not have, or are of a standard or quality they are not." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 834 (2006); *see also Cooper v. Simpson Strong-Tie Co.*, 460 F. Supp. 3d 894, 910 (N.D. Cal. 2020) (granting motion to dismiss when plaintiffs have not plausibly alleged that defendant misrepresented the quality of its products or omitted a defect); *Kearns*, 567 F.3d at 1127 (dismissing same for failure to satisfy Rule 9(b)).

Plaintiff fails to identify any misrepresentation here as well. The datasheet that she attached to her complaint, and which makes the relevant representations about her product, specifically explains what SolarEdge would do "in the event that third party cellular technology currently used by SolarEdge . . . is phased out or becomes otherwise unavailable." Am. Compl., Ex. A, 2 n.1. Likewise, the limited

1    warranty is clear and detailed on what is and is not covered. *Id.*, Ex. B. It

2    specifically applies to "defects in workmanship and materials," not to the actions of

3    third parties to upgrade and discontinue older equipment. *Id.* And if this were not

4    already clear, the limited warranty specifically disclaims all other warranties not

5    specifically covered. *Id.* at 2. Thus, SolarEdge's "affirmative representations at the

6    time of sale were its express warranties, as to which no breach occurred"—meaning

7    that dismissal is appropriate. *Daugherty*, 144 Cal. App. 4th at 836-37 (cleaned up).

8        Plaintiff also argues that SolarEdge's warranty contains unconscionable

9    provisions which violate section 1770(a)(19) of the CLRA. Am. Compl. ¶ 94. Her

10   unconscionability claims have been discussed in section IV.A.3. above. They

11   should be dismissed under the CLRA for the same reasons. Because none of these

12   provisions are unconscionable as a matter of law, they cannot support a claim for a

13   violation of the CLRA.

14       **D.    Plaintiff Fails to State a Claim under the California Unfair**

15   **Competition Law**

16       Next, Plaintiff asserts a claim for a violation of California's Unfair

17   Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. This UCL claim is

18   the only remnant of her original complaint. The UCL prohibits any "unlawful,

19   unfair, or fraudulent business act or practice." Each of the three enumerated prongs

20   is a separate source of liability, *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d

21   718, 731 (9th Cir. 2007), and Plaintiff asserts violations of all three. All three fail

22   to state a claim, for the reasons stated below.

23       **1.    Plaintiff Has Not Pled "Fraudulent" Acts or Practices**

24       The "fraudulent" prong of the UCL requires that Plaintiff show that

25   "members of the public are likely to be deceived" by a fraudulent statement.

26   *Freeman*, 68 F.3d at 289. As under the CLRA, UCL claims sounding in fraud are

27   subject to the heightened pleading standards of Rule 9(b), requiring Plaintiff to

28   plead "the who, what, when, where, and how" of any fraudulent statement. *Vess*,

SOLAREDGE'S MOTION TO DISMISS
& MEM. OF P. & A. IN SUPPORT
CASE NO. 5:22-CV-01584-JGB

317 F.3d at 1106.  But here, Plaintiff never identifies any fraudulent statements at all.  The materials Plaintiff attached to her own complaint, as discussed above, show that the warranty did not cover labor costs stemming from the lack of network coverage complained of; that SolarEdge did disclose the potential for a lack of 3G coverage; and that SolarEdge did offer Plaintiff replacement parts, but that she never contacted SolarEdge to ask for them.  Plaintiff's fraud claim therefore consists of nothing more than a restatement of her own legal theories, which are contradicted by the same documents she cites.  Plaintiff has not alleged fraud at all—she has simply alleged that SolarEdge acted consistently with its contracts and warranties to only provide replacement parts but not third-party labor costs to twelve-year data plan holders.  And she has certainly not pled fraud with the requisite particularity under Rule 9(b), as she does not describe a single fraudulent statement anywhere in her complaint, let alone "the who, what, when, where, and how" of fraud.  *Vess*, 317 F.3d at 1106.

### 2.    Plaintiff Has Not Pled "Unfair" Acts or Practices

Plaintiff's claim under the "unfair" prong of the UCL also fails as a matter of law.  A practice may be actionable under the "unfair" prong of the UCL if it is "unfair or deceptive, even if not unlawful."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999) (quotation omitted).  "[T]he section was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable 'new schemes which the fertility of man's invention would contrive.'"  *Id.* (quoting *Am. Philatelic Soc'y v. Claibourne*, 46 P.2d 135, 140 (Cal. 1935))."  But, "[a]lthough the unfair competition law's scope is sweeping, it is not unlimited."  *Id.* at 541.  California courts are divided on the precise standard for unfair conduct in the consumer context, but generally hold that the statute prohibits either conduct "whose harm to the victim outweighs its benefits" or which "offend[s] an established public policy."  *Johnson v. Ocwen Loan Servicing, LLC*, 2017 WL 10581008, at *8 (C.D. Cal. Dec.

1   11, 2017) (quotation omitted).

2        Here, Plaintiff has not pled any facts showing unfair conduct under either

3   standard. Her complaint only provides a formulaic recitation of the language from

4   the case law, claiming that SolarEdge's conduct caused her substantial injury

5   without countervailing benefit. Am. Compl. ¶¶ 75-77. But the factual support for

6   this is nonexistent. She claims that SolarEdge "refuse[d] to honor its Warranty,"

7   even though, as discussed above, her claims were never part of her warranty

8   coverage. *Id.* ¶ 76. She claims that SolarEdge deceived her by convincing her that

9   cellular plug-ins were not part of the warranty, even though the alleged defect (lack

10   of cellular network coverage from a third party) is not covered by the warranty, as

11   is clear from the attachments that Plaintiff provides. *Id.* ¶ 77. And she claims that

12   SolarEdge "did not represent or advise consumers that the Cell Plug-Ins would

13   become defective in 2022 until January 2022," even though the data sheet attached

14   as Plaintiff's Exhibit A notified her of this precise possibility. *Id.* ¶ 78. There is a

15   substantial benefit and an established public policy in enforcing written contracts.

16   *Sanchez*, 61 Cal. 4th at 911 (2015). Her claim under the unfair prong of the UCL

17   should be dismissed accordingly.

18              **3.**    **Plaintiff Has Not Pled "Unlawful" Acts or Practices**

19        The UCL's prohibition on "unlawful" acts or practices provides an

20   independent cause of action to sue for activities that are unlawful under a separate

21   law. *Levitt v. Yelp!, Inc.*, 765 F.3d 1123, 1130 (9th Cir. 2014) ("In prohibiting any

22   unlawful business practice, the UCL borrows violations of other laws and treats

23   them as unlawful practices that the unfair competition law makes independently

24   actionable.") (quoting *Cel-Tech Comm'ns, Inc.*, 973 P.2d at 539-40).

25        Here, Plaintiff predicates her "unlawful" claim on alleged violations of the

26   CLRA and the Song-Beverly and Magnuson-Moss warranty laws discussed above.

27   But as discussed throughout this memorandum, those other claims should be

28   dismissed. Because the "unlawful" UCL claim is entirely derivative of these other

SOLAREDGE'S MOTION TO DISMISS
& MEM. OF P. & A. IN SUPPORT
CASE NO. 5:22-CV-01584-JGB

claims, it should be dismissed for the same reason as the others.

### E.  Plaintiff Lacks Article III Standing to Pursue Injunctive Relief

Finally, Plaintiff seeks an injunction preventing SolarEdge from enforcing any of the exclusions in its limited warranty. Am. Compl., Prayer for Relief at d. But Plaintiff does not show that she has Article III standing to seek injunctive relief, because her own damages occurred in the past and are not ongoing.  Article III standing is a bedrock constitutional principle, which Plaintiff bears the burden of demonstrating "separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quotation omitted).  But "[p]ast exposure to illegal conduct" does not in itself confer standing to pursue injunctive relief if that past exposure is "unaccompanied by any continuing, present adverse effect." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (cleaned up)).  And in a putative class action like this one, a named plaintiff may not represent a class seeking injunctive relief unless that plaintiff is also entitled to seek injunctive relief. *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1030 (N.D. Cal. 2016).

At best, Plaintiff's complaint only alleges a one-time past injury, connected to her cellular provider's past decision to discontinue 3G coverage, not anything that would be expected to continue into the future.  Even if Plaintiff could claim that SolarEdge is liable for this conduct (which she cannot), then she would still have only pleaded a single instance of past harm. *Cf. Lyons*, 461 U.S. at 105-06 (single instance of past conduct does not entitle plaintiff to injunctive relief against the same conduct occurring in the future).  Because Plaintiff likewise does not allege that third-party cellular service providers will continue to drop service for her new modems or that SolarEdge will cause her to bear similar costs in the future, she has likewise failed to demonstrate standing for injunctive relief. *Cf. id*.  And because Plaintiff fails to plead the threat of repeated injury giving rise to her own standing to seek injunctive relief, then she cannot represent a class seeking such

1  relief for others.  *Strumlauf*, 192 F. Supp. 3d at 1030; *cf. also Hodgers-Durgin v. de*
2  *la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

3  **V.     CONCLUSION**

4       For the forgoing reasons, the Court should dismiss Plaintiff's claims with
5  prejudice under Federal Rules of Civil Procedure 9(b) and 12(b)(6) because
6  Plaintiff fails to state a claim on which relief may be granted.

9  Dated:      December 9, 2022              **O'MELVENY & MYERS LLP**

                                            */s/ Matthew D. Powers*
                                            Matthew D. Powers
                                            Two Embarcadero Center, 28th Floor
                                            San Francisco, CA 94111
                                            Telephone: (415) 984-8700
                                            Facsimile: (415) 984-8701
                                            E-mail: mpowers@omm.com

                                            *Attorney for Defendant SolarEdge*
                                            *Technologies, Inc.*

SOLAREDGE'S MOTION TO DISMISS
& MEM. OF P. & A. IN SUPPORT
CASE NO. 5:22-CV-01584-JGB

ER-071

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant SolarEdge Technologies, Inc., certifies that this brief contains 6,855 words, which complies with the word limit of L.R. 11-6.1.

Dated:          December 9, 2022          **O'MELVENY & MYERS LLP**

_/s/ Matthew D. Powers_
Matthew D. Powers
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701
E-mail: mpowers@omm.com

_Attorney for Defendant SolarEdge
Technologies, Inc._

- 22 -

MATTHEW POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, California 94111
Telephone: +1 415 984 8700
Facsimile: +1 415 984 8701

Attorney for Defendant
SOLAREDGE TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CHERYL SAUER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOLAREDGE TECHNOLOGIES, INC., and DOES 1-10 Inclusive,<br><br>Defendants. | Case No. 5:22-cv-01584-JGB-KK<br><br>**[PROPOSED] ORDER GRANTING DEFENDANT SOLAREDGE TECHNOLOGIES, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Jesus G. Bernal |

ER-073

1       Upon consideration of Defendant SolarEdge Technologies, Inc.'s Motion to

2  Dismiss Plaintiff's First Amended Complaint for failure to state a claim on which

3  relief may be granted, pursuant to Federal Rules of Civil Procedure 9(b) and

4  12(b)(6) ("the Motion"), the briefs and arguments of counsel, and all other matters

5  properly presented to the Court, IT IS HEREBY ORDERED THAT:

6        1. The Motion is GRANTED.

7        2. Plaintiff's complaint is dismissed with prejudice.

8      **IT IS SO ORDERED.**

10

11  Dated: _____

12                                  The Honorable Jesus G. Bernal

13                                  United States District Judge

1  Todd M. Friedman (SBN 216752)
2  Adrian R. Bacon (SBN 280332)
   Meghan E. George (SBN 274525)
3  Thomas E. Wheeler (SBN 308789)
4  LAW OFFICES OF TODD M. FRIEDMAN, P.C.
   21031 Ventura Blvd, Suite 340
5  Woodland Hills, CA 91364
6  Phone: 323-306-4234
   Fax: 866-633-0228
7  tfriedman@toddflaw.com
8  abacon@toddflaw.com
   mgeorge@toddflaw.com
9  twheeler@toddflaw.com
10 *Attorneys for Plaintiff*

11
12              **UNITED STATES DISTRICT COURT**

13         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14 | CHERYL SAUER, individually, and on behalf of all others similarly situated, | Case No.: 5:22-cv-01584-JGB |

15 |                             | **PLAINTIFF'S OPPOSITION TO** |
   |          Plaintiff,         | **DEFENDANT'S MOTION TO** |
16 |                             | **DISMISS PLAINTIFF'S FIRST** |
   |     vs.                     | **AMENDED COMPLAINT** |
17 |                             |                             |
18 | SOLAREDGE TECHNOLOGIES, INC.; and DOES 1-10 inclusive, | Date: March 13, 2023 |
19 |                             | Time: 9:00 a.m. |
   |          Defendants.        | Crtrm.: 1 |
20 |                             | Judge: Hon. Jesus G. Bernal |

21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................... 1

II. SUMMARY OF FACTS .......................................................................... 2

    A. Plaintiff's Specific Claims ................................................................ 4

III. LEGAL ARGUMENT ............................................................................ 5

    A. Breach of Express Warranty is Sufficiently Pled ............................ 5

        1. Defendant Affirmatively Disclaimed Its Warranty

          Thus Exhausting Plaintiff's Remedy ......................................... 7

        2. The Limitations On Remedies Are Statutorily

          Unconscionable ......................................................................... 8

    B. The Cell Plug-Ins Had An Implied Warranty That

        Defendant Breached ......................................................................... 10

    C. Plaintiff Has Adequately Pled Her CLRA Claims ......................... 12

    D. Plaintiff Has Adequately Pled Her UCL Claim ............................. 14

        1. Plaintiff Has Standing To Force Defendant To Honor

          Its Warranties .......................................................................... 16

    E. The Proper Course Of Action, Should The Court Grant

        Defendant's 12(b)(6) Claim, Is A Grant Of Leave To

        Amend. ............................................................................................. 16

IV. CONCLUSION ...................................................................................... 17

ER-076

**TABLE OF AUTHORITIES**

**CASES**

*Bank of West v. Superior Court*, 2 Cal.4th 1254 (1992) .................................... 13

*Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230 (2011) ................ 15

*Cardenas v. NBTY, Inc.*, 870 F.Supp.2d 984 (E.D. Cal. 2012) .......................... 13

*Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017 (N.D. Cal. 2012) .......................... 12

*DeNike v. Mathew Enter., Inc.*, 76 Cal. App. 5th 371 (2022), *review denied* (June 15, 2022) ................................................................... 11

*Foman v. Davis*, 371 U.S. 178 (1962). ................................................................. 16

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) .......................................... 12

*Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-CV-1142-SVW-PLA, 2013 WL 2631326 (C.D. Cal. June 12, 2013) ................................................. 11

*Gusse v. Damon Corp.*, 470 F. Supp. 2d 1110 (C.D. Cal 2007) ........................ 10

*In re NJOY, Inc. Consumer Class Action Litigation*, 120 F.Supp.3d 1050 (C.D. Cal. 2015) ................................................................... 12

*Johnson v. Ocwen Loan Servicing, LLC*, 2017 WL 10581008 (C.D. Cal. Dec. 11, 2017) ................................................................... 15

*Kucharczyk v. Regents of Univ. of Cal.*, 946 F. Supp. 1419, 1432 (N.D. Cal. 1996) ................................................................... 11

*MacKenzie v. Chrysler Corp.*, 607 F.2d 1162 (5th Cir.1979) .......................... 10

*Melbye v. Accelerated Payment Techs., Inc.*, 2012 WL 5944644 (S.D. Cal. Nov. 27, 2012) ................................................................... 10

*Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912 (9th Cir.2005) ................................................................... 9

*Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987 (N.D. Cal. 2013) ................................................................... 8

*Nagel v. Twin Lab'ys, Inc.*, 109 Cal. App. 4th 39 (2003) .................................. 12

1    *Precht v. Kia Motors Am., Inc.*, No. SA CV 14-1148-DOC (MANx),

2      2014 WL 10988343 (C.D. Cal. Dec. 29, 2014).................................................. 8

3    *Rubenstein v. The Gap, Inc.*, 14 Cal.App.5th 870 (2017).................................... 12

4    *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal.

5      App. 4th 861 (1999) .......................................................................... 14

6    *Tellone Prof'l Ctr. LLC v. Allstate Ins. Co.*, No. 8:19-cv-02479-JLS-

7      KES, 2021 WL 1254360 (C.D. Cal. Jan. 26, 2021) ........................................ 14

8    *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794 (9th Cir. 1991)..................................... 16

9    *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815 (N.D. Cal. 2021) ..................... 5

10   *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135 (1986).................. 5

11   **S**TATUTES

12   California Commercial Code § 2715.................................................................... 9

13   Consumer Legal Remedies Act, Cal. Civ. C. § 1750 et. seq. ..................12, 13, 14

14   Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 et seq. ................................... 5

15   Song-Beverly Consumer Warranty Act, Cal. Civ. C. § 1792 et. seq. .....6, 8, 10, 11

16   **R**ULES

17   Fed. R. Civ. P. 15(a)........................................................................................ 16

18

19

20

21

22

23

24

25

26

27

28

ER-078

## I. INTRODUCTION

In 2018 and 2019, the wireless mobile networks that provided the 3G networks issued notices that they would be sunsetting 3G technology in 2022 ("the 3G Sunset") and all devices that used such 3G technology would have to be replaced. Defendant SOLAREDGE TECHNOLOGIES, INC. ("Defendant" or "SE") knew this in at least August 2019. Defendant sold Plaintiff Cheryl Sauer ("Plaintiff") in September 2019 a cellular plug-in as part of her two inverters ("the Cell Plug-Ins") which included a 5-year/12-year data plan and warranty, despite knowing that the Cell Plug-Ins would fail within three (3) years. The Cell Plug-Ins allow consumers, such as Plaintiff, to wirelessly connect to their inverters and monitor their solar production and diagnose and troubleshoot problems with the system. Without the Cell Plug-Ins, Plaintiff is unable to effectively monitor her solar system.

In January 2022, months before the 3G Sunset occur, Defendant sent around an email and FAQ to its customers, including Plaintiff, advising them that it would not actually be providing a 5-year/12-year data plan and warranty on the Cell Plug-Ins and that it considered their inoperability to not be covered by the warranty:

> "Q. **Who covers the cost of the cell modem replacement?**
> A.    The end user covers the cost. If 365 Pronto does the replacement, the system owner will pay them directly."

First Amended Complaint ("FAC"), Ex. D ("FAQ") at 13-4.

> "Q. **Will installers be reimbursed by SolarEdge for replacing this part?**
> A.    No. For expiring modems, the communication plan that initially came with the system installation was for 5 year of coverage. For modem affected by the premature 3G shutdown, the technology change is done by the carrier, not SolarEdge, and therefore is not covered under the SolarEdge Warranty."

ER-079

*Id.* As a result of Defendant's email, Plaintiff felt that she had no choice but to pay for the replacement plug-in and labor herself and forego the warranty issued by Defendant. As a result, she felt cheated and deceived and brings this lawsuit to force Defendant to honor its express and implied warranties and comply with California consumer law.

There are fundamentally two issues presented in this lawsuit: (1) whether SE had an express or implied warranty that covered the failure of the Cell Plug-Ins due to the 3G Sunset per its product data sheet; and (2) whether it was unfair or fraudulent for SE to sell Cell Plug-Ins with 5/12-year data plans and warranties when it knew that such Cell Plug-Ins would be rendered inoperable within 3 years? The warranty and data sheet when combined with California's strong consumer protections make the answer to both these questions a resounding yes. Defendant promised consumers, such as Plaintiff, that its Cell Plug-Ins would operate for a period of 5/12 years when it knew they would be rendered inoperable in 3 and then affirmatively sought to prevent claims by emailing all its customers pre-emptively that it would deny warranty coverage for the issue—passing the costs off to consumers. Defendant owes those consumers, including Plaintiff, on the promises it made.

For the following reasons, Plaintiff respectfully requests the Court deny Defendant's Motion in full.

## II. <u>SUMMARY OF FACTS</u>

Defendant's recitation does not accurately or adequately lay out the issues before the Court. Accordingly, Plaintiff begins with a brief recitation of the relevant issues.

Defendant SE manufactures and cells Cell Plug-Ins as part of its inverters. FAC at ¶ 1. SE provides energy production monitoring through various apps as a

1  critical piece of the services provided by its inverters, which let a consumer keep

2  track of their home energy production in real-time. *Id.* at ¶ 2. The monitoring

3  information is transmitted using the Cell Plug-Ins and thus, when the 3G Sunset

4  occurred, Plaintiff and other consumers lost access to their solar monitoring

5  capability which was important and valuable to them. *Ids.* at ¶¶ 3-4.

6      Defendant advertises this capability, noting that the Cell Plug-Ins

7  "[s]upport[] high bandwidth monitoring of inverters, power optimizers, batteries,

8  meters and weather stations" and "[e]nable[] remote analysis and troubleshooting."

9  FAC, Ex. A ("Data Sheet"), Dkt. 13-1 at p. 1. Defendant further represents that

10 the Cell Plug-Ins have a "5-year/12-year data plan [] included" and a "5/12 year

11 warranty." *Id.* Defendant also mentions in a footnote that "[f]or 12 year data plans

12 - in the event that third party cellular technology currently used by SolarEdge (LTE

13 Cat-M1) is phased out or becomes otherwise unavailable, SolarEdge shall ship

14 replacement parts such as modem and/or SIM card of a prevailing technology . . .

15 ." but does not mention that it will not cover the cost of installation or that this will

16 not apply to 5-year data plans.

17     Defendant also issues a "Limited Product Warranty" which covers "Wireless

18 Communication Products." FAC, Ex. B ("Limited Warranty"), Dkt. 13-2 at p. 1.

19 However, the Limited Warranty notes that "[s]ome components may carry their

20 own manufacturer warranty [and] [s] product data sheet for more details." *Id.*

21     The Limited Warranty disclaims "[a]ll costs, including, without limitation,

22 labor, travel and boarding costs of SolarEdge service personnel or others that are

23 incurred for labor relating to repairs, uninstalling and reinstalling of Products on-

24 site, as well as costs related to buyer's employees and contractors repair or

25 replacement activities, are not covered by the Limited Warranty and, unless

26 otherwise agreed in writing in advance by SolarEdge, shall be borne by the buyer."[1]

27 _____

28 [1] As discussed below, this limitation expressly violates the Song-Beverly Act

ER-081

1    *Id.* at p. 2. Per the Limited Warranty, "[i]f SolarEdge determines that the reported

2    defect is not eligible for coverage under the Limited Warranty, SolarEdge will

3    notify buyer accordingly and will explain the reason why such coverage is not

4    available." *Id.*

5        In January 27, 2022, SE sent out emails to consumers advising them that it

6    would not be honoring its warranty with respect to the Cell Plug-Ins and that

7    consumers would have to purchase and install their own replacement plug-ins at

8    significant cost of around $633, including parts and labor. FAC at ¶¶ 27, 54. In

9    particular, the FAQ included in the email noted the scope of the problem that

10   "[w]ithout a communication plan the system cannot be connected to SolarEdge

11   monitoring platform and, therefore, remote diagnoses of problems, the ability to

12   locate defective modules and/or power optimizers, and additional monitoring

13   benefits will not be available." FAQ at p. 1. It also explicitly stated "[f]or modems

14   affected by the premature 3G shutdown, the technology change is done by the

15   carrier, not SolarEdge, and therefore is not covered under the SolarEdge warranty."

16   *Id.* at p. 2.

17       **A. Plaintiff's Specific Claims**

18       In September 2019, Plaintiff shopped for a solar system for her home.[2] FAC

19   at ¶ 47. She ultimately decided to go with a system including a SolarEdge Inverter

20   and combination inverter/battery which both included Cell Plug-Ins. *Id.* at ¶ 48.

21   She was advised by the installer that, based on SE's representations, she would be

22   able to monitor and troubleshoot her solar production from an app or website

23   offered by SE and that they included a cellular plan of between five and twelve

24   years along with a warranty. *Id.* at ¶ 49. It was important to Plaintiff that she be

25   able to remotely monitor her solar system and such feature was a key part of her

26   _____

27   which prevents the waiver of consequential damages.
     [2] There was a typo regarding the installation date, which was September 20<u>19</u>

28   not 2021. This typo does not have any impact on the claims or defenses.

1   decision. *Id.* at ¶ 50. Plaintiff relied on these representations and warranties in

2   deciding to purchase the system including the Cell Plug-Ins—had the installer or

3   any person advised her that in reality she would be unable to monitor her system

4   remotely after three-years, she would not have agreed to purchase the products. *Id.*

5   at ¶ 51.

6        On or about January 27, 2022, Plaintiff received the email from Defendant

7   advising her that the Cell Plug-Ins would be rendered inoperable and that the

8   replacement cost would not be borne by Defendant. *Id.* at ¶¶ 53-55. As a result,

9   Plaintiff felt that she had no choice except to incur the labor and parts costs to

10  replace the two Cell Plug-In modems herself to maintain her system monitoring

11  plan. *Id.* at ¶¶ 55-57.

12       Plaintiff brings this case on behalf of herself and those similarly situated who

13  purchased Cell Plug-Ins for Defendant's failure to honor its express and implied

14  warranty and fraudulent and unfair misrepresentations regarding the life of its Cell

15  Plug-Ins. Plaintiff also seeks to invalidate Defendant's unconscionable limitation

16  on her warranty claims.

17  **III.   LEGAL ARGUMENT**

18         **A. Breach of Express Warranty is Sufficiently Pled**

19       Defendant argues that Plaintiff has failed to plead a warranty that would

20  provide for recovery for the problem she suffered, but to make such point,

21  Defendant has to selectively read its warranty documents. To state a claim for

22  breach of express warranty under California law, a plaintiff must allege "the exact

23  terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that

24  warranty which proximately causes plaintiff injury." *Watkins v. MGA Ent., Inc.*,

25  550 F. Supp. 3d 815, 830 (N.D. Cal. 2021) (quotation omitted); *see also Williams

26  v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986).

27       Per the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 et seq., the term

28

1  "written warranty" mean "any written affirmation of fact or written promise made

2  in connection with the sale of a consumer product by a supplier which relates to

3  the nature of the material or workmanship and affirms or promises that such

4  material or workmanship is defect free or <u>will meet a specified level of</u>

5  <u>performance over a specified period of time</u> . . . ." 15 U.S. Code § 2301(6)

6  (emphasis added). California's Song-Beverly Consumer Warranty Act, Cal. Civ.

7  C. § 1792 et. seq., similarly provides that "[e]xpress Warranty means: [] [a] written

8  statement arising out of a sale of a consumer good pursuant to which the

9  manufacturer, distributor, or retailer undertakes to preserve or maintain the utility

10 or performance of the consumer good or provide compensation if there is a failure

11 in utility or performance the manufacturer, distributor, or retailer undertakes to

12 preserve or maintain the utility or performance of the consumer good or provide

13 compensation if there is a failure in utility or performance." Cal. Civ. C. § 1791.2

14     Defendant made a specific written promise that the Cell Plug-Ins included a

15 "5/12 year warranty" and a "5-year/12-year data plan is included." Data Sheet at

16 p. 1. Plaintiff specifically relied on these representations and warranties in

17 deciding to purchase the system including the Cell Plug-Ins. FAC at ¶ 51. The

18 Cell Plug-Ins did not meet the specified level of performance over a specified

19 period of time because they ceased working after only three years. Defendant

20 refused to honor its warranty and Plaintiff was specifically harmed when she had

21 to incur the parts and labor costs to replace the two Cell Plug-Ins herself. *Id.* at

22 ¶¶ 55-57. Thus, Plaintiff has stated a claim for breach of express warranty under

23 both Song-Beverly and Magnuson-Moss.

24     Defendant points to a section under its "Warranty Exclusions" that excludes

25 a product being "rendered non-functional as a result of . . . action of third parties .

26 . . .," but the Limited Product Warranty also expressly notes that "[s]ome

27 components may carry their own manufacturer warranty [and] [s]ee product

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

ER-084

1    datasheet for more details." Limited Warranty at p. 1-2.  The Data Sheet indicated

2    that the warranty on the Cell Plug-Ins was between five and twelve years, contrary

3    to the Limited Warranty and also that for "12 year data plans - in the event that

4    third party cellular technology currently used by SolarEdge (LTE Cat-M1) is

5    phased out or becomes otherwise unavailable, SolarEdge shall ship replacement

6    parts such as modem and/or SIM card of a prevailing technology."  *Id.* at p. 2.

7    This directly contradicts the cited Warranty Exclusion and given the language

8    within the Limited Warranty that the Cell Plug-Ins carry their own manufacturer

9    warranty on their datasheets, indicates that the Cell Plug-In warranty is separate

10   and thus not subject to the exclusions of the Limited Warranty. [3]  Thus, the claim

11   asserted by Plaintiff is one covered by Defendant's warranty.

12       1. <u>Defendant Affirmatively Disclaimed Its Warranty Thus Exhausting</u>

13          <u>Plaintiff's Remedy</u>

14   Defendant argues that Plaintiff has failed to exhaust her remedies under the

15   warranty prior to bringing suit, but this ignores its own actions pursuant to the

16   warranty.  Under the Limited Warranty, Plaintiff was to notify SolarEdge of the

17   defect at which point "SolarEdge shall determine whether the reported defect is

18   eligible for coverage . . . [and] [i]f SolarEdge determines that the reported defect

19   is not eligible for coverage under the Limited Warranty, SolarEdge will notify

20   buyer accordingly and will explain the reason why such coverage is not available."

21   Limited Warranty at p. 1.  Defendant exercised its ability to determine whether a

22   defect is eligible for coverage and notify Plaintiff that the defect was not eligible

23   for coverage and the reason why when it sent out its email in January 2022, which

24   included in its incorporated FAQ specifically that "[f]or modem affected by the

25

26   _____

27   [3] This also goes against Defendant's argument regarding it being a defect that is
     not covered by the warranty because it arises in "design."  The datasheet
     warranty explicitly includes the problem complained of, which is a latent
28   problem inherent in the Cell Plug-Ins.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

ER-085

premature 3G shutdown, the technology change is done by the carrier, not SolarEdge, and therefore is not covered under the SolarEdge Warranty." FAQ at p. 2. Under the Limited Warranty, after Defendant concludes there is no coverage and advises the buyer of such unavailability, there are no further steps or remedies the buyer may employ except to commence suit.

Additionally, contrary to Defendant's representation, Plaintiff's CLRA letter specifically mentioned that Plaintiff was pursuing claims for "breach of express and implied warranty of merchantability" arising out of replacing and paying for the labor for the replacement of two modems. Dkt. 13-1 at p. 1. As pled, Defendant failed to provide or offer remedies for its violations within thirty days of the notice. FAC at ¶ 95.

Finally, Song-Beverly expressly does not have a notice requirement prior to filing. In California, "where a customer pleads injuries arising from a product purchased from a dealer, the notice requirement as to the manufacturer is waived." *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 995 (N.D. Cal. 2013). This is so ***even if, as here, the terms of the warranty at issue expressly require that notice be provided to the manufacturer,*** "to the extent allowed by state law". See, e.g., *Precht v. Kia Motors Am., Inc.*, No. SA CV 14-1148-DOC (MANx), 2014 WL 10988343, at *9 (C.D. Cal. Dec. 29, 2014) (holding that plaintiff was not required to contact car manufacturer before bringing suit, despite express warranty language requiring that plaintiff contact manufacturer's consumer assistance center).

2. The Limitations On Remedies Are Statutorily Unconscionable

Defendant argues that warranty limitations are unconscionable is also misplaced because limitations on remedies are expressly prohibited by Song-Beverly. Cal. Civ. Code § 1790.1 provides: "Any waiver by the buyer of consumer goods of the provisions of this chapter, except as expressly provided in this

ER-086

1  chapter, shall be deemed contrary to public policy and shall be unenforceable and
2  void." Under Cal. Civ. Code § 1794, a plaintiff has, in addition to other rights, the
3  right to consequential damages under Comm. Code § 2715.5. Cal. Civ. Code §
4  1794 provides, in pertinent part: (b) The measure of the buyer's damages in an
5  action under this section shall include the rights of replacement or reimbursement
6  as set forth in subdivision (d) of Section 1793.2, and the following: . . . (2) Where
7  the buyer has accepted the goods, Sections 2714 and 2715 of the Commercial Code
8  shall apply, and the measure of damages shall include the cost of repairs necessary
9  to make the goods conform. Under California Commercial Code § 2715:
10 "Consequential damages resulting from the seller's breach include (a) Any loss
11 resulting from general or particular requirements and needs of which the seller at
12 the time of contracting had reason to know and which could not reasonably be
13 prevented by cover or otherwise; and (b) Injury to person or property proximately
14 resulting from any breach of warranty."

15     Defendant seeks to waive the damages provided for under Cal. Civ. Code §
16 1794 by preventing Plaintiff from seeking consequential damages such as the cost
17 of labor as well as by seeking to limit warranty claims to those exclusively under
18 the Limited Warranty. Both provisions violate Cal. Civ. Code § 1790.1 because
19 they are contrary to public policy and thus unconscionable. While not addressed
20 in their opening motion, to the extent Defendant seeks to argue that Magnuson-
21 Moss would somehow pre-empt Song-Beverly, such pre-emption explicitly does
22 not apply to "limited" warranties.

23     Breach of an express limited warranty provides a federal cause of action
24 under 15 U.S.C. § 2310(d)(1). See *Milicevic v. Fletcher Jones Imports, Ltd.*, 402
25 F.3d 912, 919 n. 4 (9th Cir.2005). However, the federal remedies described in 15
26 U.S.C. § 2304(a) only apply to full warranties. *Id.* The Magnuson–Moss Act is
27 "virtually silent as to the amount and type of damages which may be awarded for
28

ER-087

1   breach of an express limited warranty." *MacKenzie v. Chrysler Corp.*, 607 F.2d

2   1162, 1166 (5th Cir.1979).  Thus, courts must look to state substantive law to

3   determine the remedies for breach of an express limited warranty.  *Gusse v. Damon*

4   *Corp.*, 470 F. Supp. 2d 1110, 1116-1117 (C.D. Cal 2007).  As *Gusse* makes clear,

5   15 U.S.C. §2304(a) provides only that a "full" warranty under federal law may

6   include a conspicuous waiver of consequential damages.  It does not purport to

7   permit a waiver in any warranty – full or limited – which state law would prohibit.

8   In this case, Song-Beverly expressly prohibits the limitations sought to be imposed

9   by Defendant.[4]

10      **B. The Cell Plug-Ins Had An Implied Warranty That Defendant**

11         **Breached**

12      Defendant argues that it was not required to provide an implied warranty and

13   that the Cell Plug-Ins whose sole value comes from their ability to communicate

14   wirelessly were still fit for purpose when they were unable to do that sole function

15   anymore.  The first position is contrary to black letter California law and the

16   second is ridiculous.  "Unless disclaimed in the manner prescribed by this chapter,

17   every sale of consumer goods that are sold at retail in this state shall be

18   accompanied by the manufacturer's and the retail seller's implied warranty that the

19   goods are merchantable."[5] Cal. Civ. Code § 1792.  Thus, because the Cell Plug-

20   Ins are consumer goods sold in California, they carry an implied warranty.[6]

---

[4] This is another reason why Plaintiff's attempt to exercise the warranty would have been futile, as she is entitled to consequential damages including the cost of labor and would have been denied such recovery illegally under the policy.
[5] Defendant does not argue that it satisfied the waiver requirements, which require specific compliance with representatons regarding the sale being "as is" or "with all faults."  "No implied warranty of merchantability and, where applicable, no implied warranty of fitness shall be waived, except in the case of a sale of consumer goods on an "as is" or "with all faults" basis where the provisions of this chapter affecting "as is" or "with all faults" sales are strictly complied with." Cal. Civ. Code § 1792.3
[6] Defendant's cases are inapposite. *Melbye v. Accelerated Payment Techs., Inc.*, 2012 WL 5944644 (S.D. Cal. Nov. 27, 2012) concerned contract interpretation regarding wages. *Kucharczyk v. Regents of Univ. of Cal.*, 946 F. Supp. 1419,

---

10

ER-088

1    Since the Cell Plug-Ins have an implied warranty, the second question is

2    whether they fail to meet that warranty as they are no longer able to communicate

3    wirelessly. Under the Act, "'[i]mplied warranty of merchantability' ... means that

4    the consumer goods meet each of the following: (1) Pass without objection in the

5    trade under the contract description; (2) Are fit for the ordinary purposes for which

6    such goods are used; (3) Are adequately contained, packaged, and labeled; (4)

7    Conform to the promises or affirmations of fact made on the container or

8    label." Cal. Civ. Code § 1791.1(a). "[T]he plain language of section

9    1791.1 provides that goods which fail to meet any of the four conditions listed

10   therein are in breach of the implied warranty" under the Act. *DeNike v. Mathew*

11   *Enter., Inc.*, 76 Cal. App. 5th 371, 384 (2022), *review denied* (June 15, 2022).

12   In this case, the Cell Plug-Ins no longer comply with either (1) or (2) because

13   they have lost their fundamental function. As noted above, the Cell Plug-Ins are

14   represented in their data sheets to ""[s]upport[] high bandwidth monitoring of

15   inverters, power optimizers, batteries, meters and weather stations" and

16   "[e]nable[] remote analysis and troubleshooting" as well as include a "5-year/12-

17   year data plan." Dkt. 13-1 at p. 1. Once the 3G Sunset happened, it was unable

18   to fulfill any of these features as Defendant itself noted in its FAQ: ""[w]ithout a

19   communication plan the system cannot be connected to SolarEdge monitoring

20   platform and, therefore, remote diagnoses of problems, the ability to locate

21   defective modules and/or power optimizers, and additional monitoring benefits

22   will not be available." FAQ at p. 1. Defendant also argues that Plaintiff must

23   focus on the inverter systems as a whole rather than the components—but the

24

25   1432 (N.D. Cal. 1996) was the same issue concerning a royalty contract.
     *Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-CV-1142-SVW-PLA, 2013 WL

26   2631326 (C.D. Cal. June 12, 2013) dismissed the Song-Beverly implied warranty

27   claim because of a statute of limitations not present here because the implied
     warranty runs with the express warranty—and also disapproved of since

28   *Grodzitsky* was decided.

1   entire point of this lawsuit is that individual component is a standalone piece with

2   a separate warranty that may and must be replaced separate from the remainder of

3   the system.[7]   Because the Cell Plug-Ins can no longer fulfill their most basic

4   function and must be replaced to restore functionality, they are not fit for their

5   ordinary purpose and cannot pass in the trade under their description anymore.

6   FAC at ¶ 148.  Thus, they violate Plaintiff's implied warranty.

### C. Plaintiff Has Adequately Pled Her CLRA Claims

8           Defendant knew at the time it sold the Cell Plug-Ins to Plaintiff that it would

9   not be usable for the 5 or 12 years it represented because the 3G Sunset was going

10  to occur within three years and thus committed fraud under the Consumer Legal

11  Remedies Act, Cal. Civ. C. § 1750 et. seq. ("CLRA").   "'The CLRA makes

12  unlawful, in Civil Code section 1770, subdivision (a) . . .various "unfair methods

13  of competition and unfair or deceptive acts or practices undertaken by any person

14  in a transaction intended to result or which results in the sale or lease of goods or

15  services to any consumer." *Rubenstein v. The Gap, Inc.*, 14 Cal.App.5th 870, 880-

16  881 (2017).  For claims under the CLRA, the materiality of the deception is

17  established if a reasonable person would attach importance to the existence or

18  nonexistence of a fact in determining his or her choice of action in the transaction

19  in question.  *In re NJOY, Inc. Consumer Class Action Litigation*, 120 F.Supp.3d

20  1050 (C.D. Cal. 2015).  Reviewing courts tend to analyze UCL and CLRA claims

21  in tandem based on whether the statements were misleading to a reasonable

22  consumer.  *Nagel v. Twin Lab'ys, Inc.*, 109 Cal. App. 4th 39, 54 (2003)*; Freeman

23  v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Cullen v. Netflix, Inc.*, 880

24  F.Supp.2d 1017 (N.D. Cal. 2012).  A "reasonable consumer," under the objective

25

26  ───────────────

[7] The cases cited by Defendant are inapposite for this reason—each featured a

27  plaintiff seeking to exercise a warranty claim for a broader system for which
there was some small discrete issue.  Here, it is solely the Cell Plug-Ins that are

28  at issue and which carry the independent warranty.

ER-090

1   reasonable consumer standard applicable when determining whether a given claim

2   is misleading or deceptive, as would violate UCL, is the ordinary consumer acting

3   reasonably under the circumstances. *Cardenas v. NBTY, Inc*., 870 F.Supp.2d 984

4   (E.D. Cal. 2012); *Bank of West v. Superior Court*, 2 Cal.4th 1254, 1267 (1992).

5         Plaintiff has alleged that Defendant violated the CLRA by

6   "[mis]represent[ing] that goods or services of a particular standard, quality, or

7   grade, or that goods are of a particular style of model, if they are of another,"

8   "[mis]representing that a transaction confers or involves rights, remedies, or

9   obligations which it does not have or involve, or which are prohibited by law" and

10   "[mis]representing that the subject of a transaction has been supplied in

11   accordance with a previous representation when it has not" because it represented

12   that the Cell Plug-Ins had certain characteristics regarding their length of use when

13   they did not as set forth in 42 through 46, 48 through 52, 27 through 29, and 77

14   through 78 of the First Amended Complaint. FAC at ¶ 94. In particular, this is

15   because Defendant represented that the Cell Plug-Ins came with a 5-year/12-year

16   data plan during which it would provide the online accessibility features as

17   discussed *ad nauseum* above. It was important to Plaintiff that she be able to

18   remotely monitor her solar system and such feature was a key part of her decision.

19   *Id.* at ¶ 50. Plaintiff relied on these representations and warranties in deciding to

20   purchase the system including the Cell Plug-Ins—had the installer or any person

21   advised her that in reality she would be unable to monitor her system remotely

22   after three-years, she would not have agreed to purchase the products. *Id.* at ¶ 51.

23   As noted in the Implied Warranty section, these features were obviously material

24   to any consumer purchasing an inverter from Defendant including the Cell Plug-

25   Ins—because it was the sole function and purpose of the Cell Plug-Ins. Thus,

26   Defendant misrepresented the nature of the transaction and violated Cal. Civ. C. §

27   1770(a)(7), (14), and (16).

28

1    With regards to the unconscionability issue, Plaintiff has alleged that

2 Defendant violated the CLRA by "[mis]represent[ing] that a transaction confers

3 or involves rights, remedies, or obligations which it does not have or involve, or

4 which are prohibited by law" and "[i]nserting an unconscionable provision in a

5 contract."   Defendant had unconscionable limitations on Plaintiff's right to

6 damage within its Limited Warranty as part of the transaction as set forth above

7 and in paragraphs 30 through 37 of the First Amended Complaint.   These

8 unconscionable limitations were also prohibited by law, and thus violate the black

9 letter of the CLRA.   Thus, Plaintiff has stated a claim as to Cal. Civ. C. §

10 1770(a)(14), (16), and (19).

11    **D. Plaintiff Has Adequately Pled Her UCL Claim**

12    Last, but not least, Plaintiff pleads claims under the unlawful, unfair, and

13 fraudulent prongs of the UCL which Defendant seeks to dismiss.   The unlawful

14 prong is easiest and can be addressed first.   The unlawful prong of section 17200

15 prohibits any practices forbidden by law.   *South Bay Chevrolet v. General Motors*

16 *Acceptance Corp.*, 72 Cal. App. 4th 861, 880 (1999).   If any of Plaintiff's claims

17 under Song-Beverly, Magnuson-Moss, or the CLRA are upheld, then Plaintiff's

18 unlawful UCL claim survives—and if not, then it necessarily fails.

19    Turning to the fraudulent prong, to establish a claim under the "fraudulent"

20 prong, a plaintiff must show that: (1) the defendant made a misrepresentation,

21 misleading representation, or omission that is "likely to deceive"; (2) the plaintiff

22 relied on this misrepresentation, misleading representation, or omission; and (3)

23 as a result, the plaintiff suffered an injury in fact. *Tellone Prof'l Ctr. LLC v.*

24 *Allstate Ins. Co.*, No. 8:19-cv-02479-JLS-KES, 2021 WL 1254360, at *6 (C.D.

25 Cal. Jan. 26, 2021).   As set forth in the CLRA section, Defendant misrepresented

26 the longevity and warranty of its Cell Plug-Ins.   That representation was likely to

27 deceive because it explicitly set forth the terms contrary to reality—Defendant

28

1   knew when it sold Plaintiff that the Cell Plug-Ins would be rendered useless in 3

2   years instead of the represented 5 or 12 years and that when that happened Plaintiff

3   would have to pay in excess of $600 per replacement.  Plaintiff relied on that

4   representation in deciding to purchase the inverters from SE containing the Cell

5   Plug-Ins and suffered injury in fact when she ultimately had to pay in excess of

6   $600 to replace each Cell Plug-In.  Thus, Plaintiff states a claim under the

7   fraudulent prong.

8        Turning to the unfair prong, Defendant puts forth the "balancing" test

9   standard, which Plaintiff will analyze.  An unfair claim prohibits either conduct

10  "whose harm to the victim outweighs its benefits" or which "offend[s] an

11  established public policy." *Johnson v. Ocwen Loan Servicing, LLC*, 2017 WL

12  10581008, at *8 (C.D. Cal. Dec. 11, 2017).[8]  Turning to the distinct "balancing

13  test," a practice is unfair if the consumer injury is substantial, is not outweighed

14  by any countervailing benefits to consumers or to competition, and is not an injury

15  that the consumers themselves could reasonably have avoided. *E.g., Boschma v.*

16  *Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 252 (2011).  Plaintiff has suffered

17  substantial harm because Defendant has sold her Cell Plug-Ins that do not work

18  for the period represented, have a warranty that Defendant will not honor, and

19  even to the extent Defendant did honor it, would not actually cover all the costs

20  required under California law.  FAC at ¶ 76.  As a result, Plaintiff paid in excess

21  of $600 per Cell Plug-Ins for replacements.  There is no countervailing benefit to

22  consumers or competition and this is not an injury consumers could avoid because

23  they could not know that Defendant's Cell Plug-Ins would fail until after purchase

24  or that Defendant would refuse to honor its warranty until after Defendant sent

25  around its January 2022 email. *Id.* at ¶¶ 77-78.  Additionally, this is a practice that

26  _____

27  [8] With regards to "offending an established public policy," this dovetails into an
    unlawful claim—if Defendant violates Song-Beverly, Magnuson-Moss, or the

28  CLRA, it violated public policy.

1   exclusively benefits Defendant over consumers and its competition because it

2   foists warranty costs onto consumers instead of itself.  Thus, Defendant has

3   committed an unfair business practice.

4       1. Plaintiff Has Standing To Force Defendant To Honor Its Warranties

5           Defendant argues that Plaintiff does not have standing to pursue injunctive

6   relief because her damages arising from this issue are in the past—however this

7   ignores the nature of her ongoing warranty relationship with Defendant.  Plaintiff

8   still has Cell Plug-Ins which come with Defendant's warranty which Defendant

9   has indicated it still intends to refuse to comply with.  Additionally, Defendant

10  continues to seek to enforce its Exclusions regarding consequential damages.  An

11  injunction will provide relief to Plaintiff because it will allow her to fully benefit

12  from her express and implied warranties.

13      **E. The Proper Course Of Action, Should The Court Grant**
        **Defendant's 12(b)(6) Claim, Is A Grant Of Leave To Amend.**

14      Federal Rule of Civil Procedure 15(a) provides that a trial court shall grant

15  leave to amend freely "when justice so requires."  The Supreme Court has stated

16  that "this mandate is to be heeded."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

17  Review of denial of leave to amend is strictly reviewed in light of the strong policy

18  permitting amendment. *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991).

19  As such, even if the Court should grant Defendant's Motion, in whole or in part, it

20  should grant Plaintiff leave to amend.  Defendants have failed to show that

21  Plaintiff's amendment would be "futile" such that leave to amend should be denied.

22  As Plaintiff has asserted throughout this Memorandum, Plaintiff has pled sufficient

23  facts to overcome a 12(b)(6) Motion to Dismiss, but should the Court rule that it has

24  not, Plaintiff seeks leave to amend freely with additional facts to meet that low

25  burden.  In particular, Plaintiff would specifically allege that she had a 12-year plan

26  subject to the warranty contained in the Data Sheet.

27

28

ER-094

# IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that Defendant's motion be denied in its entirety. To the extent it is granted, Plaintiff respectfully requests leave to amend be granted.

Dated: January 9, 2023   Respectfully submitted,
         LAW OFFICES OF TODD M. FRIEDMAN, P.C.

       By: _/s/Thomas E. Wheeler_
        Thomas E. Wheeler
        Attorneys for Plaintiff

Filed electronically on this 9th Day of January, 2023, with:

United States District Court CM/ECF system.

Notification sent electronically on this 9th Day of January, 2023, to:

Honorable Jesus G. Bernal
United States District Court
Central District of California
And All Counsel of Record as Recorded On The Electronic Service List

/s/ Thomas E. Wheeler, Esq.
THOMAS E. WHEELER

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1 | MATTHEW D. POWERS (S.B. # 212682)
mpowers@omm.com
2 | O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
3 | San Francisco, California 94111-3823
Telephone: (415) 984-8700
4 | Facsimile: (415) 984-8701

5 | Attorney for Defendant
SolarEdge Technologies, Inc.
6 |

7 |

8 |

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **EASTERN DIVISION**

12 |

13 | CHERYL SAUER, individually, | Case No. 5:22-cv-01584-JGB
and on behalf of all others similarly |
14 | situated, | **DEFENDANT SOLAREDGE**
| **TECHNOLOGIES INC.'S REPLY**
Plaintiff, | **BRIEF IN SUPPORT OF ITS**
15 | | **MOTION TO DISMISS**
16 | v. |
| Hearing Date: March 13, 2023
17 | SOLAREDGE TECHNOLOGIES, | Time: 9:00 a.m.
INC., and DOES 1-10 Inclusive, | Judge: Hon. Jesus G. Bernal
18 | | Courtroom: 1
Defendant. |
19 | | Notice of Removal Filed: September
| 8, 2022
20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

# TABLE OF CONTENTS

Page

1  I.  INTRODUCTION .......................................................................... 1

2  II.  ARGUMENT ................................................................................. 3

3  A.  Plaintiff Fails to Plead a Breach of Express Warranty ...................... 3

4  1.  The Product Datasheet is Complementary to, and Does
       Not Negate, the Limited Warranty ....................................... 3

5
6  2.  SolarEdge Did Not Disclaim Its Warranty ............................... 7

7  3.  The Limitations on Warranty Coverage Are Common and
       Not "Unconscionable" ........................................................ 8

8  B.  Plaintiff Fails to Plead a Breach of Implied Warranty ...................... 9

9  C.  Plaintiff Fails to State Claims under the California Consumers
       Legal Remedies Act or Unfair Competition Law ............................ 12
10
11  D.  Plaintiff Lacks Article III Standing to Pursue Injunctive Relief ........ 13

12  E.  The Court Should Dismiss the Complaint with Prejudice ................ 14

13  III.  CONCLUSION ............................................................................ 15

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

TABLE OF AUTHORITIES

Page(s)

## CASES

*Am. Suzuki Motor Corp. v. Superior Ct.*,
  37 Cal. App. 4th 1291 (1995) .................................................................. 11

*Asghari v. Volkswagen Grp. of Am., Inc.*,
  42 F. Supp. 3d 1306 (C.D. Cal. 2013) ..................................................... 10

*Canyon Vineyard Ests. I, LLC v. DeJoria*,
  78 Cal. App. 5th 995 (2022) ...................................................................... 5

*Grassi v. Int'l Comfort Prods., LLC*,
  2015 WL 4879410 (E.D. Cal. Aug. 14, 2015) ....................................... 2, 9

*Grodzitksky v. Am. Honda Motor Co.*,
  2013 WL 2631326 (C.D. Cal. June 12, 2013) ............................................ 9

*Hauck v. Advanced Micro Devices, Inc.*,
  2019 WL 1493356 (N.D. Cal. Apr. 4, 2019) ........................................... 11

*In re My Ford Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014) ................................................... 2, 11

*Kacsuta v. Lenovo (U.S.), Inc.*,
  2013 WL 12126775 (C.D. Cal. July 16, 2013) ...................................... 3, 11

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ................................................................. 12

*Kucharczyk v. Regents of Univ. of Cal.*,
  946 F. Supp. 1419 (N.D. Cal. 1996) .......................................................... 9

*Los Angeles v. Lyons*,
  461 U.S. 95 (1983) .................................................................................... 14

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................................................. 13

*Maples v. SolarWinds, Inc.*,
  50 F. Supp. 3d 1221 (N.D. Cal. 2014) ........................................................ 6

*Melbye v. Accelerated Payment Techs., Inc.*,
  2012 WL 5944644 (S.D. Cal. Nov. 27, 2012) ............................................. 9

*Mocek v. Alfa Leisure, Inc.*,
  114 Cal. App. 4th 402 (2003) ..................................................................... 3

*Novak v. United States*,
  795 F.3d 1012 (9th Cir. 2015) .................................................................. 14

*Oddo v. Arcoaire Air Conditioning & Heating*,
  2017 WL 372975 (C.D. Cal. Jan. 24, 2017) ........................................... 2, 9

*Revitch v. DIRECTV, LLC*,
  977 F.3d 713 (9th Cir. 2020) ...................................................................... 5

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

*Sanchez v. Valencia Holding Co., LLC*,
　61 Cal. 4th 899 (2015) .......................................................................... 13

*Sauer v. Subaru of Am., Inc.*,
　2020 WL 1527779 (D.N.J. Mar. 31, 2020) .................................. 10, 13

*Steckman v. Hart Brewing, Inc.*,
　143 F.3d 1293 (9th Cir. 1998) .............................................................. 14

*Trelleborg Sealing Sols. US, Inc. v. Precision Wire Components LLC*,
　2022 WL 2286486 (C.D. Cal. Apr. 11, 2022) ....................................... 9

*Vess v. Ciba-Geigy Corp. USA*,
　317 F.3d 1097 (9th Cir. 2003) .............................................................. 12

*Watkins v. MGA Ent., Inc.*,
　550 F. Supp. 3d 815 (N.D. Cal. 2021) ................................................... 3

*Zalkind v. Ceradyne, Inc.*,
　194 Cal. App. 4th 1010 (2011) .............................................................. 6

**STATUTES**

Cal. Civ. Code § 1638 ................................................................................. 5

Cal. Civ. Code § 1790.1 .......................................................................... 8, 9

Cal. Comm. Code § 2316(2) ..................................................................... 10

Cal. Comm. Code § 2317(c) ....................................................................... 9

Cal. Comm. Code § 2715 ............................................................................ 8

**RULES**

Fed. R. Civ. P. 9(b) .................................................................................. 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SOLAREDGE'S REPLY BRIEF
CASE NO. 5:22-CV-01584-JGB

ER-100

## I.  **INTRODUCTION**

Plaintiff's opposition brief confirms that her claims should be dismissed on the pleadings.  As set out in SolarEdge's opening brief, under the clear terms of the Limited Warranty, which is attached to Plaintiff's amended complaint, SolarEdge is required to cover "defects in materials and workmanship" for certain enumerated components of Plaintiff's home solar energy system.  Under the same terms of the warranty, SolarEdge is **not** required to reimburse a customer for the third-party labor cost of replacing a component to conform to new technological changes imposed by third-party network carriers (here, the shift from 3G to 5G network coverage).  The wireless Internet technology that supports Plaintiff's home solar system (and innumerable other uses across the country) is constantly changing in ways that are outside of SolarEdge's control and so not covered by the warranty.  But Plaintiff's opposition brief does nothing to rebut these facts.  Instead, Plaintiff twists the clear terms of the Limited Warranty and the relevant law in a failed attempt to manufacture a "breach."

First, Plaintiff argues that the cellular plug-in at issue is "not subject to the exclusions enumerated in the Limited Warranty" that she attached to her complaint.  Opp. at 7.  But Plaintiff admits, *see* Am. Compl., Dkt. 13, at ¶ 25, that the Limited Warranty does expressly cover a list of "Products" that include the cellular plug-ins, *cf.* Am. Compl., Ex. B, at 1 (limited warranty covers "Wireless Communication Products" and "RS485 Plug-In").  The entire warranty coverage is also subject to several explicit exclusions (i.e., no third-party labor costs) that apply generally and are not limited in any way.  *Id.*  It then excludes all other warranties, express or implied.  *Id.* at 2.  Nevertheless, Plaintiff contends that the statement that "the Limited Warranty does not apply to components which are separate from the Products" should be interpreted to exclude the cellular plug-ins from coverage— even though, again, the definition of "Products" explicitly ***includes*** those plug-ins (so by definition they cannot be "separate from the Products").  In short, Plaintiff's

SOLAREDGE'S REPLY BRIEF
CASE NO. 5:22-CV-01584-JGB

ER-101

1    novel interpretation of that language is simply wrong on its face.[1]

2            Plaintiff then claims that, because California law provides for consequential

3    damages in the event of a breach of warranty, any exclusion of third-party labor

4    costs from warranty coverage is unconscionable.  Opp. at 9.  But these arguments

5    contradict the plain terms of Plaintiff's own Limited Warranty (which expressly

6    exclude the costs that Plaintiff seeks from its coverage) and the relevant provisions

7    of California law—California courts regularly enforce warranty exclusions on third-

8    party labor costs.  *See, e.g.*, *Oddo v. Arcoaire Air Conditioning & Heating*, 2017

9    WL 372975, at *9-10 (C.D. Cal. Jan. 24, 2017); *Grassi v. Int'l Comfort Prods.,

10   LLC*, 2015 WL 4879410, at *4 (E.D. Cal. Aug. 14, 2015).

11           Second, Plaintiff claims that SolarEdge breached the implied warranty of

12   merchantability because the cellular plug-in itself did not work after her carrier

13   ended 3G coverage.  But Plaintiff does not dispute that her home solar system

14   continued to produce energy and worked well in every other respect—and courts

15   regularly reject the arguments Plaintiff makes here, *i.e.*, attempting to state an

16   implied warranty claim by the "disassembly of a product into its component parts"

17   and then claiming that one of those parts, standing alone, was unmerchantable.  *See,

18   e.g.*, *In re My Ford Touch Consumer Litig.*, 46 F. Supp. 3d 936, 980 n.14 (N.D. Cal.

19   2014).  Taken to its extreme, Plaintiff's theory would mean that every single

20   product upgrade or maintenance (no matter how minor or benign) would breach the

21   implied warranty of merchantability because the specific part in need replacement

22   would not temporarily meet its "essential purpose," even while the rest of the

23   system functioned perfectly well.  That is not the law—proving unmerchantability

24   _____

25   [1] The relevant provision states: "The Limited Warranty does not apply to
     components which are separate from the Products, ancillary equipment and
26   consumables, such as, for example, cables, cable holders, fuses, wires and
     connectors, whether supplied by SolarEdge or others.  Some components may carry
27   their own manufacturer warranty.  See product datasheet for more details."  Am.
     Compl., Ex. B, at 1.

28

SOLAREDGE'S REPLY BRIEF
CASE NO. 5:22-CV-01584-JGB

ER-102

is a high bar that requires Plaintiff to allege that "the product did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003); *see also Kacsuta v. Lenovo (U.S.), Inc.*, 2013 WL 12126775, at *3 (C.D. Cal. July 16, 2013) (a merchantable product need only be "fit for the ordinary purposes for which [it is] used.")

Finally, while Plaintiff attempts to defend her other claims for violations of the Consumers Legal Remedies Act and Unfair Competition Law, she recognizes (as she must) that these are not independent, standalone claims. She can only assert them by reiterating the same arguments underlying her other claims and then arguing that SolarEdge's conduct was "unfair." *See, e.g.*, Opp. at 13 (noting that the basis of a CLRA claim has been discussed "*ad nauseum*" elsewhere in her brief). Because Plaintiff has not demonstrated any actual breach of express or implied warranty, these derivative claims should be dismissed as well.

## II. ARGUMENT

### A. Plaintiff Fails to Plead a Breach of Express Warranty

#### 1. The Product Datasheet is Complementary to, and Does Not Negate, the Limited Warranty

Plaintiff does not dispute that the "exact terms of [her] warranty" exclude from warranty coverage third-party labor costs and damage to the product caused by third parties.[2] *Cf. Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 830 (N.D. Cal. 2021) (requiring plaintiff to show breach of warranty terms to state a breach claim). Nonetheless, she claims that she has alleged a breach, based on a "product datasheet" that SolarEdge provided to her, along with her Limited Warranty, at the

---

[2] As described in SolarEdge's opening brief, these are perfectly reasonable exclusions. A home solar system is a very complex product relying on sophisticated electrical engineering that can only be installed by third-party specialists trained in the field. *See, e.g.,* Am. Compl., Ex. D, at 1 (providing information for the third-party installers). SolarEdge does not control these specialists and will only have limited visibility into their work and billing, so it will naturally not provide a "warranty" for their own labor.

SOLAREDGE'S REPLY BRIEF
CASE NO. 5:22-CV-01584-JGB

time of purchase. Specifically, Plaintiff argues that the combination of provisions from the datasheet and the Limited Warranty supposedly "indicates that the Cell-Plug-In warranty is separate and thus not subject to the exclusions of the Limited Warranty." Opp. at 7.[3]

Plaintiff's convoluted interpretation is contradicted by the exact language of the Limited Warranty, from which she only selectively quotes. The Limited Warranty begins by providing a list of "Products" that are covered by the warranty terms. Am. Compl., Ex. B, at 1. The cellular plug-ins are included in the enumerated "Products" list, along with many other component parts, as Plaintiff recognizes in her complaint. Am. Compl. at ¶ 25 ("[SolarEdge] issues an express Limited Product Warranty ('the Warranty') which covers 'defects and materials of the below-listed products for the applicable Warranty Period' with 'products' including 'Wireless Communication Products' such as the Cell Plug-Ins.").[4] Then, after enumerating the list of covered Products, the Limited Warranty go on to provide:

> **The Limited Warranty does not apply to components which are separate from the Products**, ancillary equipment and consumables, such as, for example, cables, cable holders, fuses, wires and connectors, whether supplied by SolarEdge or others. Some components may carry their own manufacturer warranty. See product datasheet for more details.

*Id.*, Ex. B, at 1 (emphasis added).

---

[3] The product datasheet states that the solar system comes with a five or twelve year data plan and that "in the event that third party cellular technology currently used by SolarEdge (LTE Cat-M1) is phased out or becomes otherwise unavailable, SolarEdge shall ship replacement parts" to twelve-year plan holders. Am. Compl., Ex. A, at 2 n.1. The product datasheet is a technical document describing the operating and manufacturer information for the cellular plug-in. *Id.* Meanwhile, the Limited Warranty provides that "[s]ome components may carry their own manufacturer warranty" and refers to the product datasheet for more information. Am. Compl., Ex. B, at 1.

[4] SolarEdge agrees that this allegation accurately describes the Limited Warranty. *See* Am. Compl., Ex. B, at 1 (including "Wireless Communication Products" and "RS485 Plug-in" in list of "Products" covered by the warranty).

1   Plaintiff's interpretation of this paragraph (which forms the basis of her
2   breach of warranty claim), comes from selectively quoting the second and third
3   sentences while omitting the first.  But as the first sentence makes clear, this
4   paragraph only describes other "components" of the system which are separate
5   from the covered "Products."  These components, which are not manufactured by
6   SolarEdge, may indeed carry their own separate warranties from their respective
7   manufacturers—and this paragraph only recognizes that unremarkable fact.  But
8   because the plug-ins are expressly ***included*** in the definition of "Products," the
9   exclusion of coverage language for "components which are separate from the
10  Products" that Plaintiff cites (and that is quoted above) does not apply on its face.
11  Her arguments to that effect strain credulity and should be dismissed out of hand.
12  *Cf.* Cal. Civ. Code § 1638 (contract should be interpreted to avoid absurdity);
13  *Canyon Vineyard Ests. I, LLC v. DeJoria*, 78 Cal. App. 5th 995, 1003 (2022)
14  (directing courts to avoid interpretations that would create absurdity); *Revitch v.*
15  *DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020) (same).  If this were not clear
16  enough, her argument also contradicts the other portion of her Limited Warranty,
17  that specifically notes that "THE LIMITED WARRANTIES SET OUT HEREIN
18  ARE IN LIEU OF ANY OTHER WARRANTIES WITH RESPECT TO THE
19  PRODUCTS PURCHASED BY BUYER FROM SOLAREDGE."  Am. Compl.,
20  Ex. B, at 2.  Plaintiff does not address this language at all, or even attempt to
21  explain how one out-of-context reference to the product datasheet could create a
22  separate "Cell Plug-In warranty" that her Limited Warranty itself specifically
23  excludes.
24      Likewise, Plaintiff claims that statements in the product datasheet
25  (specifically, that twelve year plan holders will be entitled to free replacement parts
26  in the event that a third-party network provider terminates cellular coverage)
27  invalidate the Limited Warranty.  Again, this is not so.  The promise of free
28  replacement parts to twelve-year plan holders is a separate promise from the

SOLAREDGE'S REPLY BRIEF
CASE NO. 5:22-CV-01584-JGB

provisions of the Limited Warranty that should be read in harmony, not contradiction, with the warranty terms.  It is a canon of contractual interpretation that "individual provisions [should be] interpreted together, in order to give effect to all provisions and to avoid rendering some meaningless." *Maples v. SolarWinds, Inc.*, 50 F. Supp. 3d 1221, 1228 (N.D. Cal. 2014) (quoting *Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1027 (2011)).  SolarEdge does not dispute that, as a twelve-year plan holder, Plaintiff would be entitled to free replacement parts—if she had ever requested them.[5]  But SolarEdge will not automatically mail these parts to every customer; not every customer may request one and different network carriers phased out service at different times.  *See, e.g.*, Am. Compl., Ex. D (providing background on installation and listing dates of network changes).  And, as the complaint makes clear, Plaintiff never requested the replacement part; she alleges instead that she purchased the replacements on her own.  Am. Compl. ¶ 55.  Her only contact with SolarEdge after receiving notification of the network carrier's decision to terminate cellular coverage was to issue a demand letter through her lawyers, announcing that she would be initiating class action litigation, and demanding that SolarEdge cease contact with her.  *See* Am. Compl., Ex. E.  Had she simply requested the replacement parts (or called SolarEdge to ask), SolarEdge would have provided them, as it did for many other twelve-year data plan holders.[6]

---

[5] Five-year plan holders were given different contractual promises to address the burden of the 5G upgrade.  *See* Am. Compl., Ex. C, at 1 (letter to five-year plan holders noting that "if you purchase and replace your current system's modem before the shutdown, your new cell plan will extend through 2028").

[6] For the same reason, Plaintiff's discussion of whether she was required to "exhaust" her remedies, *see* Opp. at 7-8, misses the point.  As Plaintiff describes, SolarEdge issued a letter to its installers and customers alerting them to the 3G upgrade but informing them (correctly) that, because the old service was being terminated by a third party, it would not be covered by the customers' Limited Warranty.  Am. Compl., Ex. D, at 1-2 ("Frequently Asked Questions for Installers").  Nothing in this letter undermines SolarEdge's promise to provide free replacement parts to twelve-year data plan holders like Plaintiff.  (Plaintiff also

But her decision not to request them may have been strategic. If Plaintiff only sought replacement parts, she would not be entitled to all of the other costs she now seeks, such as third-party labor costs, which form the basis of her class action complaint but are specifically excluded from coverage under the Limited Warranty.

## 2. SolarEdge Did Not Disclaim Its Warranty

Plaintiff also claims that SolarEdge "affirmatively disclaimed" its warranty when it sent an email in January 2022 alerting customers to the loss of 3G coverage. *See* Opp. at 4, 7 (citing Am. Compl., Ex. D). These documents do not disclaim the warranty at all; they are entirely consistent with it. And while Plaintiff claims they are deceptive because they do not reference the free replacement parts, that is because the documents on their face are directed at *five-year data plan* holders. *See* Am. Compl., Ex. C, at 1 ("The 5-year, 3G cell plan in the modem that came with your SolarEdge installation . . ."). Thus, the documents that Plaintiff attaches to her complaint simply show that SolarEdge notified its five-year data plan holding customers that a third-party network carrier was discontinuing coverage, *see* Am. Compl., Ex. C, and provided a list of FAQs explaining what this means for those customers, *see id.*, Ex. D. But Plaintiff has a *twelve-year* plan. Since the notification email is expressly directed at five-year plan holders, it does not discuss the free replacement parts to which twelve-year plan holders would be entitled under the datasheet (and contains no other statements that could plausibly be construed as disclaiming coverage). *See id.*, Ex. C. The FAQs were likewise consistent with the Limited Warranty. For instance, they note that "the technology change is done by the carrier, not SolarEdge, and therefore is not covered under the SolarEdge warranty." *Id.*, Ex. D, at 2. They also note that "[t]he end user covers

---

attaches a separate Exhibit C, but this states that it only applies to five-year plan holders, and remains consistent with the Limited Warranty.) Therefore, if Plaintiff wanted the parts that she would be entitled to under the datasheet (but not the Limited Warranty), she should have requested them.

SOLAREDGE'S REPLY BRIEF
CASE NO. 5:22-CV-01584-JGB

ER-107

the cost" of replacement. *Id.* at 1. This is fully consistent with the Limited Warranty's exclusion of third-party labor from coverage. There is nothing in the FAQ disclaiming the promise to provide free replacement ***parts*** (but not labor costs) to twelve-year plan holders. Because the link to these FAQs was provided to the notice to five-year plan holders discussed above, *see id.*, Ex. C, at 2 (providing link to "Read our FAQs"), it could not be interpreted as affecting the rights of twelve-year plan holders at all. Nothing in Plaintiff's opposition explains how these statements could be interpreted as disclaiming the Limited Warranty.

### 3. The Limitations on Warranty Coverage Are Common and Not "Unconscionable"

Next, Plaintiff attempts to claim that the warranty limitations conflict with California law and are therefore unconscionable. Specifically, Plaintiff cites section 2715 of the California Commercial Code, which provides that a buyer will be entitled to consequential damages for a breach of warranty. Opp. at 9 (citing Cal. Comm. Code § 2715). She then claims that excluding labor costs from her warranty coverage violates this provision, because it supposedly eliminates her right to consequential damages, and so is void as unconscionable and contrary to public policy under the provisions of the Song-Beverly Act that prohibit a party from waiving the protections of the law. *See* Opp. at 8-9 (citing Cal. Civ. Code § 1790.1).

Plaintiff's argument is a bizarre case of circular reasoning. It depends on muddling the distinction between consequential damages for a breach of warranty on the one hand and exclusions from the coverage provided under the terms of the warranty on the other. That is, Plaintiff would only be entitled to consequential damages if there is a ***breach of warranty***. To establish a breach of warranty and be entitled to consequential damages, she would need to point to a term of the warranty that SolarEdge actually breached. By contrast, excluding labor costs from ***warranty coverage*** is only a limitation on the terms of the warranty that she agreed

- 8 -

to when she purchased the product. SolarEdge is not in breach of the warranty (and therefore Plaintiff is not entitled to consequential damages) simply by virtue of enforcing exclusions contained within the warranty terms. While SolarEdge agrees with the basic principle that it is not permitted to waive the requirements of California law, *see* Cal. Civ. Code §1790.1, nothing in Plaintiff's papers shows either that she is entitled to consequential damages for a breach of warranty or that excluding labor costs from her warranty coverage is unconscionable. Indeed, it is very common to have warranties limited to defects in material and workmanship which do not include the cost of third-party labor in the coverage. *See, e.g.*, *Oddo*, 2017 WL 372975, at *9-10 (upholding warranty providing for replacement of defective part but excluding labor costs); *Grassi*, 2015 WL 4879410, at *4 (same). This is especially important in the home solar system context, which relies on complex and rapidly-evolving technology, and so will be expected to require service and upgrades from time to time. Plaintiff's arguments would invalidate this common practice.

## B. Plaintiff Fails to Plead a Breach of Implied Warranty

When, as here, a contract contains express written warranties, those warranties displace inconsistent implied warranties. Cal. Comm. Code § 2317(c); *Melbye v. Accelerated Payment Techs., Inc.*, 2012 WL 5944644, at *4 (S.D. Cal. Nov. 27, 2012); *Kucharczyk v. Regents of Univ. of Cal.*, 946 F. Supp. 1419, 1432 (N.D. Cal. 1996); *see also Grodzitsky v. Am. Honda Motor Co.*, 2013 WL 2631326, at *13 (C.D. Cal. June 12, 2013).[7] Moreover, the express written terms of

---

[7] Plaintiff claims that these cases are inapposite, ostensibly because they concern the interpretation of contracts. Opp. at 10 n.6. However, Plaintiff ignores Cal. Com. Code § 2317(c), which provides that "express warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose." *See also Trelleborg Sealing Sols. US, Inc. v. Precision Wire Components LLC*, 2022 WL 2286486, at *5 (C.D. Cal. Apr. 11, 2022) (quotations and alterations omitted). Plaintiff also ignores the fact that, under California law, express warranties are treated as a contractual term, and are therefore analyzed in

SOLAREDGE'S REPLY BRIEF
CASE NO. 5:22-CV-01584-JGB

ER-109

the Limited Warranty exclude all implied warranties.  Am. Compl., Ex. B, at 2
("THE LIMITED WARRANTIES SET OUT HEREIN ARE IN LIEU OF ANY
OTHER WARRANTIES WITH RESPECT TO THE PRODUCTS PURCHASED
BY BUYER FROM SOLAREDGE, WHETHER EXPRESS OR IMPLIED . . . .").
This is enough to exclude the implied warranty of merchantability from the sale of
goods to Plaintiff.  *See* Cal. Comm. Code § 2316(2).  Indeed, other courts have
dismissed similar implied warranty claims brought by this same Plaintiff when they
conflicted with the terms of her express warranty.  *Sauer v. Subaru of Am., Inc.*,
2020 WL 1527779, at *7-8 (D.N.J. Mar. 31, 2020).

Nonetheless, in her Opposition, Plaintiff argues that, despite the existence of
a written warranty that excludes implied warranties, SolarEdge somehow breached
an implied warranty by selling a product that was "unmerchantable."  Specifically,
Plaintiff argues that her ***cellular plug-in*** (but not her SolarEdge home solar system)
was unmerchantable because it could not connect to the Internet after the network
provider terminated 3G coverage.  Without citing any law, she claims that the
"entire point of this lawsuit is that [the] individual component is a standalone piece
with a separate warranty."  Opp. at 12.

Even if SolarEdge had not excluded all implied warranties, this argument
fails because, as discussed above, the cellular plug-in is not a standalone piece with
a separate warranty.  The Limited Warranty covers multiple enumerated Products,
of which the cellular plug-in is only one.  *See* Am. Compl., Ex. B, at 1.  This is
because a cellular plug-in is only one component part to a larger home solar system.
The plug-in would be useless by itself unless it were connected to a broader solar
system; no one would buy one just to keep at home.  As such, the key question in
an implied warranty claim is whether the ***entire system*** was rendered

___

accordance with principles of contract law.  *See Asghari v. Volkswagen Grp. of
Am., Inc.*, 42 F. Supp. 3d 1306, 1333 (C.D. Cal. 2013).

SOLAREDGE'S REPLY BRIEF
CASE NO. 5:22-CV-01584-JGB

1  unmerchantable by the need to upgrade a single component part. *See, e.g.*, *In re My*

2  *Ford Touch Consumer Litig.*, 46 F. Supp. 3d at 980 n.14 (rejecting argument that a

3  claim for breach of the implied warranty of merchantability can be made out by

4  "disassembly of a product into its component parts" and using one such part "to

5  define the ordinary purpose of the [product]"). If Plaintiff's arguments were

6  accepted as law, then every small product upgrade or maintenance would breach the

7  implied warranty of merchantability, because one component would necessarily be

8  in need of service.

9       Here, the system was clearly merchantable even while the cellular plug-in

10  was being replaced. A product is merchantable so long as it "provides for a

11  minimum level of quality" and is "fit for the ordinary purposes for which it is

12  used." *See Kacsuta*, 2013 WL 12126775, at *3 (quoting *Am. Suzuki Motor Corp. v.*

13  *Superior Ct.*, 37 Cal. App. 4th 1291, 1296 (1995)). Plaintiff's system continued its

14  ordinary purpose of producing energy without the cellular plug-in; it simply could

15  not connect to the wireless Internet until the part was replaced. *See* Am. Compl.,

16  Ex. C, at 1 ("Your system will still produce solar energy" after the outage but will

17  lose access to four wireless Internet services). Plaintiff cannot merely redefine the

18  relevant product to one small component of a larger system, and then claim that that

19  component part is unmerchantable *See Hauck v. Advanced Micro Devices, Inc.*,

20  2019 WL 1493356, at *16-17 (N.D. Cal. Apr. 4, 2019) (requiring that the product

21  ***as a whole*** must be unfit for its ordinary purpose to state an unmerchantability

22  claim). But Plaintiff does not allege that her system as a whole was unfit for its

23  ordinary purpose here; her opposition brief implicitly recognizes that her entire

24  system did work. Opp. at 11-12. And even if she did attempt to allege it, the

25  cellular plug-in was not truly ***non-functional*** but rather was only in need of an

26  upgrade to conform to changing technology.

27

28

SOLAREDGE'S REPLY BRIEF
CASE NO. 5:22-CV-01584-JGB

**C.** **Plaintiff Fails to State Claims under the California Consumers Legal Remedies Act or Unfair Competition Law**

Finally, Plaintiff attempts to defend her claims for violations of the California Legal Remedies Act (CLRA) and Unfair Competition Law (UCL). At the same time, Plaintiff recognizes that her CLRA and UCL claims are derivative of her other claims and do not assert new facts. *See, e.g.*, Opp. at 13. They simply repeat her theories, already discussed above, that SolarEdge somehow "misrepresented" its products to Plaintiff and that its exclusion on labor costs from warranty coverage is unconscionable. These claims should be dismissed for several reasons.

First, as SolarEdge discussed in its original brief—but Plaintiff did not address in her reply—because both CLRA and UCL claims "sound in fraud," they are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). To avoid dismissal under Rule 9(b), Plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). But even in her opposition brief, Plaintiff still does not explain who made the supposedly fraudulent statements or when, where, or how they were made. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Kearns*, 567 F.3d at 1124. She does not even particularly describe what was said. The most that she does is repeat the language of the CLRA and UCL and then claim, in general, unspecified language that "Defendant represented that the Cell Plug-Ins came with a 5-year/12-year data plan during which it would provide the online accessibility features as discussed *ad nauseum* above." Opp. at 13 (CLRA); *see also* Opp. at 14 (noting same analysis for UCL). But Plaintiff's opposition and complaint explain nothing more about this statement—or even explain how it is false. Indeed, the same datasheet that Plaintiff relies on elsewhere in her complaint specifically describes what SolarEdge will do "in the event that third party cellular technology currently used by SolarEdge . . . is phased out or become otherwise unavailable." Am. Compl., Ex. A, at 2 n. 1.

1    Plaintiff cannot both rely on the datasheet as the source of her claims of
2    misrepresentation and also ignore the portions that disclosed the possibility of the
3    same problems she now complains about. When Plaintiff alleged similar claims
4    using similar language in New Jersey, they were dismissed under Rule 9(b) for the
5    same reasons. *Sauer*, 2020 WL 1527779, at *8-10.

6        Second, Plaintiff recognizes that her claim under the "unlawful" prong of the
7    UCL can only succeed if any of her other claims are upheld. *See* Opp. at 14. If
8    they are not, then there is no unlawful predicate to support the claim and this prong
9    must be dismissed. But since, as discussed, those claims all fail, the unlawful-
10   prong claim should be dismissed too.

11       Third, Plaintiff's only argument in support of her claim under the "unfair"
12   prong of the UCL is that SolarEdge supposedly caused her harm without
13   countervailing benefit. But Plaintiff cannot show any unfair harm or violation of
14   public policy because she has not shown an actual breach of warranty. There is a
15   clear, established, and long-standing public policy in enforcing written contracts,
16   such as the Limited Warranty. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th
17   899, 911 (2015). Thus, in the absence of a breach, it is not "unfair" for SolarEdge
18   to enforce the Limited Warranty according to its terms. Moreover, Plaintiff's claim
19   that she could not have avoided this harm because she "could not know that
20   Defendant's Cell Plug-Ins would fail until after purchase or that Defendant would
21   refuse to honor its warranty," Opp. at 15, rings hollow when the same product
22   datasheet that she attached to her complaint notified her of this possibility at the
23   time of purchase. *See* Am. Compl., Ex. A, at 2 n.1. None of her claims can
24   overcome the fact that SolarEdge acted consistently in accordance with all its
25   written warranties and representations.

26       **D.    Plaintiff Lacks Article III Standing to Pursue Injunctive Relief**

27       A party or a class can only seek injunctive relief for past harm if that harm is
28   accompanied by "continuing, present adverse effect." *Lujan v. Defs. of Wildlife*,

SOLAREDGE'S REPLY BRIEF
CASE NO. 5:22-CV-01584-JGB

504 U.S. 555, 564 (1992) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (cleaned up)). By its nature, the transition to 3G can only happen once. Plaintiff has not alleged that the network carriers are likely to retire 5G coverage in the future or that, if they do, it would require another replacement part. Therefore, she has at most pled a single instance of past harm. Her claims for injunctive relief should be dismissed accordingly.

Plaintiff's only attempts to avoid this obvious conclusion are two sentences claiming that "Defendant has indicated it still intends to refuse to comply with [the Limited Warranty]" and that "Defendant continues to seek to enforce its Exclusions regarding consequential damages." Opp. at 16. Neither of these claims have merit. SolarEdge has never claimed that it will not comply with the Limited Warranty. As discussed above, SolarEdge only seeks to enforce the Limited Warranty according to its terms; it is Plaintiff who seeks to rewrite it. And as further discussed above, the Limited Warranty contains no limitations on consequential damages. Accordingly, if these are Plaintiff's only bases to permit a claim for injunctive relief, then that claim should be dismissed too.

### E.  The Court Should Dismiss the Complaint with Prejudice

"The 'general rule that parties are allowed to amend their pleadings . . . does not extend to cases in which any amendment would be an exercise in futility or where the amended complaint would also be subject to dismissal.'" *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998)). Plaintiff has already amended her complaint once and, when she did so, she attached all of the relevant warranty documents to her new complaint. Since the terms of the documents are clear on their face and do not show a breach of warranty, then any amendment would be futile.

While Plaintiff claims she could amend her complaint to add new facts, she does not explain what these facts would be or how they would impact the analysis.

SOLAREDGE'S REPLY BRIEF
CASE NO. 5:22-CV-01584-JGB

1    The only example she provides is that she will admit that she had a twelve-year data

2    plan.  But this would not impact any relevant question because a twelve-year plan

3    holder is still not entitled to reimbursement for labor costs under the written terms

4    of the Limited Warranty and because Plaintiff never requested the replacement part

5    that a twelve-year plan holder could receive.  In fact, SolarEdge already explained

6    that Plaintiff was a twelve-year plan holder in its opening brief.  *See* Mot. at 7 n.3.

7    Because there is no set of facts that Plaintiff could allege that would undermine the

8    clear wording of the warranty documents, her complaint should be dismissed with

9    prejudice.

10   **III.  CONCLUSION**

11          For the forgoing reasons, and as described in SolarEdge's Memorandum of

12   Points and Authorities in Support of its Motion to Dismiss, the Court should

13   dismiss Plaintiff's claims with prejudice under Federal Rules of Civil Procedure

14   9(b) and 12(b)(6), because Plaintiff fails to state a claim on which relief may be

15   granted.

16

17   Dated:          January 23, 2023                  **O'MELVENY & MYERS LLP**

18                                                     */s/ Matthew D. Powers*

19                                                     Matthew D. Powers
                                                       Two Embarcadero Center, 28th Floor
20                                                     San Francisco, CA 94111
                                                       Telephone: (415) 984-8700
21                                                     Facsimile: (415) 984-8701
                                                       E-mail: mpowers@omm.com
22
                                                       *Attorney for Defendant SolarEdge*
23                                                     *Technologies, Inc.*

24

25

26

27

28

SOLAREDGE'S REPLY BRIEF
CASE NO. 5:22-CV-01584-JGB

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant SolarEdge Technologies, Inc., certifies that this brief contains 5,027 words, which complies with the word limit of L.R. 11-6.1.


Dated:          January 23, 2023                    **O'MELVENY & MYERS LLP**

                                                    */s/ Matthew D. Powers*
                                                    Matthew D. Powers
                                                    Two Embarcadero Center, 28th Floor
                                                    San Francisco, CA 94111
                                                    Telephone: (415) 984-8700
                                                    Facsimile: (415) 984-8701
                                                    E-mail: mpowers@omm.com

                                                    *Attorney for Defendant SolarEdge*
                                                    *Technologies, Inc.*

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 22-1584 JGB (KKx)** | Date | June 22, 2023 |
| Title | *Cheryl Sauer v. SolarEdge Technologies, Inc., et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) GRANTING Defendant's Motion to Dismiss (Dkt. No. 14); and (2) VACATING the June 26, 2023 Hearing (IN CHAMBERS)**

Before the Court is a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) filed by defendant SolarEdge Technologies, Inc. ("SE" or "Defendant"). ("Motion," Dkt. No. 14.) The Court determines this matter is appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court **GRANTS** Defendant's Motion. The June 26, 2023 hearing is **VACATED**.

## I. BACKGROUND

On June 9, 2022, plaintiff Cheryl Sauer ("Plaintiff"), individually, and on behalf of all others similarly situated, filed a class action complaint against defendants SE and Does 1 through 10. ("Complaint," Dkt. No. 1-1.) On September 8, 2022, SE removed the action pursuant to the Class Action Fairness Act ("CAFA") and on the basis of diversity jurisdiction. ("Notice of Removal," Dkt. No. 1.) On October 21, 2022, Plaintiff filed a first amended complaint. ("FAC," Dkt. No. 13.)

The FAC alleges eight causes of action: (1) violation of the Unfair Business Practices Act under Cal. Bus. & Prof. Code §§ 17200 et seq.[1] ("Claim One"); (2) violation of the California Consumer Legal Remedies Act ("CLRA") under Cal. Civ. Code § 1750 et seq. ("Claim Two"); (3) breach of express warranty ("Claim Three"); (4) breach of express warranty under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2300 et seq. ("Claim Four"); (5)

---

[1] Unfair, fraudulent, unlawful.

ER-117

breach of express warranty under the Song-Beverly Warranty Act ("SBWA"), Cal. Civ. Code § 1792 et seq. ("Claim Five"); (6) breach of implied warranty ("Claim Six"); (7) breach of implied warranty under the MMWA ("Claim Seven"); and (8) breach of implied warranty under the SBWA ("Claim Eight").  (See FAC.)  The FAC includes the following attachments:

- Cellular Plug-In with Data Plan for the US ("Data Sheet," Dkt. No. 13-1, Ex. A);
- Limited Product Warranty ("Limited Warranty," Dkt. No. 13-2, Ex. B);
- January 27, 2022 email from SE to consumers ("January 27 Email," Dkt. No. 13-3, Ex. C);
- SolarEdge Cell Modem 3G Network FAQs ("FAQs," Dkt. No. 13-4, Ex. D); and
- Notice letter to SE ("Notice Letter," Dkt. No. 13-5, Ex. E).

On December 9, 2022, SE filed the Motion.  (See Mot.)  On January 9, 2023, Plaintiff opposed.  ("Opposition," Dkt. No. 15.)  On January 23, 2023, SE replied.  ("Reply," Dkt. No. 16.)

## II.  FACTUAL ALLEGATIONS

### A.  Documents Considered

When deciding a motion to dismiss under Federal Rule of Civil Procedure ("Rule")[2] 12(b)(6), the Court need not "accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  Paulsen v. CNF Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).

The Court considers all of the attachments to the FAC when ruling on the Motion.  Rule 10 provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.  A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c).  "In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto."  Gerritsen v. Warner Bros. Ent. Inc., 112 F. Supp. 3d 1011, 1019 (C.D. Cal. 2015) (emphasis added).  "A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Courts generally hold that "documents attached to a complaint are viewed as part of the plaintiff's pleadings."  In re Enron Corp. Sec., Derivative & "ERISA" Litig., 540 F. Supp. 2d 800, 808–09 (S.D. Tex. 2007) (citing Rule 10(c)); Hall v. Bellmon, 935 F.2d 1106, 1112 (10th Cir. 1991) ("A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal.") (citing Rule 10(c)); see also Knievel v. ESPN, 393 F.3d 1068, 1076

---

[2] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

(9th Cir. 2005).  Further, "[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment."  <u>Centers v. Centennial Mortg., Inc.</u>, 398 F.3d 930, 933 (7th Cir. 2005) (citations omitted).

## B.  Factual Allegations

Plaintiff alleges the following facts, which are assumed to be true for the purposes of the Motion.  <u>See</u> <u>Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco</u>, 277 F.3d 1114, 1120 (9th Cir. 2002).

SE manufactures and sells cellular plug-ins ("Cell Plug-Ins") for inverters.  (FAC ¶ 1.)  Through Cell Plug-Ins, SE provides solar monitoring so that a consumer can keep track of their solar home energy production in real-time.  (<u>Id.</u> ¶ 2.)  The Cell Plug-Ins were manufactured, designed, and sold to only work on 3G wireless mobile networks.  (<u>Id.</u> ¶ 3.)  Without a 3G cellular wireless network to access, the Cell Plug-Ins are unable to perform their purpose—the transfer of information regarding the system which allows consumers to monitor their solar home energy production.  (<u>Id.</u>)

In 2018 and 2019, the wireless mobile networks that provided the 3G networks that the Cell Plug-Ins accessed issued notices that they would be sunsetting 3G technology in 2022 ("the 3G Sunset") and all devices that used such 3G technology, such as the Cell Plug-Ins, would have to be replaced.  (<u>Id.</u> ¶ 3.)  SE has known since at least August 2019 that the 3G wireless networks its Cell Plug-Ins rely on would be deprecated in 2022, at which point the Cell Plug-Ins would be rendered useless.  (<u>Id.</u> ¶ 24.)

SE issues an express Limited Warranty which covers "defects and materials of the below-listed products for the applicable Warranty Period"[3] with "products" including "Wireless Communication Products" such as the Cell Plug-Ins.  (<u>Id.</u> ¶ 25; Ex. B.)  With respect to the Cell Plug-Ins, the Limited Warranty covers 5 years from either 4 months of the date of shipment or the date of installation, whichever is earlier.  (<u>Id.</u> ¶ 26.)  SE knew that the Cell Plug-Ins were covered under the Limited Warranty.  (<u>Id.</u> ¶ 27.)  The Limited Warranty provides that in the event of a defect in workmanship or materials, SE will either "repair the Product at SolarEdge's facilities or on-site; or issue a credit note for the defective Product in an amount up to its actual value at the time buyer notifies SolarEdge of the defect, as determined by SolarEdge, for use toward the purchase of a new Product; or provide Buyer with replacement units for the Product."  (<u>Id.</u> ¶ 32.)

SE made further representations in the product Data Sheet.  (<u>Id.</u> ¶ 38.)  The Data Sheet represents that the Cell Plug-Ins "[c]onnect[] SolarEdge inverters wirelessly to the internet,"

---

[3] For this language, Plaintiff cites to Exhibit B which is attached to the FAC.  Plaintiff misquotes the language.  The language in the Limited Warranty states that the Limited Warranty covers "defects in workmanship and materials of the below-listed products . . . ."  (<u>See</u> Limited Warranty at 1.)

ER-119

"[e]nable[] remote analysis and troubleshooting," and a "5-year/12-year data plan is included." (Id. ¶ 39.) The Data Sheet also specifically makes the representation that "[f]or 12 year data plans – in the event that third party cellular technology currently used by SolarEdge [] is phased out or becomes otherwise unavailable, SolarEdge shall ship replacement parts such as modem and/or sim card of a prevailing technology. Upon such replacement, the new prevailing hardware shall continue to be covered for the remainder of the original data plan duration." (Id. ¶ 40.) These representations and warranties were broadly disseminated on SE's website. (Id.)

On September 10, 2019, Plaintiff purchased a solar home energy production system which included two SE inverters and two Cell-Plugins for installation on her home. (Id. ¶ 12.) The Limited Warranty was in effect when Plaintiff made her purchase. (Id. ¶ 25.) The installer advised Plaintiff that, based on SE's representations, the SE inverters would allow Plaintiff to monitor and troubleshoot her solar production from an app or website offered by SE and that it included a cellular plan of between five and twelve years along with a warranty. (Id. ¶ 49.) Being able to monitor her solar home energy system remotely was important to Plaintiff and a key part of her decision with regards to which components to include in her solar home system. (Id. ¶ 50.) Plaintiff relied on these representations and warranties in deciding to purchase a solar home system which included the Cell Plug-Ins. (Id. ¶ 51.) Had the authorized installer or any other person informed Plaintiff that the Cell Plug-Ins were not actually warranted to work and, in fact, would become useless within three (3) years, she would not have agreed to purchase products including SE's Cell Plug-Ins. (Id.) On September 10, 2021, Plaintiff executed her contract with the authorized installer and agreed to purchase the solar home system including the Cell Plug-Ins for a net cost of $36,876 after tax credit. (Id. ¶ 52.)

On or around January 27, 2022, SE sent Plaintiff an email informing her that the Cell Plug-In component of her inverters would be rendered inoperable by the deprecation of the 3G cellular networks, and that if the modem was not replaced Plaintiff would no longer have access to her system monitoring. (Id. ¶ 53.) SE also published and linked consumers to an FAQ on its website further reiterating that the "end user covers the cost" of replacement and that it was not covered under its warranty. (Id. ¶ 28.) SE also directed its sales agent, 365 Pronto, to begin repeatedly emailing Plaintiff about purchasing a replacement plug-in which would cost $633 including parts and labor. (Id. ¶ 54.)

Because SE affirmatively disclaimed its Limited Warranty through its January 27 Email and published FAQ, Plaintiff felt that she had no choice except to incur the parts and labor costs on her own to replace the defect Cell Plug-Ins. (Id. ¶ 55.) Plaintiff was required to replace not one, but two Cell Plug-Ins, with the first being in the panel inverter and the second being in the battery inverter. (Id. ¶ 56.) As such, Plaintiff has incurred labor and parts costs to replace the two Cell Plug-Ins modems in order to maintain her system monitoring plan, despite SE's representations that the system monitoring plan would be provided for a period of between five and twelve-years and also under a Warranty that covered defects. (Id. ¶ 57.) The failure of the Cell Plug-Ins due to a deprecation of the 3G wireless network constitutes a defect which is a breach of the Warranty. (Id. ¶ 58.) Because of this defect, all Cell Plug-Ins relevant to this

ER-120

litigation have now failed before the end of their expected useful life as warranted by SE on either a five- or twelve year basis. (Id. ¶ 21.)

On June 9, 2022, through her attorneys of record, Plaintiff notified SE by letter of the breach of warranty and CLRA on behalf of herself and all others similarly situated and demanded SE repair the defects and compensate Plaintiff and all others similarly situated for out-of-pocket costs. (Id. ¶ 58.) Plaintiff seeks recovery on behalf of herself and the following Class: all persons in the United States (a) who purchased the Cell Plug-Ins from an authorized seller of SolorEdge or (b) who currently own systems which include Cell Plug-Ins. (Id. ¶¶ 7, 60.) Plaintiff also seeks to represent a subclass ("Subclass") consisting of all class members within California. (Id. ¶ 62.)

## III. LEGAL STANDARD

### A. Motion to Dismiss

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted). Courts also need not accept as true allegations that contradict facts which may be judicially noticed. See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of

ER-121

underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## B. Leave to Amend

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

## IV. DISCUSSION

SE contends that the FAC should be dismissed under Rule 12(b)(6) for failure to state a claim. (See Mot.)

## A. Breach of Express Warranty (Claim Three, Four, and Five)

Plaintiff alleges three separate breach of express warranty claims: a general claim of breach of express warranty without citation to a statutory basis (Claim 3); breach of express warranty under the federal MMWA (Claim Four); and breach of express warranty under the California SBWA (Claim Five). All three claims rely on the same allegations and legal theories; thus, the Court addresses them together.

SE contends that Plaintiff's breach of express warranty claims fail because she did not plead a breach of the Limited Warranty. (Mot. at 8-12.) The Court agrees. To state a breach of an express warranty claim under California law, Plaintiff must allege: "the exact terms of the warranty, [P]laintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." Watkins v. MGA Ent., Inc., 550 F. Supp. 3d 815, 830 (N.D. Cal. 2021). A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty. Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 525 (1992). "To adequately allege the exact terms of an express warranty, a plaintiff must identify a specific and unequivocal written statement," that SE is alleged to have breached. Watkins, 550 F. Supp. 3d at 830 (internal quotes omitted). If Plaintiff cannot specifically point to the actual warranties that were breached, Plaintiff fails to state a cause of action for breach of express warranty. See Rodarte v. Philip Morris, Inc., 2003 WL 23341208, at *5 (C.D. Cal. June 23, 2003) ("the [c]omplaint failed to state a cause of action for breach of express warranty because it did not identify the exact terms or specific advertisements or representations").

Plaintiff alleges that SE made a specific written promise through its Data Sheet that the Cell Plug-Ins included a "5/12 year warranty" and a "5-year/12-year data plan is included." (Opp'n at 6; FAC ¶ 39; Data Sheet at 1.)  Plaintiff alleges that she relied on these representations in deciding to purchase the solar home energy system including the Cell Plug-Ins and that if she had been informed that the Cell Plug-Ins would be useless within three years, she would not have agreed to purchase products that included SE's Cell Plug-Ins.  (Opp'n at 6; FAC ¶¶ 49, 51.) Plaintiff alleges that she was harmed when she had to incur the parts and labor costs to replace the two Cell Plug-Ins herself.  (Opp'n at 6; FAC ¶¶ 55-57.)

Notably, Plaintiff does not dispute that the Limited Warranty she was provided with excludes from warranty coverage: (1) third-party labor costs; and (2) actions by third parties that render the Cell Plug-Ins non-functional.  (FAC ¶¶ 34, 36; Opp'n at 6.)  Yet, Plaintiff brings this lawsuit to recover "out-of-pocket costs" for "incurred labor and parts costs to replace" two Cell Plug-Ins that became non-functional due to actions by third parties.  (FAC ¶¶ 57-58.)  Plaintiff argues that a combination of provisions from the Data Sheet and Limited Warranty that SE provided her indicate "that the Cell-Plug-In warranty is separate and thus not subject to the exclusions of the Limited Warranty," and thus she has alleged a breach.  (Opp'n at 6-7.)

Plaintiff relies on language provided in the Limited Warranty that states the "Limited Warranty does not apply to components, which are separate from the Products . . . . Some components may carry their own manufacturer warranty.  See product datasheet for more details."  (Limited Warranty at 1.)  Plaintiff interprets that language to mean that Cell Plug-Ins: (1) are not "Products" and are instead "components" that "carry their own manufacturer warranty"; (2) the Data Sheet is the Cell Plug-Ins warranty; and (3) because the Limited Warranty does not apply to "components," the Cell Plug-Ins are not subject to the exclusions of the Limited Warranty.  (Opp'n at 7.)  Plaintiff is mistaken.  As Plaintiff acknowledges, the Limited Warranty defines the word "Products" as including Cell Plug-Ins.  (Limited Warranty at 1; FAC ¶ 25.)  Thus, because the Cell Plug-Ins are expressly included in the definition of "Products," the exclusion of coverage for "components which are separate from the Products" that Plaintiff relies on is inapplicable to the Cell Plug-Ins.

Plaintiff also argues that statements in the Data Sheet (specifically, that for twelve year plan holders, SE will ship replacement parts in the event that a third-party network provider terminates cellular coverage) contradicts a section titled "Warranty Exclusions" in the Limited Warranty.  (Opp'n at 7.)  The "Warranty Exclusions" section states as follows: "This Limited Warranty will not apply if . . . the Product or any part thereof is . . . rendered non-functional as a result of . . . action of third parties[.]"  (Limited Warranty at 1.)  But Plaintiff fails to explain how the provision in the Data Sheet promising free replacement parts for twelve-year plan holders is contradictory to the Limited Warranty exclusion that excludes coverage over defects in workmanship and materials for damages caused by third parties.  Plaintiff's allegations suggest that the modems suffer from a design defect, not workmanship and material defects.  (FAC ¶ 20 ("The Cell Plug-Ins were designed and can only function by connecting to a 3G cellular wireless network.").)  "[A] design defect exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective."  <u>Gertz v. Toyota Motor Corp.</u>, 2011

ER-123

WL 3681647, at *3 (C.D. Cal. Aug. 22, 2011). Courts have held that warranties covering defects in "materials and workmanship" do not extend to claims for design defects like those at issue here. In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig., 754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010). Thus, the Court is unpersuaded that the provision in the Data Sheet offering a replacement part for an alleged design issue is contradictory to the Warranty Exclusion that covers defects in workmanship and materials. See Maples v. SolarWinds, Inc., 50 F. Supp. 3d 1221, 1228 (N.D. Cal. 2014) (It is a canon of contractual interpretation that "individual provisions [should be] interpreted together, in order to give effect to all provisions and to avoid rendering some meaningless.").

Plaintiff next argues that SE affirmatively disclaimed its Limited Warranty when it sent out the January 27, 2022 email ("Jan. 27 Email") that incorporated an FAQ section that specifically stated "[f]or modem affected by the premature 3G shutdown, the technology change is done by the carrier, not SolarEdge, and therefore is not covered under the SolorEdge Warranty." (Opp'n at 7-8; FAQ at 2.) The Court disagrees and finds that the Jan. 27 Email and FAQ are consistent with the Limited Warranty. As noted above, the Limited Warranty explicitly states that it will not apply if a Cell Plug-In is "rendered non-functional as a result of . . . action of third parties." (Limited Warranty at 2.) This is in line with the FAQ which states that the "technology change done by the carrier", a third party, is not covered under the Limited Warranty. Furthermore, the Jan. 27 Email that Plaintiff attached to the FAC is directed at five-year data plan holders. (Jan. 27 Email at 1 ("The 5-year, 3G cell plan in the modem that came with your SolarEdge installation . . .").) Thus, the Jan. 27 Email shows that SE notified its five-year data plan holding customers that a third-party network carrier was discontinuing coverage and provided a list of FAQs explaining what that means for those customers. As both parties note, Plaintiff has a twelve-year plan. (Mot. at 7 n.3; Opp'n at 16.) The Jan. 27 Email and the FAQs incorporated with it does not address replacement parts for twelve-year plan holders because the email was expressly directed to five-year plan holders. In sum, the Court does not find that through the Jan. 27 Email and FAQs, SE disclaimed its Limited Warranty.

Finally, Plaintiff argues that the SBWA expressly prohibits limitations on remedies, and thus the Limited Warranty's provision that excludes labor costs and seeks to limit warranty claims to those under the Limited Warranty are unconscionable and contrary to public policy under Cal. Civ. Code § 1790.1 ("Section 1790.1"). (Opp'n at 9.) The relevant Limited Warranty provision states:

> "[a]ll costs, including, without limitation, labor, travel and boarding costs of SolarEdge service personnel or others that are incurred for labor relating to repairs, uninstalling and reinstalling of Products on-site, as well as costs related to buyer's employees and contractors repair or replacement activities, are not covered by the Limited Warranty and, unless otherwise agreed in writing in advance by SolarEdge, shall be borne by the buyer."

(Limited Warranty at 2; Opp'n at 3.) Section 1790.1 states that "[a]ny waiver by the buyer of consumer goods of the provisions of this chapter, except as expressly provided in this

ER-124

chapter, shall be deemed contrary to public policy and shall be unenforceable and void." Cal. Civ. Code § 1790.1. Plaintiff argues that the Limited Warranty's provision that excludes labor costs eliminates her right to consequential damages, and thus violates Section 1790.1. (Opp'n at 9.) Plaintiff seems to muddle the distinction between consequential damages for a breach of a warranty and exclusions from coverage. As SE correctly points out, Plaintiff would be entitled to consequential damages if there had been a breach of warranty. Notably, Plaintiff has not pointed to a term of the warranty that SE breached. By contrast, excluding labor costs from warranty coverage is a limitation on the terms of the warranty. Courts have found similar warranties that exclude labor costs as not unconscionable. See, e.g., Oddo v. Arcoaire Air Conditioning & Heating, 2017 WL 372975, at *9-10 (C.D. Cal. Jan. 24, 2017) (upholding warranty providing for replacement of defective part but excluding labor costs); Grassi v. Int'l Comfort Prod., LLC, 2015 WL 4879410, at *4 (E.D. Cal. Aug. 14, 2015) (same). Thus, SE is not in breach of the warranty simply by virtue of enforcing exclusions precluding labor costs and its warranty terms are not unconscionable. In sum, the Court finds that Plaintiff has failed to plead a breach of the Limited Warranty. Accordingly, the Court **GRANTS** SE's Motion as to Plaintiff's Claims Three, Four, and Five, and **DISMISSES** those claims.

## B. Breach of Implied Warranty (Claims Six, Seven, and Eight)

Plaintiff alleges three separate breach of implied warranty claims: a general claim (Claim Six); breach of implied warranty under the federal MMWA (Claim Seven); and breach of implied warranty under the California SBWA (Claim Eight). All three claims rely on the same allegations and legal theories; thus, the Court addresses them together.

Plaintiff alleges that the sale by SE of the Cell Plug-Ins was accompanied by implied warranties that the Cell Plug-Ins were merchantable and fit for the ordinary purpose for which products were sold. (FAC ¶ 123.) SE issued the Limited Warranty to Plaintiff and the Class, so SE is in direct privity with Plaintiff and the Class. (Id. ¶ 24.) SE breached the implied warranties in that the Cell Plug-Ins are not fit for their intended use and not of merchantable quality because they have been rendered defective and inoperable because of the 3G Sunset. (Id. ¶ 128.)

SE contends that Plaintiff's implied warranty claim fails because: (1) it is contrary to SE's express warranty; and (2) even if the implied warranty claim were not barred by the express warranty's terms, it would still fail because Plaintiff does not allege that the lack of cellular monitoring made her system "unmerchantable." (MTD at 14.) As to SE's first contention that Plaintiff's implied warranty claim fails because it is contrary to SE's express warranty, SE bases this argument on California Commercial Code § 2317(c) ("Section 2317"). (Id.) Section 2317 provides that "[e]xpress warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose." Cal. Comm. Code § 2317(c). California courts have held that the SBWA "extends greater protection to consumers by specifically prohibiting a waiver of the implied warranty of merchantability, except where the sale is 'as is'," which is not the case here. Mocek v. Alfa Leisure, Inc., 114 Cal. App. 4th 402, 409 (2003). Accordingly, SE's Limited Warranty does not displace Plaintiff's implied warranty claim.

ER-125

As to SE's second contention, SE argues that a third party's decision to discontinue 3G cellular networks in favor of newer technology did not impact the solar panel's ability to produce solar energy, and thus, Plaintiff's allegations regarding the Cell Plug-In do not describe a defect that seriously impacts the solar panel's operability.  (MTD at 15.)  Plaintiff responds that the Cell Plug-In is an individual component with a separate warranty that can no longer fulfill its most basic function and must be replaced to restore functionality, and thus, it is not fit for its ordinary purpose of monitoring the solar home energy system.  (Opp'n at 11.)

To be merchantable, the product must be "fit for the ordinary purposes for which such goods are used."  Cal. Civ. Code § 1791.1(a)(2).  "Such fitness is shown if the product is in safe condition and substantially free of defects."  Mexia v. Rinker Boat Co., 174 Cal. App. 4th 1297, 1303 (2009) (internal quotations omitted).  The product need not be perfect, so long as "it provides for a minimum level of quality."  Am. Suzuki Motor Corp. v. Superior Court, 37 Cal. App. 4th 1291, 1296 (1995).  "[A] breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness for ordinary use."  Mocek, 114 Cal. App. 4th at 406.

As discussed above, the Cellular Plug-In is not a separate component, it is one of various products covered by the Limited Warranty.  As Plaintiff alleges, she purchased a solar home energy system which included two Cell Plug-Ins which allowed her to monitor her solar energy system.  (FAC ¶ 12.)  Plaintiff has not alleged that the solar energy system failed to provide a "minimum level of quality," she only alleges that she was unable to monitor it.  Am. Suzuki Motor Corp., 37 Cal. App. 4th at 1296.  Plaintiff asks the Court to solely focus on the Cell Plug-In, not the solar energy system, but Plaintiff "cite[s] no case that, in analyzing the warranty of merchantability, countenances the disassembly of a product into its component parts as Plaintiff[] suggests."  In re MyFord Touch Consumer Litig., 46 F. Supp. 3d 936, 980 (N.D. Cal. 2014) (stating that "[i]dentifying a particular component of a car (such as electric windows, stereo radio, Bluetooth, etc.) and using that to define the ordinary purpose of the car as one which so equipped would merely be an exercise in question begging. To have any meaning, the purpose of the car for purposes of the warranty of merchantability must be more general.").  Accordingly, Plaintiff has failed to plead a breach of implied warranty claim.  The Court **GRANTS** SE's Motion as to Plaintiff's Claims Six, Seven, and Eight, and **DISMISSES** those claims.

## C.  California Consumers Legal Remedies Act (Claim Two)

SE contends that Plaintiff's CLRA claim fails because she has failed to identify any misrepresentation.  (MTD at 16.)  Plaintiff alleges that SE committed fraud by representing in the Data Sheet that the Cell Plug-Ins came with a 5-year/12-year data plan when it knew that the 3G Sunset was going to occur within three years.  (Opp'n at 11, 12.)  Plaintiff alleges that had she been advised that she would be unable to monitor her solar energy system remotely after three-years, she would not have agreed to purchase the solar energy system that included the Cell Plug-Ins.  (FAC ¶ 51.)

"The CLRA makes unlawful . . . various unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Rubenstein v. The Gap, Inc., 14 Cal.App.5th 870, 880-881 (2017) (internal quotes omitted). Courts tend to analyze CLRA claims based on whether the statements were misleading to a reasonable consumer. Nagel v. Twin Lab'ys, Inc., 109 Cal. App. 4th 39, 54 (2003). A reasonable consumer "is the ordinary consumer acting reasonably under the circumstances." Cardenas v. NBTY, Inc., 870 F.Supp.2d 984 (E.D. Cal. 2012).

The Court is unpersuaded that a reasonable consumer would be misled by the statement in the Data Sheet that the Cellular Plug-In came with a 5-year/12-year data plan. The Data Sheet specifically describes what SE will do in the event that a third party cellular technology is phased out or becomes unavailable. (Data Sheet at 2 ("in the event that third party cellular technology currently used by SolarEdge (LTE Cat-M1) is phased out or becomes otherwise unavailable, SolarEdge shall ship replacement parts such as modem and/or SIM card of a prevailing technology").) Thus, the Data Sheet disclosed to Plaintiff the possibility that the Cell Plug-In may need to be replaced and that SE would ship Plaintiff a replacement. The Data Sheet also states that "[u]pon such replacement, the new prevailing hardware shall continue to be covered for the remainder of the original data plan duration." (Data Sheet at 2.) Thus, the Data Sheet assured the consumer that the new hardware would continue to be covered for the remainder of the original data plan duration. Given that the Data Sheet informed Plaintiff that the Cellular Plug-In may need to be replaced and that the new hardware would be covered for the remainder of the original data plan duration, the Court is unable to find that a reasonable consumer would be misled by the 5-year/12-year data plan statement.

Plaintiff also contends that SE violated the CLRA by including the unconscionable provision that excluded labor costs from the Limited Warranty. (Opp'n at 14.) As the Court discussed above, SE's exclusion of labor costs is not unconscionable. (See Section IV.A.) Accordingly, the Court **GRANTS** SE's Motion as to Plaintiff's Claim Two and **DISMISSES** that claim.

## D. Unfair Business Practices Act ("Claim One")

SE asserts that Plaintiff fails to state a claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. (MTD at 17-19.) The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiff asserts violations under all three prongs.

As to the unlawful prong, as Plaintiff acknowledges, if any of her claims under SBWA, MMWA, or CLRA are not upheld, then Plaintiff's unlawful UCL claim fails. Thus, because the Court finds that Plaintiff has indeed not plead a claim under SBWA, MMWA, or CLRA, her unlawful UCL claim fails. As to the fraudulent prong, Plaintiff asserts that SE misrepresented the longevity and warranty of its Cell Plug-Ins. (Opp'n at 14.) But as the Court discussed above, Plaintiff has not identified any misrepresentations. (See Section IV.C.)

As to the unfair prong, Plaintiff alleges that she has suffered substantial harm because SE sold her Cell Plug-Ins that do not work for a period represented and SE has a warranty that it will not honor. (FAC ¶ 76.) Plaintiff alleges that as a result, she incurred labor and parts costs to replace the two Cell Plug-Ins modems. (FAC ¶ 57.) An unfair claim prohibits either conduct "whose harm to the victim outweighs its benefits" or which "offend[s] an established public policy." Johnson v. Ocwen Loan Servicing, LLC, 2017 WL 10581008, at *8 (C.D. Cal. Dec. 11, 2017). A business practice is unfair under the "UCL if: (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves." Boschma v. Home Loan Ctr., Inc., 198 Cal. App. 4th 230, 252 (2011).

The Court is unpersuaded that Plaintiff has pled an unfair business practice. The Data Sheet informed Plaintiff the Cell Plug-Ins may need to be replaced before the end of the data plan and the Limited Warranty informed Plaintiff that actions by third parties and labor costs were excluded from coverage. Plaintiff's injury of paying for replacement Cell Plug-Ins could have been avoided if she had taken up SE on its offer for free replacement parts. (Data Sheet at 2.) Although even if Plaintiff had received a replacement part from SE, Plaintiff would have had to pay for labor costs to install the Cell Plug-Ins, the Court does not find that provision unfair and Plaintiff has not cited any authority to support its contention. See, e.g., Oddo v. Arcoaire Air Conditioning & Heating, 2017 WL 372975, at *9-10 (C.D. Cal. Jan. 24, 2017) (upholding warranty providing for replacement of defective part but excluding labor costs). In sum, the Court **GRANTS** SE's Motion and **DISMISSES** Plaintiff's UCL claims.

## E.  Injunctive Relief

Finally, SE contends that Plaintiff lacks standing to pursue injunctive relief. (MTD at 20.) In her prayer for relief, Plaintiff states that she, members of the Class, and Subclass pray for an injunction enjoining SE from enforcing, threatening to enforce or claiming the right to enforce any of the Limited Warranty's exclusions. (FAC, Prayer for Relief at d.) Plaintiff contends that she has standing because she still owns Cell Plug-Ins, the Cell Plug-Ins are still covered by SE's warranty, SE has indicated it intends to refuse to comply with the warranty, and SE continues to seek to enforces its warranty exclusions regarding consequential damages. (Opp'n at 16.)

A party or a class can only seek injunctive relief for past harm if that harm is accompanied by "continuing, present adverse effect." Lujan v. Defs. of Wildlife, 504 U.S. 555, 564 (1992) ("[p]ast exposure to illegal conduct" does not in itself confer standing to pursue injunctive relief if that past exposure is "unaccompanied by any continuing, present adverse effect."). In a putative class action like this one, a named plaintiff may not represent a class seeking injunctive relief unless that plaintiff is also entitled to seek injunctive relief. Strumlauf v. Starbucks Corp., 192 F. Supp. 3d 1025, 1030 (N.D. Cal. 2016).

Plaintiff's FAC only alleges a one-time past injury, connected to her cellular provider's past decision to discontinue 3G coverage. Plaintiff does not allege that third-party cellular service

providers will continue to drop service for new modems or that if they do, Plaintiff will need another replacement part.  Thus, she only pleads a single instance of past harm.  As to Plaintiff's contention that SE intends to refuse to comply with the Limited Warranty, Plaintiff pleads no facts for the Court to infer this.  As to Plaintiff's argument that SE continues to enforce its warranty exclusions regarding consequential damages, as the Court discussed above, the Limited Warranty contains no limitations on consequential damages.  Accordingly, Plaintiff's claim for injunctive relief is **DISMISSED**.

## F.  Leave to Amend

Plaintiff states that should the Court rule that Plaintiff has not plead sufficient facts to overcome SE's Motion, the Court should grant it leave to amend.  (Opp'n at 16.)  Plaintiff has attached all of the relevant warranty documents to her FAC.  The Court finds the terms of the documents clear on their face and does not find a breach of the warranty.  Plaintiff states that if granted leave to amend, she would allege that she had a 12-year data plan.  (Id.)  But even with a 12-year plan, Plaintiff is still not entitled to reimbursement for labor costs and Plaintiff never requested the replacement part that a twelve-year plan holder could receive.  Because there are no facts that Plaintiff could allege that would undermine the warranty documents, the Court **DISMISSES** Plaintiff's FAC with prejudice.

## V.   CONCLUSION

For the reasons above, the Court **GRANTS** SE's Motion and **DISMISSES** all of Plaintiff's claims **WITHOUT LEAVE TO AMEND**.  The June 26, 2023 hearing is **VACATED**.  The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Name **Todd M. Friedman, SBN 216752**

Address **21031 Ventura Blvd., Suite 340**

City, State, Zip **Woodland Hills, CA 91364**

Phone **323-306-4234**

Fax **866-633-0228**

E-Mail **tfriedman@toddflaw.com**

☐ FPD  ☐ Appointed  ☐ CJA  ☐ Pro Per  ☒ Retained

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CHERYL SAUER, individually and on behalf of all others similarly situated,

PLAINTIFF(S),

v.

SOLAREDGE TECHNOLOGIES, INC., and DOES 1 through 10, inclusive, and each,

DEFENDANT(S).

CASE NUMBER:

5:22-cv-01584-JGB-KK

**NOTICE OF APPEAL**

NOTICE IS HEREBY GIVEN that _____ CHERYL SAUER _____ hereby appeals to
*Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
  Granting Defendant's Motion to Dismiss

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on __June 22, 2023__. Entered on the docket in this action on __June 22, 2023__.

A copy of said judgment or order is attached hereto.

__July 19, 2023__

Date

__s/Todd M. Friedman__

Signature
☐ Appellant/ProSe  ☒ Counsel for Appellant  ☐ Deputy Clerk

**Note:** The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-1584 JGB (KKx)** | Date | June 22, 2023 |
|---|---|---|---|

| Title | *Cheryl Sauer v. SolarEdge Technologies, Inc., et al.* |
|---|---|

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **Order (1) GRANTING Defendant's Motion to Dismiss (Dkt. No. 14); and (2) VACATING the June 26, 2023 Hearing (IN CHAMBERS)**

Before the Court is a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) filed by defendant SolarEdge Technologies, Inc. ("SE" or "Defendant"). ("Motion," Dkt. No. 14.) The Court determines this matter is appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court **GRANTS** Defendant's Motion. The June 26, 2023 hearing is **VACATED**.

## I.    BACKGROUND

On June 9, 2022, plaintiff Cheryl Sauer ("Plaintiff"), individually, and on behalf of all others similarly situated, filed a class action complaint against defendants SE and Does 1 through 10. ("Complaint," Dkt. No. 1-1.) On September 8, 2022, SE removed the action pursuant to the Class Action Fairness Act ("CAFA") and on the basis of diversity jurisdiction. ("Notice of Removal," Dkt. No. 1.) On October 21, 2022, Plaintiff filed a first amended complaint. ("FAC," Dkt. No. 13.)

The FAC alleges eight causes of action: (1) violation of the Unfair Business Practices Act under Cal. Bus. & Prof. Code §§ 17200 et seq.[1] ("Claim One"); (2) violation of the California Consumer Legal Remedies Act ("CLRA") under Cal. Civ. Code § 1750 et seq. ("Claim Two"); (3) breach of express warranty ("Claim Three"); (4) breach of express warranty under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2300 et seq. ("Claim Four"); (5)

---

[1] Unfair, fraudulent, unlawful.

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk NP

ER-131

breach of express warranty under the Song-Beverly Warranty Act ("SBWA"), Cal. Civ. Code § 1792 et seq. ("Claim Five"); (6) breach of implied warranty ("Claim Six"); (7) breach of implied warranty under the MMWA ("Claim Seven"); and (8) breach of implied warranty under the SBWA ("Claim Eight").  (See FAC.)  The FAC includes the following attachments:

- Cellular Plug-In with Data Plan for the US ("Data Sheet," Dkt. No. 13-1, Ex. A);
- Limited Product Warranty ("Limited Warranty," Dkt. No. 13-2, Ex. B);
- January 27, 2022 email from SE to consumers ("January 27 Email," Dkt. No. 13-3, Ex. C);
- SolarEdge Cell Modem 3G Network FAQs ("FAQs," Dkt. No. 13-4, Ex. D); and
- Notice letter to SE ("Notice Letter," Dkt. No. 13-5, Ex. E).

On December 9, 2022, SE filed the Motion.  (See Mot.)  On January 9, 2023, Plaintiff opposed.  ("Opposition," Dkt. No. 15.)  On January 23, 2023, SE replied.  ("Reply," Dkt. No. 16.)

## II.  FACTUAL ALLEGATIONS

### A.  Documents Considered

When deciding a motion to dismiss under Federal Rule of Civil Procedure ("Rule")[2] 12(b)(6), the Court need not "accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  Paulsen v. CNF Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).

The Court considers all of the attachments to the FAC when ruling on the Motion.  Rule 10 provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.  A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c).  "In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto."  Gerritsen v. Warner Bros. Ent. Inc., 112 F. Supp. 3d 1011, 1019 (C.D. Cal. 2015) (emphasis added).  "A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Courts generally hold that "documents attached to a complaint are viewed as part of the plaintiff's pleadings."  In re Enron Corp. Sec., Derivative & "ERISA" Litig., 540 F. Supp. 2d 800, 808–09 (S.D. Tex. 2007) (citing Rule 10(c)); Hall v. Bellmon, 935 F.2d 1106, 1112 (10th Cir. 1991) ("A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal.") (citing Rule 10(c)); see also Knievel v. ESPN, 393 F.3d 1068, 1076

---

[2] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk NP

(9th Cir. 2005). Further, "[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." Centers v. Centennial Mortg., Inc., 398 F.3d 930, 933 (7th Cir. 2005) (citations omitted).

## B. Factual Allegations

Plaintiff alleges the following facts, which are assumed to be true for the purposes of the Motion. See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

SE manufactures and sells cellular plug-ins ("Cell Plug-Ins") for inverters. (FAC ¶ 1.) Through Cell Plug-Ins, SE provides solar monitoring so that a consumer can keep track of their solar home energy production in real-time. (Id. ¶ 2.) The Cell Plug-Ins were manufactured, designed, and sold to only work on 3G wireless mobile networks. (Id. ¶ 3.) Without a 3G cellular wireless network to access, the Cell Plug-Ins are unable to perform their purpose—the transfer of information regarding the system which allows consumers to monitor their solar home energy production. (Id.)

In 2018 and 2019, the wireless mobile networks that provided the 3G networks that the Cell Plug-Ins accessed issued notices that they would be sunsetting 3G technology in 2022 ("the 3G Sunset") and all devices that used such 3G technology, such as the Cell Plug-Ins, would have to be replaced. (Id. ¶ 3.) SE has known since at least August 2019 that the 3G wireless networks its Cell Plug-Ins rely on would be deprecated in 2022, at which point the Cell Plug-Ins would be rendered useless. (Id. ¶ 24.)

SE issues an express Limited Warranty which covers "defects and materials of the below-listed products for the applicable Warranty Period"[3] with "products" including "Wireless Communication Products" such as the Cell Plug-Ins. (Id. ¶ 25; Ex. B.) With respect to the Cell Plug-Ins, the Limited Warranty covers 5 years from either 4 months of the date of shipment or the date of installation, whichever is earlier. (Id. ¶ 26.) SE knew that the Cell Plug-Ins were covered under the Limited Warranty. (Id. ¶ 27.) The Limited Warranty provides that in the event of a defect in workmanship or materials, SE will either "repair the Product at SolarEdge's facilities or on-site; or issue a credit note for the defective Product in an amount up to its actual value at the time buyer notifies SolarEdge of the defect, as determined by SolarEdge, for use toward the purchase of a new Product; or provide Buyer with replacement units for the Product." (Id. ¶ 32.)

SE made further representations in the product Data Sheet. (Id. ¶ 38.) The Data Sheet represents that the Cell Plug-Ins "[c]onnect[] SolarEdge inverters wirelessly to the internet,"

---

[3] For this language, Plaintiff cites to Exhibit B which is attached to the FAC. Plaintiff misquotes the language. The language in the Limited Warranty states that the Limited Warranty covers "defects in workmanship and materials of the below-listed products . . . ." (See Limited Warranty at 1.)

ER-133

"[e]nable[] remote analysis and troubleshooting," and a "5-year/12-year data plan is included." (Id. ¶ 39.) The Data Sheet also specifically makes the representation that "[f]or 12 year data plans – in the event that third party cellular technology currently used by SolarEdge [] is phased out or becomes otherwise unavailable, SolarEdge shall ship replacement parts such as modem and/or sim card of a prevailing technology. Upon such replacement, the new prevailing hardware shall continue to be covered for the remainder of the original data plan duration." (Id. ¶ 40.) These representations and warranties were broadly disseminated on SE's website. (Id.)

On September 10, 2019, Plaintiff purchased a solar home energy production system which included two SE inverters and two Cell-Plugins for installation on her home. (Id. ¶ 12.) The Limited Warranty was in effect when Plaintiff made her purchase. (Id. ¶ 25.) The installer advised Plaintiff that, based on SE's representations, the SE inverters would allow Plaintiff to monitor and troubleshoot her solar production from an app or website offered by SE and that it included a cellular plan of between five and twelve years along with a warranty. (Id. ¶ 49.) Being able to monitor her solar home energy system remotely was important to Plaintiff and a key part of her decision with regards to which components to include in her solar home system. (Id. ¶ 50.) Plaintiff relied on these representations and warranties in deciding to purchase a solar home system which included the Cell Plug-Ins. (Id. ¶ 51.) Had the authorized installer or any other person informed Plaintiff that the Cell Plug-Ins were not actually warranted to work and, in fact, would become useless within three (3) years, she would not have agreed to purchase products including SE's Cell Plug-Ins. (Id.) On September 10, 2021, Plaintiff executed her contract with the authorized installer and agreed to purchase the solar home system including the Cell Plug-Ins for a net cost of $36,876 after tax credit. (Id. ¶ 52.)

On or around January 27, 2022, SE sent Plaintiff an email informing her that the Cell Plug-In component of her inverters would be rendered inoperable by the deprecation of the 3G cellular networks, and that if the modem was not replaced Plaintiff would no longer have access to her system monitoring. (Id. ¶ 53.) SE also published and linked consumers to an FAQ on its website further reiterating that the "end user covers the cost" of replacement and that it was not covered under its warranty. (Id. ¶ 28.) SE also directed its sales agent, 365 Pronto, to begin repeatedly emailing Plaintiff about purchasing a replacement plug-in which would cost $633 including parts and labor. (Id. ¶ 54.)

Because SE affirmatively disclaimed its Limited Warranty through its January 27 Email and published FAQ, Plaintiff felt that she had no choice except to incur the parts and labor costs on her own to replace the defect Cell Plug-Ins. (Id. ¶ 55.) Plaintiff was required to replace not one, but two Cell Plug-Ins, with the first being in the panel inverter and the second being in the battery inverter. (Id. ¶ 56.) As such, Plaintiff has incurred labor and parts costs to replace the two Cell Plug-Ins modems in order to maintain her system monitoring plan, despite SE's representations that the system monitoring plan would be provided for a period of between five and twelve-years and also under a Warranty that covered defects. (Id. ¶ 57.) The failure of the Cell Plug-Ins due to a deprecation of the 3G wireless network constitutes a defect which is a breach of the Warranty. (Id. ¶ 58.) Because of this defect, all Cell Plug-Ins relevant to this

litigation have now failed before the end of their expected useful life as warranted by SE on either a five- or twelve year basis.  (Id. ¶ 21.)

On June 9, 2022, through her attorneys of record, Plaintiff notified SE by letter of the breach of warranty and CLRA on behalf of herself and all others similarly situated and demanded SE repair the defects and compensate Plaintiff and all others similarly situated for out-of-pocket costs.  (Id. ¶ 58.)  Plaintiff seeks recovery on behalf of herself and the following Class: all persons in the United States (a) who purchased the Cell Plug-Ins from an authorized seller of SolorEdge or (b) who currently own systems which include Cell Plug-Ins.  (Id. ¶¶ 7, 60.)  Plaintiff also seeks to represent a subclass ("Subclass") consisting of all class members within California.  (Id. ¶ 62.)

## III. LEGAL STANDARD

### A.  Motion to Dismiss

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).  Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted).  Courts also need not accept as true allegations that contradict facts which may be judicially noticed.  See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of

ER-135

underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## B. Leave to Amend

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

## IV. DISCUSSION

SE contends that the FAC should be dismissed under Rule 12(b)(6) for failure to state a claim. (See Mot.)

## A. Breach of Express Warranty (Claim Three, Four, and Five)

Plaintiff alleges three separate breach of express warranty claims: a general claim of breach of express warranty without citation to a statutory basis (Claim 3); breach of express warranty under the federal MMWA (Claim Four); and breach of express warranty under the California SBWA (Claim Five). All three claims rely on the same allegations and legal theories; thus, the Court addresses them together.

SE contends that Plaintiff's breach of express warranty claims fail because she did not plead a breach of the Limited Warranty. (Mot. at 8-12.) The Court agrees. To state a breach of an express warranty claim under California law, Plaintiff must allege: "the exact terms of the warranty, [P]laintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." Watkins v. MGA Ent., Inc., 550 F. Supp. 3d 815, 830 (N.D. Cal. 2021). A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty. Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 525 (1992). "To adequately allege the exact terms of an express warranty, a plaintiff must identify a specific and unequivocal written statement," that SE is alleged to have breached. Watkins, 550 F. Supp. 3d at 830 (internal quotes omitted). If Plaintiff cannot specifically point to the actual warranties that were breached, Plaintiff fails to state a cause of action for breach of express warranty. See Rodarte v. Philip Morris, Inc., 2003 WL 23341208, at *5 (C.D. Cal. June 23, 2003) ("the [c]omplaint failed to state a cause of action for breach of express warranty because it did not identify the exact terms or specific advertisements or representations").

Plaintiff alleges that SE made a specific written promise through its Data Sheet that the Cell Plug-Ins included a "5/12 year warranty" and a "5-year/12-year data plan is included." (Opp'n at 6; FAC ¶ 39; Data Sheet at 1.) Plaintiff alleges that she relied on these representations in deciding to purchase the solar home energy system including the Cell Plug-Ins and that if she had been informed that the Cell Plug-Ins would be useless within three years, she would not have agreed to purchase products that included SE's Cell Plug-Ins. (Opp'n at 6; FAC ¶¶ 49, 51.) Plaintiff alleges that she was harmed when she had to incur the parts and labor costs to replace the two Cell Plug-Ins herself. (Opp'n at 6; FAC ¶¶ 55-57.)

Notably, Plaintiff does not dispute that the Limited Warranty she was provided with excludes from warranty coverage: (1) third-party labor costs; and (2) actions by third parties that render the Cell Plug-Ins non-functional. (FAC ¶¶ 34, 36; Opp'n at 6.) Yet, Plaintiff brings this lawsuit to recover "out-of-pocket costs" for "incurred labor and parts costs to replace" two Cell Plug-Ins that became non-functional due to actions by third parties. (FAC ¶¶ 57-58.) Plaintiff argues that a combination of provisions from the Data Sheet and Limited Warranty that SE provided her indicate "that the Cell-Plug-In warranty is separate and thus not subject to the exclusions of the Limited Warranty," and thus she has alleged a breach. (Opp'n at 6-7.)

Plaintiff relies on language provided in the Limited Warranty that states the "Limited Warranty does not apply to components, which are separate from the Products . . . . Some components may carry their own manufacturer warranty. See product datasheet for more details." (Limited Warranty at 1.) Plaintiff interprets that language to mean that Cell Plug-Ins: (1) are not "Products" and are instead "components" that "carry their own manufacturer warranty"; (2) the Data Sheet is the Cell Plug-Ins warranty; and (3) because the Limited Warranty does not apply to "components," the Cell Plug-Ins are not subject to the exclusions of the Limited Warranty. (Opp'n at 7.) Plaintiff is mistaken. As Plaintiff acknowledges, the Limited Warranty defines the word "Products" as including Cell Plug-Ins. (Limited Warranty at 1; FAC ¶ 25.) Thus, because the Cell Plug-Ins are expressly included in the definition of "Products," the exclusion of coverage for "components which are separate from the Products" that Plaintiff relies on is inapplicable to the Cell Plug-Ins.

Plaintiff also argues that statements in the Data Sheet (specifically, that for twelve year plan holders, SE will ship replacement parts in the event that a third-party network provider terminates cellular coverage) contradicts a section titled "Warranty Exclusions" in the Limited Warranty. (Opp'n at 7.) The "Warranty Exclusions" section states as follows: "This Limited Warranty will not apply if . . . the Product or any part thereof is . . . rendered non-functional as a result of . . . action of third parties[.]" (Limited Warranty at 1.) But Plaintiff fails to explain how the provision in the Data Sheet promising free replacement parts for twelve-year plan holders is contradictory to the Limited Warranty exclusion that excludes coverage over defects in workmanship and materials for damages caused by third parties. Plaintiff's allegations suggest that the modems suffer from a design defect, not workmanship and material defects. (FAC ¶ 20 ("The Cell Plug-Ins were designed and can only function by connecting to a 3G cellular wireless network.").) "[A] design defect exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective." Gertz v. Toyota Motor Corp., 2011

WL 3681647, at *3 (C.D. Cal. Aug. 22, 2011). Courts have held that warranties covering defects in "materials and workmanship" do not extend to claims for design defects like those at issue here. In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig., 754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010). Thus, the Court is unpersuaded that the provision in the Data Sheet offering a replacement part for an alleged design issue is contradictory to the Warranty Exclusion that covers defects in workmanship and materials. See Maples v. SolarWinds, Inc., 50 F. Supp. 3d 1221, 1228 (N.D. Cal. 2014) (It is a canon of contractual interpretation that "individual provisions [should be] interpreted together, in order to give effect to all provisions and to avoid rendering some meaningless.").

Plaintiff next argues that SE affirmatively disclaimed its Limited Warranty when it sent out the January 27, 2022 email ("Jan. 27 Email") that incorporated an FAQ section that specifically stated "[f]or modem affected by the premature 3G shutdown, the technology change is done by the carrier, not SolarEdge, and therefore is not covered under the SolorEdge Warranty." (Opp'n at 7-8; FAQ at 2.) The Court disagrees and finds that the Jan. 27 Email and FAQ are consistent with the Limited Warranty. As noted above, the Limited Warranty explicitly states that it will not apply if a Cell Plug-In is "rendered non-functional as a result of . . . action of third parties." (Limited Warranty at 2.) This is in line with the FAQ which states that the "technology change done by the carrier", a third party, is not covered under the Limited Warranty. Furthermore, the Jan. 27 Email that Plaintiff attached to the FAC is directed at five-year data plan holders. (Jan. 27 Email at 1 ("The 5-year, 3G cell plan in the modem that came with your SolarEdge installation . . .").) Thus, the Jan. 27 Email shows that SE notified its five-year data plan holding customers that a third-party network carrier was discontinuing coverage and provided a list of FAQs explaining what that means for those customers. As both parties note, Plaintiff has a twelve-year plan. (Mot. at 7 n.3; Opp'n at 16.) The Jan. 27 Email and the FAQs incorporated with it does not address replacement parts for twelve-year plan holders because the email was expressly directed to five-year plan holders. In sum, the Court does not find that through the Jan. 27 Email and FAQs, SE disclaimed its Limited Warranty.

Finally, Plaintiff argues that the SBWA expressly prohibits limitations on remedies, and thus the Limited Warranty's provision that excludes labor costs and seeks to limit warranty claims to those under the Limited Warranty are unconscionable and contrary to public policy under Cal. Civ. Code § 1790.1 ("Section 1790.1"). (Opp'n at 9.) The relevant Limited Warranty provision states:

> "[a]ll costs, including, without limitation, labor, travel and boarding costs of SolarEdge service personnel or others that are incurred for labor relating to repairs, uninstalling and reinstalling of Products on-site, as well as costs related to buyer's employees and contractors repair or replacement activities, are not covered by the Limited Warranty and, unless otherwise agreed in writing in advance by SolarEdge, shall be borne by the buyer."

(Limited Warranty at 2; Opp'n at 3.) Section 1790.1 states that "[a]ny waiver by the buyer of consumer goods of the provisions of this chapter, except as expressly provided in this

---

ER-138

chapter, shall be deemed contrary to public policy and shall be unenforceable and void." Cal. Civ. Code § 1790.1. Plaintiff argues that the Limited Warranty's provision that excludes labor costs eliminates her right to consequential damages, and thus violates Section 1790.1. (Opp'n at 9.) Plaintiff seems to muddle the distinction between consequential damages for a breach of a warranty and exclusions from coverage. As SE correctly points out, Plaintiff would be entitled to consequential damages if there had been a breach of warranty. Notably, Plaintiff has not pointed to a term of the warranty that SE breached. By contrast, excluding labor costs from warranty coverage is a limitation on the terms of the warranty. Courts have found similar warranties that exclude labor costs as not unconscionable. See, e.g., Oddo v. Arcoaire Air Conditioning & Heating, 2017 WL 372975, at *9-10 (C.D. Cal. Jan. 24, 2017) (upholding warranty providing for replacement of defective part but excluding labor costs); Grassi v. Int'l Comfort Prod., LLC, 2015 WL 4879410, at *4 (E.D. Cal. Aug. 14, 2015) (same). Thus, SE is not in breach of the warranty simply by virtue of enforcing exclusions precluding labor costs and its warranty terms are not unconscionable. In sum, the Court finds that Plaintiff has failed to plead a breach of the Limited Warranty. Accordingly, the Court **GRANTS** SE's Motion as to Plaintiff's Claims Three, Four, and Five, and **DISMISSES** those claims.

## B. Breach of Implied Warranty (Claims Six, Seven, and Eight)

Plaintiff alleges three separate breach of implied warranty claims: a general claim (Claim Six); breach of implied warranty under the federal MMWA (Claim Seven); and breach of implied warranty under the California SBWA (Claim Eight). All three claims rely on the same allegations and legal theories; thus, the Court addresses them together.

Plaintiff alleges that the sale by SE of the Cell Plug-Ins was accompanied by implied warranties that the Cell Plug-Ins were merchantable and fit for the ordinary purpose for which products were sold. (FAC ¶ 123.) SE issued the Limited Warranty to Plaintiff and the Class, so SE is in direct privity with Plaintiff and the Class. (Id. ¶ 24.) SE breached the implied warranties in that the Cell Plug-Ins are not fit for their intended use and not of merchantable quality because they have been rendered defective and inoperable because of the 3G Sunset. (Id. ¶ 128.)

SE contends that Plaintiff's implied warranty claim fails because: (1) it is contrary to SE's express warranty; and (2) even if the implied warranty claim were not barred by the express warranty's terms, it would still fail because Plaintiff does not allege that the lack of cellular monitoring made her system "unmerchantable." (MTD at 14.) As to SE's first contention that Plaintiff's implied warranty claim fails because it is contrary to SE's express warranty, SE bases this argument on California Commercial Code § 2317(c) ("Section 2317"). (Id.) Section 2317 provides that "[e]xpress warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose." Cal. Comm. Code § 2317(c). California courts have held that the SBWA "extends greater protection to consumers by specifically prohibiting a waiver of the implied warranty of merchantability, except where the sale is 'as is',"' which is not the case here. Mocek v. Alfa Leisure, Inc., 114 Cal. App. 4th 402, 409 (2003). Accordingly, SE's Limited Warranty does not displace Plaintiff's implied warranty claim.

ER-139

As to SE's second contention, SE argues that a third party's decision to discontinue 3G cellular networks in favor of newer technology did not impact the solar panel's ability to produce solar energy, and thus, Plaintiff's allegations regarding the Cell Plug-In do not describe a defect that seriously impacts the solar panel's operability. (MTD at 15.) Plaintiff responds that the Cell Plug-In is an individual component with a separate warranty that can no longer fulfill its most basic function and must be replaced to restore functionality, and thus, it is not fit for its ordinary purpose of monitoring the solar home energy system. (Opp'n at 11.)

To be merchantable, the product must be "fit for the ordinary purposes for which such goods are used." Cal. Civ. Code § 1791.1(a)(2). "Such fitness is shown if the product is in safe condition and substantially free of defects." Mexia v. Rinker Boat Co., 174 Cal. App. 4th 1297, 1303 (2009) (internal quotations omitted). The product need not be perfect, so long as "it provides for a minimum level of quality." Am. Suzuki Motor Corp. v. Superior Court, 37 Cal. App. 4th 1291, 1296 (1995). "[A] breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness for ordinary use." Mocek, 114 Cal. App. 4th at 406.

As discussed above, the Cellular Plug-In is not a separate component, it is one of various products covered by the Limited Warranty. As Plaintiff alleges, she purchased a solar home energy system which included two Cell Plug-Ins which allowed her to monitor her solar energy system. (FAC ¶ 12.) Plaintiff has not alleged that the solar energy system failed to provide a "minimum level of quality," she only alleges that she was unable to monitor it. Am. Suzuki Motor Corp., 37 Cal. App. 4th at 1296. Plaintiff asks the Court to solely focus on the Cell Plug-In, not the solar energy system, but Plaintiff "cite[s] no case that, in analyzing the warranty of merchantability, countenances the disassembly of a product into its component parts as Plaintiff[] suggests." In re MyFord Touch Consumer Litig., 46 F. Supp. 3d 936, 980 (N.D. Cal. 2014) (stating that "[i]dentifying a particular component of a car (such as electric windows, stereo radio, Bluetooth, etc.) and using that to define the ordinary purpose of the car as one which so equipped would merely be an exercise in question begging. To have any meaning, the purpose of the car for purposes of the warranty of merchantability must be more general."). Accordingly, Plaintiff has failed to plead a breach of implied warranty claim. The Court **GRANTS** SE's Motion as to Plaintiff's Claims Six, Seven, and Eight, and **DISMISSES** those claims.

## C. California Consumers Legal Remedies Act (Claim Two)

SE contends that Plaintiff's CLRA claim fails because she has failed to identify any misrepresentation. (MTD at 16.) Plaintiff alleges that SE committed fraud by representing in the Data Sheet that the Cell Plug-Ins came with a 5-year/12-year data plan when it knew that the 3G Sunset was going to occur within three years. (Opp'n at 11, 12.) Plaintiff alleges that had she been advised that she would be unable to monitor her solar energy system remotely after three-years, she would not have agreed to purchase the solar energy system that included the Cell Plug-Ins. (FAC ¶ 51.)

"The CLRA makes unlawful . . . various unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Rubenstein v. The Gap, Inc., 14 Cal.App.5th 870, 880-881 (2017) (internal quotes omitted). Courts tend to analyze CLRA claims based on whether the statements were misleading to a reasonable consumer. Nagel v. Twin Lab'ys, Inc., 109 Cal. App. 4th 39, 54 (2003). A reasonable consumer "is the ordinary consumer acting reasonably under the circumstances." Cardenas v. NBTY, Inc., 870 F.Supp.2d 984 (E.D. Cal. 2012).

The Court is unpersuaded that a reasonable consumer would be misled by the statement in the Data Sheet that the Cellular Plug-In came with a 5-year/12-year data plan. The Data Sheet specifically describes what SE will do in the event that a third party cellular technology is phased out or becomes unavailable. (Data Sheet at 2 ("in the event that third party cellular technology currently used by SolarEdge (LTE Cat-M1) is phased out or becomes otherwise unavailable, SolarEdge shall ship replacement parts such as modem and/or SIM card of a prevailing technology").) Thus, the Data Sheet disclosed to Plaintiff the possibility that the Cell Plug-In may need to be replaced and that SE would ship Plaintiff a replacement. The Data Sheet also states that "[u]pon such replacement, the new prevailing hardware shall continue to be covered for the remainder of the original data plan duration." (Data Sheet at 2.) Thus, the Data Sheet assured the consumer that the new hardware would continue to be covered for the remainder of the original data plan duration. Given that the Data Sheet informed Plaintiff that the Cellular Plug-In may need to be replaced and that the new hardware would be covered for the remainder of the original data plan duration, the Court is unable to find that a reasonable consumer would be misled by the 5-year/12-year data plan statement.

Plaintiff also contends that SE violated the CLRA by including the unconscionable provision that excluded labor costs from the Limited Warranty. (Opp'n at 14.) As the Court discussed above, SE's exclusion of labor costs is not unconscionable. (See Section IV.A.) Accordingly, the Court **GRANTS** SE's Motion as to Plaintiff's Claim Two and **DISMISSES** that claim.

## D. Unfair Business Practices Act ("Claim One")

SE asserts that Plaintiff fails to state a claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. (MTD at 17-19.) The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiff asserts violations under all three prongs.

As to the unlawful prong, as Plaintiff acknowledges, if any of her claims under SBWA, MMWA, or CLRA are not upheld, then Plaintiff's unlawful UCL claim fails. Thus, because the Court finds that Plaintiff has indeed not plead a claim under SBWA, MMWA, or CLRA, her unlawful UCL claim fails. As to the fraudulent prong, Plaintiff asserts that SE misrepresented the longevity and warranty of its Cell Plug-Ins. (Opp'n at 14.) But as the Court discussed above, Plaintiff has not identified any misrepresentations. (See Section IV.C.)

ER-141

As to the unfair prong, Plaintiff alleges that she has suffered substantial harm because SE sold her Cell Plug-Ins that do not work for a period represented and SE has a warranty that it will not honor. (FAC ¶ 76.) Plaintiff alleges that as a result, she incurred labor and parts costs to replace the two Cell Plug-Ins modems. (FAC ¶ 57.) An unfair claim prohibits either conduct "whose harm to the victim outweighs its benefits" or which "offend[s] an established public policy." Johnson v. Ocwen Loan Servicing, LLC, 2017 WL 10581008, at *8 (C.D. Cal. Dec. 11, 2017). A business practice is unfair under the "UCL if: (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves." Boschma v. Home Loan Ctr., Inc., 198 Cal. App. 4th 230, 252 (2011).

The Court is unpersuaded that Plaintiff has pled an unfair business practice. The Data Sheet informed Plaintiff the Cell Plug-Ins may need to be replaced before the end of the data plan and the Limited Warranty informed Plaintiff that actions by third parties and labor costs were excluded from coverage. Plaintiff's injury of paying for replacement Cell Plug-Ins could have been avoided if she had taken up SE on its offer for free replacement parts. (Data Sheet at 2.) Although even if Plaintiff had received a replacement part from SE, Plaintiff would have had to pay for labor costs to install the Cell Plug-Ins, the Court does not find that provision unfair and Plaintiff has not cited any authority to support its contention. See, e.g., Oddo v. Arcoaire Air Conditioning & Heating, 2017 WL 372975, at *9-10 (C.D. Cal. Jan. 24, 2017) (upholding warranty providing for replacement of defective part but excluding labor costs). In sum, the Court **GRANTS** SE's Motion and **DISMISSES** Plaintiff's UCL claims.

## E. Injunctive Relief

Finally, SE contends that Plaintiff lacks standing to pursue injunctive relief. (MTD at 20.) In her prayer for relief, Plaintiff states that she, members of the Class, and Subclass pray for an injunction enjoining SE from enforcing, threatening to enforce or claiming the right to enforce any of the Limited Warranty's exclusions. (FAC, Prayer for Relief at d.) Plaintiff contends that she has standing because she still owns Cell Plug-Ins, the Cell Plug-Ins are still covered by SE's warranty, SE has indicated it intends to refuse to comply with the warranty, and SE continues to seek to enforces its warranty exclusions regarding consequential damages. (Opp'n at 16.)

A party or a class can only seek injunctive relief for past harm if that harm is accompanied by "continuing, present adverse effect." Lujan v. Defs. of Wildlife, 504 U.S. 555, 564 (1992) ("'[p]ast exposure to illegal conduct" does not in itself confer standing to pursue injunctive relief if that past exposure is "unaccompanied by any continuing, present adverse effect."). In a putative class action like this one, a named plaintiff may not represent a class seeking injunctive relief unless that plaintiff is also entitled to seek injunctive relief. Strumlauf v. Starbucks Corp., 192 F. Supp. 3d 1025, 1030 (N.D. Cal. 2016).

Plaintiff's FAC only alleges a one-time past injury, connected to her cellular provider's past decision to discontinue 3G coverage. Plaintiff does not allege that third-party cellular service

providers will continue to drop service for new modems or that if they do, Plaintiff will need another replacement part. Thus, she only pleads a single instance of past harm. As to Plaintiff's contention that SE intends to refuse to comply with the Limited Warranty, Plaintiff pleads no facts for the Court to infer this. As to Plaintiff's argument that SE continues to enforce its warranty exclusions regarding consequential damages, as the Court discussed above, the Limited Warranty contains no limitations on consequential damages. Accordingly, Plaintiff's claim for injunctive relief is **DISMISSED**.

## F. Leave to Amend

Plaintiff states that should the Court rule that Plaintiff has not plead sufficient facts to overcome SE's Motion, the Court should grant it leave to amend. (Opp'n at 16.) Plaintiff has attached all of the relevant warranty documents to her FAC. The Court finds the terms of the documents clear on their face and does not find a breach of the warranty. Plaintiff states that if granted leave to amend, she would allege that she had a 12-year data plan. (Id.) But even with a 12-year plan, Plaintiff is still not entitled to reimbursement for labor costs and Plaintiff never requested the replacement part that a twelve-year plan holder could receive. Because there are no facts that Plaintiff could allege that would undermine the warranty documents, the Court **DISMISSES** Plaintiff's FAC with prejudice.

## V.  CONCLUSION

For the reasons above, the Court **GRANTS** SE's Motion and **DISMISSES** all of Plaintiff's claims **WITHOUT LEAVE TO AMEND**. The June 26, 2023 hearing is **VACATED**. The Clerk is directed to close the case.

**IT IS SO ORDERED.**

# PROOF OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause. On July 19, 2023, I electronically filed with the Court through its CM/ECF program and served a true copy through the same program the following documents: Notice of Appeal on the interested parties in said case as follows:

[x]     ELECTRONICALLY, Pursuant to the CM/ECF system, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities.  The Court's CM/ECF system sends an email notification of the filing to the parties and counsel of record listed above who are registered with the Court's CM/ECF system.

Place of Filing: 21031 Ventura Blvd., Suite 340, Woodland Hills, CA 91364.

Executed on July 19, 2023, at Woodland Hills, CA

[x] I hereby certify under the penalty of perjury that the foregoing is true and correct.

By: s/ Todd M. Friedman
       Todd M. Friedman

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA (Eastern Division - Riverside)**
**CIVIL DOCKET FOR CASE #: 5:22-cv-01584-JGB-KK**

| | |
|---|---|
| Cheryl Sauer v. SolarEdge Technologies, Inc. et al | Date Filed: 09/08/2022 |
| Assigned to: Judge Jesus G. Bernal | Date Terminated: 06/22/2023 |
| Referred to: Magistrate Judge Kenly Kiya Kato | Jury Demand: Plaintiff |
| Case in other court: 9th CCA, 23-55636 | Nature of Suit: 370 Other Fraud |
|                CA Superior Court, County of San Bernardino, CIV SB 2211712 | Jurisdiction: Diversity |
| Cause: 28:1441 Notice of Removal | |

**Plaintiff**

**Cheryl Sauer**                                                    represented by    **Todd M Friedman**
*individually, and on behalf of all others similarly situated*                      Law Offices of Todd M Friedman PC
                                                                                    21031 Ventura Boulevard Suite 340
                                                                                    Woodland Hills, CA 91364
                                                                                    323-306-4234
                                                                                    Fax: 866-633-0228
                                                                                    Email: tfriedman@toddflaw.com
                                                                                    *LEAD ATTORNEY*
                                                                                    *ATTORNEY TO BE NOTICED*

                                                                                    **Adrian Robert Bacon**
                                                                                    Law Offices of Todd M. Friedman PC
                                                                                    21031 Ventura Boulevard, Suite 340
                                                                                    Woodland Hills, CA 91364
                                                                                    323-306-4234
                                                                                    Fax: 866-633-0228
                                                                                    Email: abacon@toddflaw.com
                                                                                    *ATTORNEY TO BE NOTICED*

                                                                                    **Thomas Edward Wheeler**
                                                                                    Todd Friedman Law Offices
                                                                                    21031 Ventura Boulevard
                                                                                    Woodland Hills, CA 91364
                                                                                    858-414-2834
                                                                                    Email: twheeler@toddflaw.com
                                                                                    *TERMINATED: 06/08/2023*

V.

**Defendant**

**SolarEdge Technologies, Inc.**                                   represented by    **Matthew D Powers**
                                                                                    O'Melveny and Myers LLP
                                                                                    Two Embarcadero Center
                                                                                    San Francisco, CA 94111
                                                                                    415-984-8700
                                                                                    Fax: 415-984-8701
                                                                                    Email: mpowers@omm.com
                                                                                    *LEAD ATTORNEY*
                                                                                    *ATTORNEY TO BE NOTICED*

**Defendant**

**Does**
*1-10 Inclusive*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/08/2022 | 1 | NOTICE OF REMOVAL from CA Superior Court, County of San Bernardino, case number CIV SB 2211712 Receipt No: ACACDC-33947390 - Fee: $402, filed by Defendant SolarEdge Technologies, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Declaration of Peter Mathews ISO Notice of Removal) (Attorney Matthew D Powers added to party SolarEdge Technologies, Inc.(pty:dft))(Powers, Matthew) (Entered: 09/08/2022) |
| 09/08/2022 | 2 | CIVIL COVER SHEET filed by Defendant SolarEdge Technologies, Inc.. (Powers, Matthew) (Entered: 09/08/2022) |

ER-145

| 09/08/2022 | 3 | CERTIFICATE of Interested Parties filed by Defendant SolarEdge Technologies, Inc. (Powers, Matthew) (Entered: 09/08/2022) |
|---|---|---|
| 09/08/2022 | 4 | PROOF OF SERVICE filed by Defendant SolarEdge Technologies, Inc., re Notice of Removal (Attorney Civil Case Opening), 1 , Civil Cover Sheet (CV-71) 2 served on September 8, 2022. (Powers, Matthew) (Entered: 09/08/2022) |
| 09/08/2022 | | CONFORMED FILED COPY OF COMPLAINT against Defendants Does 1-10 Inclusive, SolarEdge Technologies, Inc. Jury Demanded., filed by plaintiff Cheryl Sauer. (FILED IN STATE COURT ON 6/9/2022 SUBMITTED ATTACHED EXHIBIT 1) (ghap) (Entered: 09/09/2022) |
| 09/08/2022 | | CONFORMED FILED COPY OF PROOF OF SERVICE Executed by Plaintiff Cheryl Sauer, upon Defendant SolarEdge Technologies, Inc. served on 8/9/2022, answer due 8/30/2022. Service of the Summons and Complaint were executed upon Koy Saechao, agent for csc in compliance with California Code of Civil Procedure by personal service.Original Summons NOT returned. (FILED IN STATE COURT ON 8/17/2022 SUBMITTED ATTACHED EXHIBIT 3) (ghap) (Entered: 09/09/2022) |
| 09/09/2022 | 5 | NOTICE OF ASSIGNMENT to District Judge Jesus G. Bernal and Magistrate Judge Kenly Kiya Kato. (ghap) (Entered: 09/09/2022) |
| 09/09/2022 | 6 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (ghap) (Entered: 09/09/2022) |
| 09/09/2022 | 7 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (ghap) (Entered: 09/09/2022) |
| 09/12/2022 | 8 | Joint STIPULATION for Order Initial Briefing Schedule filed by Defendant SolarEdge Technologies, Inc.. (Attachments: # 1 Proposed Order)(Powers, Matthew) (Entered: 09/12/2022) |
| 09/12/2022 | 9 | ORDER by Judge Jesus G. Bernal, Granting Joint Stipulation RE: Initial Briefing schedule 8 . Plaintiff shall file any amended complaint by September 22, 2022. SEE DOCUMENT FOR FURTHER INFORMATION. (twdb) (Entered: 09/13/2022) |
| 09/15/2022 | 10 | STANDING ORDER upon filing of the complaint by Judge Jesus G. Bernal. (ima) (Entered: 09/15/2022) |
| 10/14/2022 | 11 | Joint STIPULATION for Order RE: BRIEFING SCHEDULE filed by Defendant SolarEdge Technologies, Inc.. (Attachments: # 1 Proposed Order)(Powers, Matthew) (Entered: 10/14/2022) |
| 10/14/2022 | 12 | ORDER by Judge Jesus G. Bernal, Granting Joint Stipulation RE: Briefing Schedule 11 . Plaintiff shall file any amended complaint by October 21, 2022. SEE DOCUMENT FOR FURTHER INFORMATION. (twdb) (Entered: 10/14/2022) |
| 10/21/2022 | 13 | FIRST AMENDED COMPLAINT against Defendants All Defendants amending Complaint - (Discovery), filed by Plaintiff Cheryl Sauer (Attachments: # 1 Exhibit A - Data Sheet, # 2 Exhibit B - Warranty, # 3 Exhibit C - Email, # 4 Exhibit D - FAQ, # 5 Exhibit E - Notice Letter)(Friedman, Todd) (Entered: 10/21/2022) |
| 12/09/2022 | 14 | NOTICE OF MOTION AND MOTION to Dismiss Case / *Defendant Solaredge Technologies Inc.'s Notice of Motion and Motion to Dismiss Plaintiffs First Amended Complaint; Memorandum of Points and Authorities in Support Thereof* filed by Defendant SolarEdge Technologies, Inc.. Motion set for hearing on 3/13/2023 at 09:00 AM before Judge Jesus G. Bernal. (Attachments: # 1 Proposed Order Granting Defendant Solaredge Technologies, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint) (Powers, Matthew) (Entered: 12/09/2022) |
| 01/09/2023 | 15 | MEMORANDUM in Opposition to NOTICE OF MOTION AND MOTION to Dismiss Case / *Defendant Solaredge Technologies Inc.'s Notice of Motion and Motion to Dismiss Plaintiffs First Amended Complaint; Memorandum of Points and Authorities in Support Thereof* 14 filed by Plaintiff Cheryl Sauer. (Attorney Thomas Edward Wheeler added to party Cheryl Sauer(pty:pla))(Wheeler, Thomas) (Entered: 01/09/2023) |
| 01/23/2023 | 16 | REPLY in Support of NOTICE OF MOTION AND MOTION to Dismiss Case / *Defendant Solaredge Technologies Inc.'s Notice of Motion and Motion to Dismiss Plaintiffs First Amended Complaint; Memorandum of Points and Authorities in Support Thereof* 14 filed by Defendant SolarEdge Technologies, Inc.. (Powers, Matthew) (Entered: 01/23/2023) |
| 03/09/2023 | 17 | SCHEDULING NOTICE by Judge Jesus G. Bernal re: MOTION to Dismiss Case 14 . THE HEARING ON THE MOTION IS CONTINUED FROM 3/13/2023 TO 4/10/2023 at 09:00 AM before Judge Jesus G. Bernal. IT IS SO ORDERED.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (mga) TEXT ONLY ENTRY (Entered: 03/09/2023) |
| 04/07/2023 | 18 | SCHEDULING NOTICE by Judge Jesus G. Bernal regarding the Motion to Dismiss Case 14 . THE HEARING ON THE MOTION IS CONTINUED FROM 4/10/2023 TO 5/8/2023 at 9:00 a.m. before Judge Jesus G. Bernal. IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (npo) TEXT ONLY ENTRY (Entered: 04/07/2023) |
| 05/02/2023 | 19 | Request to appear at May 8, 2023 hearing by Zoom. filed by Defendant SolarEdge Technologies, Inc. (Attachments: # 1 Proposed Order)(Powers, Matthew) Modified on 5/2/2023 (twdb). (Entered: 05/02/2023) |
| 05/02/2023 | 20 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Document RE: REQUEST 19 . The following error(s) was/were found: Incorrect event selected. Correct event to be used is: Request / for order. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (twdb) (Entered: 05/02/2023) |
| 05/05/2023 | 21 | SCHEDULING NOTICE by Judge Jesus G. Bernal re: MOTION to Dismiss Case 14 . THE HEARING ON THE MOTION IS CONTINUED FROM 5/8/2023 TO 6/5/2023 at 09:00 AM before Judge Jesus G. Bernal. IT IS SO ORDERED.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (mga) TEXT ONLY ENTRY (Entered: |

| 06/01/2023 | 22 | Joint REQUEST for Order *to Appear at June 5, 2023 Hearing by Zoom* filed by Defendant SolarEdge Technologies, Inc.. (Attachments: # 1 Proposed Order) (Travis, Matthew) (Entered: 06/01/2023) |
| 06/02/2023 | 23 | SCHEDULING NOTICE by Judge Jesus G. Bernal re: MOTION to Dismiss Case / *Defendant Solaredge Technologies Inc.'s Notice of Motion and Motion to Dismiss Plaintiffs First Amended Complaint; Memorandum of Points and Authorities in Support Thereof* 14 . THE HEARING ON THE MOTION IS CONTINUED FROM 6/5/2023 TO 6/12/2023 at 09:00 AM before Judge Jesus G. Bernal. IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (mga) TEXT ONLY ENTRY (Entered: 06/02/2023) |
| 06/08/2023 | 24 | Notice of Appearance or Withdrawal of Counsel: for attorney Todd M Friedman counsel for Plaintiff Cheryl Sauer. Thomas E. Wheeler is no longer counsel of record for the aforementioned party in this case for the reason indicated in the G-123 Notice. Filed by Plaintiff Cheryl Sauer. (Friedman, Todd) (Entered: 06/08/2023) |
| 06/09/2023 | 25 | SCHEDULING NOTICE AND ORDER by Judge Jesus G. Bernal: On its own motion, the Court hereby CONTINUES the hearing on the Motion to Dismiss [Dkt. 14 ] from June 12, 2023, to June 26, 2023, at 9:00 a.m. IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (iva) TEXT ONLY ENTRY (Entered: 06/09/2023) |
| 06/22/2023 | 26 | MINUTES Order (1) GRANTING Defendant's Motion to Dismiss 14 ; and (2) VACATING the June 26, 2023 Hearing (IN CHAMBERS) by Judge Jesus G. Bernal. The Court GRANTS SE's Motion and DISMISSES all of Plaintiff's claims WITHOUT LEAVE TO AMEND. The June 26, 2023 hearing is VACATED. The Clerk is directed to close the case. (SEE DOCUMENT FOR FURTHER DETAILS.) ( MD JS-6. Case Terminated. ) (rolm) (Entered: 06/22/2023) |
| 07/19/2023 | 27 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Plaintiff Cheryl Sauer. Appeal of Order on Motion to Dismiss Case, 26 . (Appeal Fee - $505 Fee Paid, Receipt No. ACACDC-35700601.) (Friedman, Todd) (Entered: 07/19/2023) |
| 07/20/2023 | 28 | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 23-55636 assigned to Notice of Appeal to 9th Circuit Court of Appeals 27 as to plaintiff Cheryl Sauer. (car) (Entered: 07/21/2023) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/12/2023 15:11:33 | | |
| **PACER Login:** | tf216752 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:22-cv-01584-JGB-KK End date: 10/12/2023 |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |